IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DETLEF SOMMERFIELD | ) | FILED: MAY 23, 2008 |
| | ) | 08CV3025   RCC |
| Plaintiff, | ) | JUDGE GOTTSCHALL |
| | ) | MAGISTRATE JUDGE COLE |
| vs. | ) No. | |
| | ) | |
| CITY OF CHICAGO | ) | |
| SERGEANT KNASIAK #1841 | ) | |
| | ) Honorable Judge | |
| | ) Honorable Magistrate Judge | |
| | ) | |
| | ) JURY DEMAND | |
| Defendants. | ) | |

**COMPLAINT**

*Jurisdiction and Venue*

1. This Court has jurisdiction under 28 USC §1331 and §1343. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1343(3) and 1343(4) conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 22 U.S.C. § 2201, under 42 U.S.C. § 1983 and §1981.  All of the illegal and unlawful acts of discrimination occurred in the Northern District of Illinois. Venue is proper under 28 USC §1391(b) and (c).

2. On 29 November 2004, the Equal Employment Opportunity Commission found that the Chicago Police Department discriminated against the plaintiff based upon his national origin, German, and his religion, Jewish.

*Parties*

3. The plaintiff is a natural person, residing in the Northern District of Illinois.

4. Upon information and belief, the City of Chicago is a municipality, operating the Chicago Police Department.

1

5. Upon information and belief, the defendant, Sergeant Knasiak, was a sergeant with the Chicago Police Department.

6. Sergeant Knasiak acted under color of state law.

*Common Facts For All Counts*

7. The plaintiff is a German Jew who emigrated to the United States. His family members were killed in the Holocaust.

8. The plaintiff has worked for the Chicago Police Department since 5 July 1994.

9. In or about January 2000, Sergeant Knasiak was transferred to the plaintiff's area, making the plaintiff subordinate to him.

10. Repeatedly, before, during and after 2006, Sergeant Knasiak referred to the plaintiff's Jewish and German heritage. He would ask the plaintiff, why didn't Hitler kill all of you Jews; burn Jew burn; how do you fit 1000 Jews inside of a car--by putting them in the ashtray; you Jews are bloodsucking parasites; don't you two jag offs go pulling over Jews and niggers all night; Germans should be shot in the head for not getting rid of the Jew problem; did your parents crawl from under the fence in the concentration camp; f—k--g Germans can't do anything right; they missed a whole bunch of Jews and now they are living in this fucked up country; Germans are just like niggers, couldn't get rid of them then, can't get rid of them now; f--k--g Jew boy and so forth.

11. Sergeant Knasiak would call the plaintiff a Nazi. He would show the plaintiff his swastika.

12. Sergeant Knasiak would call the plaintiff a stupid German.

13. When the plaintiff would enter a room, Sergeant Knasiak would raise his right hand and salute the plaintiff as Nazis would salute each other.

14. Repeatedly, the plaintiff informed Sergeant Knasiak that his attacks on the plaintiff's Jewish heritage and German descent were painful.

15. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants would assign the plaintiff to high crime areas without a partner, though officers with lesser seniority and who were not German and/or Jewish were given partners.

16. Treating the plaintiff differently than officers who were not Jewish and/or German, when the defendants did assign a partner to the plaintiff, the defendants would frequently change the plaintiff's partner, though officers who were not German and/or Jewish received steady partners.

17. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants frequently changed the plaintiff's starting times.

18. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants assigned the plaintiff to work hospital duty, though the plaintiff had higher seniority than other officers who were not German and/or Jewish and who were not assigned hospital duty.

19. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants, when assigning the plaintiff to do hospital duty, required the plaintiff to use his own car, instead of a police car.

20. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants assigned different cars day-to-day to the plaintiff, though officers who had less seniority than the plaintiff and who were not German and/or Jewish were given cars that did not change from day-to-day.

21. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants suspended the plaintiff for five days for not contacting the dispatcher to obtain an ID from his residence, although the plaintiff's partner, received only a reprimand for the same conduct, and for allegedly yelling at Sergeant Knasiak though it was Sergeant Knasiak who relentlessly yelled at the plaintiff.

22. Treating the plaintiff differently than other officers who were not Jewish and/or German, other officers received the position of canine patrol which was a position that the plaintiff wanted, though the plaintiff was higher on the list to receive the position.

*Religious discrimination and harassment*

23. Repeatedly, the plaintiff asked Sergeant Knasiak to stop making references to his Jewish heritage.

24. Repeatedly, Sergeant Knasiak refused.

25. Sergeant Knasiak openly and publicly made discriminatory statements and comments relating to the plaintiff's Jewish religion.

26. Yet, the City of Chicago failed to stop Sergeant Knasiak from making such harmful and discriminatory comments and statements.

27. The plaintiff repeatedly complained to several supervisors about Sergeant Knasiak harassing him and discriminating against him based upon his national origin and Jewish religion, but such supervisors ignored the plaintiff and did nothing.

28. Indeed, Lt. Carson Ernest, one of the plaintiff supervisors, instructed the plaintiff to put on boxing gloves and fight it out with Sergeant Knasiak.

29. In March 2004, the plaintiff filed a written complaint with the internal affairs division regarding the discrimination and hostile work environment against Sergeant Knasiak.

30. However, the defendant, City of Chicago, continued to allow the discrimination and hostile work environment against the plaintiff, during the three years of the investigation by the internal affairs division.

31. The City of Chicago failed to take any immediate and appropriate corrective action to ensure that Plaintiff would not be subject to further discrimination and harassment.

32. The harassment was sufficiently pervasive and severe as to alter the conditions of Plaintiff's employment and to create a hostile, intimidating and/or abusive work environment.

33. The City of Chicago created a hostile, work environment for the plaintiff, adversely affecting his ability to perform his duties.

34. The City of Chicago treated the plaintiff differently because he was a German Jew than it treated those who were not.

35. During the many years that Sergeant Knasiak discriminated and harassed the plaintiff, the plaintiff suffered stress and fear. This fear and stress interfered with his work conditions and ability to perform his work.

36. The City of Chicago acted blindly towards discrimination and harassment.

37. The City of Chicago's supervisors failed to take any action against Sergeant Knasiak. Therefore, the defendant, City of Chicago, authorized, commanded, acquiesced or assented to Sergeant Knasiak harassing the plaintiff.

38. By failing to prohibit Sergeant Knasiak, and thus, encouraging him, the City of Chicago specifically intended to injure the plaintiff.

39. Despite Plaintiff's repeated complaints, the City of Chicago continued to allow Sergeant Knasiak to discriminate and harass the plaintiff.

40. The City of Chicago ratified Sergeant Knasiak's repeated discrimination and harassment of the plaintiff.

41. The plaintiff has suffered pain, humiliation and embarrassment and will continue to suffer pain, humiliation and embarrassment.

42. The City of Chicago, by failing to prohibit Sergeant Knasiak from repeatedly harassing the plaintiff, acted willfully and wantonly.

*National origin discrimination and harassment: German*

43. Repeatedly, the plaintiff asked Sergeant Knasiak to stop making references to his German heritage.

44. Repeatedly, Sergeant Knasiak refused.

45. Sergeant Knasiak openly and publicly made discriminatory statements and comments relating to the plaintiff's German heritage.

46. He would refer to the plaintiff as a Nazi, stupid German and so forth.

47. Yet, the City of Chicago failed to stop Sergeant Knasiak from making such harmful and discriminatory comments and statements.

48. The plaintiff repeatedly complained to several supervisors about Sergeant Knasiak harassing him and discriminating against him based upon his national origin and Jewish religion, but such supervisors ignored the plaintiff and did nothing.

49. However, the defendant, City of Chicago, continued to allow the discrimination and hostile work environment against the plaintiff, during the three years of the investigation by the internal affairs division.

50. The City of Chicago failed to take any immediate and appropriate corrective action to ensure that Plaintiff would not be subject to further discrimination and harassment.

51. The harassment was sufficiently pervasive and severe as to alter the conditions of Plaintiff's employment and to create a hostile, intimidating and/or abusive work environment.

52. The City of Chicago created a hostile, work environment for the plaintiff, adversely affecting his ability to perform his duties.

53. The City of Chicago treated the plaintiff differently based on his German national origin than those with other types of national origin.

54. During the many years that Sergeant Knasiak discriminated and harassed the plaintiff, the plaintiff suffered stress and fear. This fear and stress interfered with his work conditions and ability to perform his work.

55. The City of Chicago acted blindly towards discrimination and harassment.

56. The City of Chicago's supervisors failed to take any action against Sergeant Knasiak. Therefore, the defendant, City of Chicago, authorized, commanded, acquiesced or assented to Sergeant Knasiak harassing the plaintiff.

57. By failing to prohibit Sergeant Knasiak, and thus, encouraging him, the City of Chicago specifically intended to injure the plaintiff.

58. Despite Plaintiff's repeated complaints, the City of Chicago continued to allow Sergeant Knasiak to discriminate and harass the plaintiff.

59. The City of Chicago ratified Sergeant Knasiak's repeated discrimination and harassment of the plaintiff.

60. The plaintiff has suffered pain, humiliation and embarrassment and will continue to suffer pain, humiliation and embarrassment.

61. The City of Chicago, by failing to prohibit Sergeant Knasiak from repeatedly harassing the plaintiff, acted willfully and wantonly.

*Retaliation*

62. After the plaintiff complained about Sergeant Knasiak's discrimination and harassment of the plaintiff, Sergeant Knasiak retaliated against the plaintiff.

63. The defendant required the plaintiff to work in a police car by himself in a high crime neighborhood.

64. This is true though other officers had a partner in the police car with them in a high crime area.

65. Also, this is true though the plaintiff had seniority over many other officers who were assigned to areas where the crime level was lower.

66. Moreover, when the defendant through its agents would assign the plaintiff to work at a nearby hospital to complete police reports, the defendant through its agents would require the plaintiff to use his own car to travel to the hospital.

67. Whereas, other officers who were not discriminated against were given Chicago Police Department cars to travel to the hospital.

68. The defendant would constantly change the plaintiff's starting times, though other officers who did not complain of discrimination and harassment were given steady starting times.

69. Constantly, the defendant would assign the plaintiff to work alone in the police car at night without a partner, though other officers who did not complain of discrimination and harassment were given steady partners.

70. When the defendant would assign a partner to the plaintiff, the defendant would not assign a steady partner, but would regularly change the plaintiff's partner, though other officers who did not complain of discrimination and harassment were given steady partners.

71. Constantly, the defendant would change the plaintiff's beat, though officers who did not complain of discrimination and harassment were given a far steadier beat.

72. Furthermore, Sergeant Knasiak would inform the plaintiff that he would get the plaintiff.

73. Though the plaintiff was higher on the list awaiting the position of canine patrol, those who were lower on the list received the position instead of the plaintiff.

74. Before complaining about the continual harassment and discrimination by Sergeant Knasiak, the plaintiff did not have a disciplinary record since 1994.

75. After complaining about Sergeant Knasiak's harassment and discrimination, the plaintiff was suspended three times totaling 15 days.

76. The defendant retaliated against the plaintiff by not keeping his charges of discrimination, harassment and retaliation confidential, but allowing them to be the talk of the police station.

77. Regarding a charge regarding a pet store where the plaintiff had purchased a puppy who thereafter was sick regarding emergency care, Sergeant Betty Woods found that the charge was not sustained. However, Lt. Timothy Bialek, in retaliation, sustained the charge, though employees have attended to their personal matters during work hours.

78. The defendant retaliated against the plaintiff through Lt. Carson Ernest who in or about the middle of 2007 threatened to get the plaintiff because he had been suspended for three days relating to the plaintiff's charges against Sergeant Knasiak.

79. The City of Chicago allows and tolerates a custom and practice of supervisors, that is, sergeants, lieutenants and others in management, retaliating against subordinates who complain about retaliation and harassment.

80. The defendant's acts of retaliation through its officers had a causal connection with the plaintiff's complaints of harassment.

81. As a direct and proximate result of the defendant's willful, knowing and intentional discrimination and retaliation against the plaintiff, the plaintiff has suffered and will continue to suffer pain and suffering.

*Count I: §1983 and §1981 claims against the City of Chicago*

82. The plaintiff incorporates by reference to previous allegations in the complaint.

83. For years, Sergeant Knasiak in front of other sergeants, lieutenants and so forth would make discriminatory and harassing remarks against the plaintiff based upon his German nationality and Jewish religion.

84. For years, Sergeant Knasiak in front of other sergeants and lieutenants would discriminate against and harass the plaintiff based on his German national origin and Jewish religion.

85. For several years, including throughout 2006, Sergeant Knasiak discriminated against and harassed the plaintiff based on his Jewish religion and German national origin, though he did not discriminate against those who were not German and Jewish.

86. Sergeant Knasiak's harassment, discrimination and retaliation against the plaintiff were open and public, often at roll call and done under color of state law.

87. The harassment, discrimination and retaliation that the plaintiff suffered were based upon his German national origin and Jewish religion.

88. Sergeant Knasiak felt comfortable discriminating against, harassing and retaliating against the plaintiff for several years, knowing that the city would do little to nothing against him.

89. In fact, Lt. Carson Earnest, the acting watch commander of the District at the Chicago Police Department where the plaintiff and Sergeant Knasiak were employed, told the plaintiff to put on boxing gloves and fight it out with Sergeant Knasiak relating to the

plaintiff's claims of harassment, discrimination and retaliation.

90. Even after the plaintiff filed a written complaint with the internal affairs division, during a three-year investigation, the city did nothing to prevent Sergeant Knasiak from continuing to harass, discriminate against and retaliate against the plaintiff.

91. The internal affairs division had claims of discrimination and harassment against Sergeant Knasiak by other officers other than the plaintiff.

92. Yet, the city of Chicago did nothing to separate Sergeant Knasiak from the victims.

93. Effectively, the city of Chicago acquiesced, approved and allowed the continual discrimination, harassment and retaliation by a Sergeant against subordinates.

94. The city's failure to train/instruct against national origin discrimination, national origin harassment, religious discrimination, religious harassment and retaliation demonstrates a reckless disregard and deliberate indifference to the constitutional rights of the plaintiff and other victims of harassment, discrimination and retaliation.

95. With a moral certainty, the city with reckless disregard and deliberate indifference knew that without stopping the continual discrimination and harassment, the probability would increase that Sergeant Knasiak would continue to discriminate, harass and retaliate against the plaintiff and others, such as, officer Edward Berger and officer Abuzanat.

96. With a moral certainty, the city with reckless disregard and deliberate indifference knew that without disciplining Sergeant Knasiak and allowing his continual discrimination and harassment and retaliation, the probability would increase that supervisors would ignore complaints of harassment, discrimination and retaliation of subordinates, particularly when they are lodged against a fellow supervisor.

97. But for its reckless disregard and deliberate indifference, the city knew that disciplining its employees for discrimination, harassment and retaliation would decrease the

probability that supervisors to whom a victim complained would ignore the complaints of harassment, discrimination and retaliation.

98. But for its reckless disregard and deliberate indifference, the city knew that its failure to conduct a prompt and timely investigation would allow the harasser, discriminator and retaliator to continue to discriminate, harass and retaliate against the victim.

99. But for its reckless disregard and deliberate indifference, the city knew that its failure to separate the harasser, retaliator and discriminator from the victim during the investigation would allow the harasser, retaliator and discriminator to continue to harass, retaliate and discriminate against the victim.

100. By failing to take appropriate actions, and failing to institute appropriate policies, the city, acting with reckless disregard and deliberate indifference, knew that its omissions and commissions would result in constitutional violations.

101. The city's acts and practices, and failure to institute appropriate policies and procedures, have a causal connection with the harassment, discrimination and retaliation that the plaintiff suffered.

102. As a direct and proximate result of the defendant's willful, knowing an intentional discrimination, harassment and retaliation against the plaintiff, the plaintiff suffered and continues to suffer.

103. The plaintiff is entitled to general and compensatory damages in amounts to be proved at trial.

Wherefore, the prays that the Honorable Court will enter judgment for the plaintiff and against the defendant for violating his Civil Rights Act, and grant relief including, but not limited to:

    a. Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the City of Chicago's violations;

    b. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's rights;

    c. Ordering the City of Chicago to pay the plaintiff attorney fees and costs for violating his rights;

    d. Granting all other relief to make the plaintiff whole because of the defendant's violations of his rights.

*Count VI: §1983 claims against Sergeant Knasiak*

104. The plaintiff incorporates by reference the previous allegations of the complaint.

105. The defendant treated the plaintiff unequally, violating the equal protection clause because the plaintiff was Jewish and/or German.

106. The defendant treated the plaintiff unequally, violating the equal protection clause because the plaintiff filed a complaint against the defendant based upon discrimination and harassment.

107. The defendant violated the plaintiff's First Amendment rights entitling the plaintiff to engage in free speech by filing a complaint against the defendant for violating the plaintiff's civil rights.

108. The defendant violated the plaintiff's rights by retaliating against the plaintiff because the plaintiff filed charges of discrimination and harassment against the defendant.

Wherefore, the plaintiff prays that this court will enter judgment for compensatory and punitive damages for the plaintiff and against the defendant for violating his rights, and grant relief including, but not limited to:

    a. Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the defendant's

13

      violations of 42 USC §1983;

    b. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights;

    c. Ordering the defendants to pay the plaintiff attorney fees and costs for violating 42 USC §1983;

    d. A declaration that the defendant violated 42 USC §1983.;

    e. Retaining jurisdiction to ensure that the defendant stops violating the law against the plaintiff;

    f. Granting all other relief to make the plaintiff whole because of the defendant's violations of 42 USC §1983.

*Count VII: §1981 claims against Sergeant Knasiak*

144. The plaintiff incorporates by reference the previous allegations of the complaint.

145. The defendant violated the plaintiff's rights against race discrimination.

Wherefore, the plaintiff prays that this court will enter judgment for compensatory and punitive damages for the plaintiff and against the defendant for violating his rights, and grant relief including, but not limited to:

    a. Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the defendant's violations of 42 USC §1981;

    b. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights;

    c. Ordering the defendants to pay the plaintiff attorney fees and costs for violating 42 USC §1981;

    d. A declaration that the defendant violated 42 USC §1981;

    e. Retaining jurisdiction to ensure that the defendant stops violating the law against the plaintiff;

    f. Granting all other relief to make the plaintiff whole because of the defendant's violations of 42 USC §1981.

       Respectfully submitted,

       _____
       Joseph A. Longo

**LONGO AND ASSOCIATES, LTD.**
Joseph A. Longo, Esq.
2100 West Haven
Mount Prospect, IL  60056
847/640-9490
Attorney Number 53635