IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DETLEF SOMMERFIELD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.    08 CV 3025 |
| | ) | |
| CITY OF CHICAGO | ) | Honorable Judge Gottschall |
| SERGEANT KNASIAK #1841 | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND TO STAY PROCEEDINGS**

*I.  Facts*

The plaintiff has worked for the Chicago Police Department since 5 July 1994.  In or about January 2000, Sergeant Knasiak was transferred to the plaintiff's area, making the plaintiff subordinate to him.  The plaintiff is a German Jew who emigrated to the United States. Repeatedly, openly and publicly at roll call where other officers, sergeants and lieutenants were present and in the hallways of the Police Department, Sergeant Knasiak would ask the plaintiff, why didn't Hitler kill all of you Jews; burn Jew burn; how do you fit 1000 Jews inside of a car--by putting them in the ashtray; you Jews are bloodsucking parasites; don't you two jagoffs go pulling over Jews and niggers all night; Germans should be shot in the head for not getting rid of the Jew problem; did your parents crawl from under the fence in the concentration camp; f-k--g Germans can't do anything right; they missed a whole bunch of Jews and now they are living in this f--ked up country; Germans are just like niggers, couldn't get rid of them then, can't get rid of them now; f--k--g Jew boy and so forth.  Sergeant Knasiak also referred to African-Americans as niggers, Mexicans as spiks and so forth.  As stated, Sergeant Knasiak attacked people openly and publicly in front of other sergeants, police officers and lieutenants.

Repeatedly, the plaintiff informed Sergeant Knasiak that his attacks on the plaintiff's Jewish heritage and German descent were painful.  Repeatedly, the plaintiff asked Sergeant Knasiak to stop

1

making references to his Jewish heritage. Yet, repeatedly, Sergeant Knasiak refused. Even though Sergeant Knasiak openly and publicly made discriminatory statements and comments relating to the plaintiff's Jewish religion, the City of Chicago failed to stop Sergeant Knasiak from making such harmful and discriminatory attacks and insults.

The plaintiff complained to several supervisors orally, but they did nothing to stop Sergeant Knasiak.  Indeed, when the plaintiff complained to Lt. Carson Ernest, Lt. Carson Ernest told the plaintiff to put on boxing gloves and fight it out with Sergeant Knasiak.

In March 2004, the plaintiff filed a written complaint with the internal affairs division against Sergeant Knasiak for discrimination and harassment. After investigating the plaintiff's claims for about three years, in 2007, the internal affairs division found that Sergeant Knasiak discriminated against and harassed the plaintiff.

During the investigation of approximately 3 years, the defendant, City of Chicago, continued to allow the hostile work environment against the plaintiff. The City of Chicago failed to take any immediate and appropriate corrective action to ensure that Plaintiff would not be subject to further harassment, discrimination and retaliation. Despite Plaintiff's repeated complaints, the City of Chicago continued to allow Sergeant Knasiak to harass the plaintiff.

In approximately June 2004, the plaintiff filed a complaint with the EEOC. The EEOC found substantial evidence that Sergeant Knasiak discriminated against and harassed the plaintiff based upon his national origin and religion.

After the plaintiff complained about Sergeant Knasiak's discrimination and harassment of the plaintiff, Sergeant Knasiak retaliated against the plaintiff. Sergeant Knasiak would inform the plaintiff that he would get the plaintiff. He required the plaintiff to work in a police car by himself in a high crime neighborhood even though other officers had a partner in the police car with them in a high crime area. Also, Plaintiff had seniority over many other officers who were assigned to areas where the crime level was lower.

In addition, when the defendant through its agents would assign the plaintiff to work at a nearby hospital to complete police reports, the defendant through its agents would require the plaintiff to use his own car to travel to the hospital. Whereas, other officers who were not discriminated against were given Chicago Police Department cars to travel to the hospital.

After the plaintiff complained about discrimination and harassment, the defendant on three occasions suspended the plaintiff for five days, totaling 15 days. Whereas, during his 14 years with the Chicago Police Department, he had no disciplinary record until he complained about discrimination and harassment.

Also, the plaintiff was not given the position of canine patrol, though he had passed the test and was higher on the list of those eligible to become a canine patrol officer than the police officer who was selected to become the canine patrol officer. Moreover, Lt. Carson Ernest, after being informed that he would be suspended for three days because of the plaintiff's charges of harassment and discrimination against Sergeant Knasiak, told the plaintiff that he would get the plaintiff.

The plaintiff filed his lawsuit on 7 June 2006 in #06 C 3132. After the lawsuit was filed and in particular in the depositions of January 2008 and February 2008, the plaintiff learned 1) that the defendant/city has a policy, custom and practice of reckless and deficient training regarding discrimination and harassment, 2) that the defendant fails to complete investigations on discrimination and harassment timely, but takes a very long time, 1-3 years. Indeed, the defendant took three years to complete the investigation regarding the plaintiff's complaints. Apparently, the investigation was completed in June 2007. The defendant never informed the plaintiff of the completion of the investigation because the defendant does not have a policy or practice to inform the victim of the results of the investigation.

The law requires the defendant to act promptly when investigating claims of discrimination and harassment, particularly as the accused can continue to victimize the victim. The plaintiff sought to include these claims in the first lawsuit, 06 C 3132 and to seek justice against Sergeant Knasiak for his

deplorable attacks against the plaintiff and others based on their Jewish heritage and national origin.

This court granted the plaintiff's motion to allow the second amended complaint in 06 C 3132 in part, provided that the plaintiff would not propound new discovery, and denied the motion in part relating to Sergeant Knasiak. As the statute of limitations had not run, the plaintiff filed the instant lawsuit against Sergeant Knasiak relating to those claims within the statute of limitations and the defendant/city relating to those claims concerning Sergeant Knasiak within that statute of limitations.

## II. Despite the defendant's argument, this Court's order does not indicate that the plaintiff could not file a new lawsuit, but partly denied the motion on procedural bases

The plaintiff objected to the magistrate judge's order of 4 March 2008 not granting the plaintiff's motion to allow the second amended complaint. In the plaintiff's motion, the plaintiff argued that the plaintiff sought leave to amend the complaint to include §1981 and §1983 claims against Sergeant Knasiak, so that a new lawsuit would be unnecessary. In the plaintiff's motion to allow the second amended complaint, the plaintiff indicated that the statute of limitations had not run against Sergeant Knasiak, so that a new lawsuit could be filed against him.

On or about 29 April 2008, the Honorable Judge Gottschall granted partly and denied partly the plaintiff's motion to allow the second amended complaint. Contrary to the defendant's repeated arguments in their current motion, this Court's order did not indicate that the plaintiff could not file a new lawsuit. Conspicuously, the defendant cites no case law for their argument that a new lawsuit cannot be filed. The reason is because the law allows a new lawsuit to be filed.

With the new lawsuit, the plaintiff addressed the court's rationale relating to discovery in the other lawsuit, case #06 C 3132. The court allowed the new claims provided that new discovery would not be propounded in the first lawsuit, so as not to delay that lawsuit. The plaintiff addressed this rationale by filing a new lawsuit in which discovery could be had to whatever extent it may be needed and so full discovery on the new claims would be unnecessary in the other lawsuit, #06 C 3132. By filing a new lawsuit, the plaintiff addressed this court's interest to keep the other lawsuit manageable

and on track.  Also, by filing a new lawsuit, most likely, the plaintiff would not have to seek leave of Court to propound additional discovery as this Court's 29 April 2008 order indicated that leave of Court would be necessary to propound additional discovery.

### III.  A misunderstanding exists regarding the plaintiff's need for discovery in the other lawsuit, #06 C 3132

On 24 June 2008, the court entered an order regarding the plaintiff's objection to magistrate judge's 5/6/2008 order. In the plaintiff's objection to the magistrate judge's order, the plaintiff argued the magistrate judge had respectfully erred by not ordering the defendant to produce documents needed for the plaintiff to prove that the defendant has a custom and practice of not acting promptly to investigate complaints of harassment, discrimination and harassment, but rather, takes a long time to conduct such investigations.

Notably, when not granting the plaintiff's motion, the magistrate judge did not indicate that the plaintiff had represented that the plaintiff did not need such discovery when he filed the motion to allow the second amended complaint.  Nor did the defendant argue this.  The reason why such arguments were not made is because the plaintiff had specifically argued that he needed documents.

Lt. Susan Clark, the defendant's Rule 30 (b) (6) witness, testified in #06 C 3132 that she has approved investigations lasting at least two years. Also, Lt. Susan Clark, the commanding officer in charge of several departments, including statistics, testified that she could produce documents relating to investigations of complaints of discrimination, harassment and retaliation, indicating when an investigation started and was resolved and so forth. Therefore, the plaintiff requested such documents. When the defendant refused to produce them at whim without giving any reason whatsoever, the plaintiff filed a motion to compel.  The plaintiff's motion was filed <u>before</u> the 4 March 2008 hearing before the magistrate judge relating to the plaintiff's motion to allow the second amended complaint. Therefore, the defendant attempts to mislead this Court by arguing that the plaintiff filed motions related to the above discovery after the close of discovery which was on 16 May 2008--more than 60

days later.  Also, other motions related to ongoing discovery issues regarding other aspects of the complaint.

In the plaintiff's objection to the magistrate judge's order not allowing the plaintiff to obtain the needed discovery to prove his claim which Lt. Susan Clark indicated she could produce, the plaintiff argued that the honorable magistrate judge, respectfully, erred by indicating that he would not allow the plaintiff to have these documents based upon the premise that a plaintiff is only "entitled to rules, regulations and procedures that detail the times that investigations ought to take or ought to follow". 5/6/08 transcript, page 20.  Also, the plaintiff argued that though a defendant might have an alleged policy in form, they may have no policy in substance.  The case law requires that any alleged policy be executed and implemented in substance.  Therefore, whether the defendant has a policy only in writing is irrelevant if the defendant fails to implement the policy.  A plaintiff can only challenge the defendant's alleged policy through discovery.

On 24 June 2008, the court entered an order affirming the magistrate judge's disallowance of these documents.  This Honorable Court indicated that it "is unable to reconcile Sommerfield's unconditional assurance, in a motion for leave to amend, that he did not need additional discovery, with his current assertion, in a discovery motion, that discovery is essential to proving his newly added claims.  As a result, it rejects this argument as a valid basis for overruling Judge Cole's order".  6/20/08 order, page 6, entered 6/24/08.  Thereafter, the plaintiff filed a motion for partial reconsideration related to only one issue of the multiple issues which the plaintiff had presented in the plaintiff's objection to the magistrate judge's 6/20/08 order.

Briefly, the court's order affirming the magistrate's order referred to a part of the transcript related to only one aspect of the new claims, that is, deficient training.  Later in the transcript, the plaintiff specifically indicates that he needs documents relating to the defendant's lengthy investigations.  Therefore, a misunderstanding seems to have existed.  This is covered more fully in the plaintiff's motion for partial reconsideration.

6

Despite the defendant's argument, regarding the plaintiff's motion to allow the second amended complaint in #06 C 3132, no discussion exists regarding the plaintiff's need to propound additional discovery. Notably, the plaintiff had requested the needed discovery since 8 February 2008.

At the hearing on 4 March 2008, the plaintiff indicated that he needed documents to which Lt. Susan Clark referred in her deposition regarding investigations and that he had a motion pending to compel relating to such documents. (transcript 22:24-23:1); 3/4/08 transcript, pages 22, 23. At the 4 March 2008 hearing, the honorable magistrate judge asked the plaintiff if he would need more discovery regarding the lengthy amount of time the defendant takes to complete investigations and the plaintiff responded that he would "as regards to that". Because the plaintiff specifically indicated that he would need discovery relating to the plaintiff's claim of the defendant's deficient investigations, it appeared that a misunderstanding might have existed relating to the 20 June 2008 order. For this reason, the plaintiff presented his partial motion to reconsider.

As the plaintiff argued in the plaintiff's motion for partial reconsideration, consistently, the plaintiff has sought the requested discovery from the defendant, that is, before the plaintiff's motion to allow the second amended complaint, at the hearing on the plaintiff's motion to allow the second amended complaint and after the hearing. All of the plaintiff's requested discovery was propounded before the 4 March 2008 hearing and before this Court's 29 April 2008 order. In this Court's 29 April 2008 order, this Court indicated that the plaintiff could not propound additional discovery without leave of Court. As stated, the plaintiff's discovery occurred before the 29 April 2008 order and before the 4 March 2008 hearing.

Notably, the defendant served the plaintiff with their new discovery on 30 June 2008. The Honorable Judge Gottschall in the 29 April 2008 order ordered, "if the city believes it needs additional fact discovery to defend itself against the new claims, it may propound requests no more than 14 days after plaintiff files the second amended complaint". The plaintiff filed the second amended complaint on 10 May 2008. Therefore, the defendant had until 24 May 2008 to propound any new discovery.

However, the defendant did not propound their new discovery until 30 June 2008.

**IV.  The defendant's motion to dismiss should be denied because the law allows the plaintiff to file a new lawsuit**

The defendants seek a drastic measure, that is, dismissing the complaint with prejudice.  The defendants fail to indicate the standard, which a court considers when exercising its discretion. When deciding the issue of cases involving similar parties:

> 'the one must be materially on all fours with the other. . . . [T]he issues `must have such an identity that a determination in one action leaves little or nothing to be determined in the other.' Congress Credit Corp. v. AJC Int'l, Inc., 42 F.3d 686, 689 (1st Cir. 1994) (quoting Thermal Dynamics Corp. v. Union Carbide Corp., 214 F. Supp. 773, 774 (S.D.N.Y. 1963)); see also Computer Assocs. Int'l v. Altai, Inc., 893 F.2d 26, 29 (2d Cir. 1990) (improper to enjoin related proceeding where claim therein would not have been compulsory counterclaim); I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551 (11th Cir. 1986); Merrill Lynch, Pierce, Fenner & Smith v. Haydu, 675 F.2d 1169, 1173 (11th Cir. 1982)'.

As cited in Smith v. SEC, 129 F.3d 356, 361 (6th Cir.1997) "A court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it." Smith v. SEC, 129 F.3d 356, 361 (6th Cir.1997).

The defendant has failed to meet their burden of proof and persuasion.  The defendant has failed to prove that a determination in one lawsuit will leave nothing to be determined in the other lawsuit. The defendant has failed to prove that both lawsuits are identical on all fours. Therefore, as the defendant has failed to meet their burden of proof and persuasion, this court may decide to move forward and deny the defendant's motion which seeks dismissal with prejudice--a drastic measure.

The defendant cites two cases for their motion to dismiss.  Each case will be discussed in turn. The defendant's first citation is Ridge Gold Standard Liquors Inc. v. Joseph Seagrams and Sons Inc., 572 F.Supp. 1210 (N.D.Ill. 10/17/1983). Ridge, an antitrust class action case was before the court on the defendant's motion for summary judgment, not a motion to dismiss as the defendants in the instant case.  Discussing the history of the case, the court indicated that before it had dismissed the named

plaintiff, the plaintiff filed a motion to amend the complaint to include additional plaintiffs on 5 November 1982.

Two of the additional plaintiffs were also plaintiffs in another lawsuit that was filed on 29 April 1981--approximately 1-1/2 years earlier --in the northern district of Illinois against the same defendant, Joseph Seagrams and Sons.  The court indicated that the parties in both lawsuits were identical.  Also, the court noted that both lawsuits were before two different judges in the Northern District of Illinois and that conflicting decisions could be rendered.  Notably, the court did not hold that the law does not provide that the plaintiff can file two lawsuits.

Rich Gold is distinguishable.  First, both lawsuits do not have identical parties, but different parties.  In the instant lawsuit, Sergeant Knasiak is a defendant.  He is not a defendant in #06 C 3132.  Secondly, the instant lawsuit involves the claims within the statute of limitations concerning Sergeant Knasiak and relating to the City.  Therefore, the instant lawsuit would involve Sergeant Knasiak's abusive discriminatory and deplorable insults to the plaintiff occurring during the statute of limitations of the instant lawsuit.  Whereas, the other lawsuit would involve those deplorable attacks occurring before the time frame of the instant lawsuit.

Third, regarding those claims, the instant lawsuit seeks recovery under §1981 and §1983.  The other lawsuit, relating to Sergeant Knasiak, excludes § 1981 and §1983 claims.  Also, the other lawsuit has claims under title VII relating to those discriminatory acts occurring before the statute of limitations of the instant case.  Fourth, the instant lawsuit and the other lawsuit, #06 C 3132 are before this Honorable Court.  They are not before two different judges, but before the same judges. Therefore, the concern in Rich Gold of conflicting decisions by two different judges is nonexistent.

The defendant's second citation is Serlin v. Arthur Andersen & Co., 3 F.3d 221 (7th Cir. 1993). In Serlin, the plaintiff filed two different lawsuits which we were before two different judges.  Judge Aspen dismissed the case before him because it was identical to the case before Judge Alesia. Affirming the decision, the court noted that two identical cases were before two different judges.

The instant case is different. Therefore, <u>Serlin</u> is distinguishable. The two cases are not before two different judges. Rather, they are before the same judge. The instant case is before the Honorable Judge Gottschall. Indeed, when the plaintiff's attorney completed the civil docket sheet, the plaintiff's attorney specifically noted that a similar lawsuit existed, 06 C 3132 and that such lawsuit was before the Honorable Judge Gottschall. Therefore, the new lawsuit was assigned to this Honorable Court.

In short, the defendant's two cases do not support their motion to dismiss, but rather, support the plaintiff because the instant lawsuit includes a different defendant and the instant lawsuit is not before different judges, but before the same judges. Also, the instant lawsuit includes a different defendant with claims relating to that defendant. A resolution of the first lawsuit would not resolve the claims in the second lawsuit. The claims relating to the City would relate to the claims to the individual defendant within the statute of limitations of the second lawsuit. The instant lawsuit involves different parties and different claims. <u>Heller Financial Leasing Inc.. v. Gordon</u>, 03C6326, 2004 WL 2806458. (N.D.Ill. 12/02/2004) (denying motion to dismiss based on alleged duplication based upon the differences of the two lawsuits). Exhibit I.

Resolving the claims in the other lawsuit, #06 C 3132, would not resolve all of the claims in the instant lawsuit, particularly as they involve a different defendant. <u>Dominion Nutrition, Inc. v. Cesca</u>, 04C4902. (N.D.Ill. 05/10/2005) (though substantial overlap existed between the two complaints in the two different lawsuits, the court denied the motion to stay). Exhibit II.

### V.  Substance of the plaintiff's amendments regarding the defendant's deficient training and deficient customs regarding investigations

The plaintiff added counts against the City of Chicago under §1983 and §1981. In January 2008, the plaintiff took the deposition of the City's Rule 30 (b)(6) witness regarding training relating to discrimination and harassment. On 8 February 2008, the plaintiff took the deposition of the City's Rule 30 (b)(6) witness regarding investigations relating to discrimination and harassment. Based on these depositions, the plaintiff sought leave in #06 C 3132 to include the appropriate allegations in the

second amended complaint.

In the aforementioned Rule 30(b)(6) depositions, the plaintiff learned about the defendant's deficient policies and procedures regarding training.  In such depositions, the plaintiff learned that police officers are only trained regarding alleged policies against discrimination at the police academy where police officers are trained on becoming police officers.  If a police officer becomes a sergeant, then such policies are reiterated at sergeant school.  The only other training involves playing a video of approximately 6 minutes at roll call involving specifically and only sexual harassment.

No policy exists to ensure that all officers are trained on the sexual harassment video.  Indeed, when a training video is played during roll call, police officers read the newspaper, talk loudly, watch television and so forth--without any instruction from the supervisor to watch the video.  Other than the police academy, no other training exists regarding policies against national origin discrimination, religious discrimination and retaliation.  Therefore, if a police officer attended the police academy 30 years ago, he would not have received any further training relating to national origin discrimination, religious discrimination and retaliation, despite the fact that the law might have changed over the past 30 years. The plaintiff discovered the defendant's training policies in the plaintiff's attempt to defend himself against the defendant's Faragher/Ellerth affirmative defense.  Burlington Industries Inc. v. Ellerth, 524 US 742 (1998) and Faragher v. City of Boca Raton, 524 US 775 (1998).

Also, in such Rule 30(b)(6) depositions, the plaintiff learned that investigations can take two years and three years.  In the instant case, the investigation of the plaintiff's complaints of discrimination, harassment and retaliation took approximately 3 years. During the three-year investigation, Sergeant Knasiak continued to harass, discriminate and retaliate against the plaintiff. The plaintiff did not know when the investigation was completed because the defendant has no policy of informing the victim about the results of the investigation.

Moreover, the defendant spending two or three years to investigate complaints of discrimination and harassment conveys to employees that the defendant discounts such complaints and

effectively conveys to employees that they can continue to harass and discriminate.  Moreover, the city/defendant has no policy to separate the harasser from the victim.  The city/defendant will only separate the harasser from the victim if the victim requests that he be separated from the harasser. Notably, though the city/defendant produced documents that at the end of the three-year investigation, they suspended Sergeant Knasiak for 10 days, Sergeant Knasiak testified that he was not suspended and in fact retired.

### VI.  The Magistrate Judge on 17 July 2008 indicated that the defendant's conduct was unconscionable

Regarding the above Rule 30 (b) (6) deposition, the plaintiff had issued notices of depositions for these witnesses in August 2007. Yet, the defendant had not produced these witnesses until January and February 2008. On numerous occasions, through numerous telephone calls, numerous correspondences, and numerous in person requests, the plaintiff requested to take these depositions much sooner, but to no avail.

In the instant case, the defendant/city has adamantly refused to allow discovery of Sergeant Knasiak's current out-of-state address, so that the plaintiff could serve him with the lawsuit. Throughout both of these lawsuits the city has refused to agree on anything and has fought everything.

On 17 July 2008, the Honorable Magistrate Judge Cole indicated that the defendant regularly acts evasively and that their conduct is unconscionable. Throughout this case, the defendant has failed to return telephone calls, has failed to respond to correspondences, has failed to answer discovery without the necessity of the plaintiff having to file motions to compel, has failed to produce their employees for depositions without the plaintiff having to make several telephone calls and having to write several letters requesting those depositions for months and so forth.

Repeatedly in the other case and in the instant case, the defendant chooses to attack the plaintiff's attorney by referring to an irrelevant case of nearly 10 years ago. The plaintiff's attorney is

not a party to the instant case. Assertions and accusations, which cast a derogatory light upon someone "have no place in a court of law" and "should not be permitted to pollute the records of the Court." Stanfield v. Horn, 704 F. Supp. 1486, 1487 (M.D. Tenn. 1988); State v. Bomer, 162 S.W. 2d 515, 521 (Tenn. 1942) ("Lawyers are officers of the court, and when one wilfully, maliciously, and without probable cause, defames another at the bar of the court, and invokes its process in furtherance of his purpose to injure, it is a wrong against the dignity and honor of the court itself"). Attorneys have an ethical obligation to refrain from personal attacks on opposing counsel. C&F Packing Co., 126 F.R.D. at 681 citing United States v. Mealy, 851 F.2d 890, 904 (7th Cir. 1988)).

**VII.  Courts hold that Rule 12(f) motions are drastic and are usually denied**

"Motions to strike pursuant to 12(f) are generally disfavored and usually denied because they are a drastic remedy." Clay vs. Brown, 1998 WL 417503,*1 (N.D.Ill., 7/21/98), Gottschall, J. Exhibit III. Discussing lengthy complaints and holding that dismissing them because they were somewhat long is an abuse of discretion, the court in Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir.2001) held:

> The question we must decide...is whether a district court is authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading. As our use of the word 'disposable' implies, we think not, and therefore that it is an abuse of discretion ...to dismiss a complaint merely because of the presence of superfluous matter. That would cast district judges in the role of editors, screening complaints for brevity and focus; they have better things to do with their time. In our many years of judging, moreover, we cannot recall many complaints that actually met the standard of chaste, Doric simplicity implied by Rule 8 and the model complaints in the Forms Appendix. Many lawyers strongly believe that a complaint should be comprehensive rather than brief and therefore cryptic. They think the more comprehensive pleading assists the judge in understanding the case and provides a firmer basis for settlement negotiations. This judgment by the bar has been accepted to the extent that complaints signed by a lawyer are never dismissed simply because they are not short, concise, and plain.

Emphasis added.  In Clay vs. Brown, 1998 WL 417503,*1 (N.D.Ill., 7/21/98), Gottschall, J. Exhibit III, the court described the defendant's burden. The court held that the defendant "must show

that the allegations in question are 'so unrelated to plaintiff's claims as to be void of merit and unworthy of any consideration.'" Id. Also, the defendant must prove that undue prejudice would exist. id. "Undue prejudice will result if the allegation has the effect of confusing the issues or is so lengthy and complex that it places an overwhelming burden on the responding party." id. G.C. & K.B. Investments, Inc. v. Fisk, 2002 WL 27772,*7 (E.D.La., 1/8/2002) ("such a motion should only be granted when "the allegations are prejudicial to the defendant "). Exhibit V.

Applying the law against the defendant's motion, the defendant has failed to meet their burden. The defendant has failed to demonstrate that the plaintiff's claims are void of merit and not worthy of consideration. Also, the defendant has failed to prove undue prejudice. The defendant has failed to prove that the allegations caused any confusion of the issues or that the allegations are so lengthy that it places an overwhelming burden on the responding party. As the defendant has failed to meet their burden, this Court may decide to take the next step and deny the defendant's motion.

Indeed, "motions to strike under Rule 8(a) are disfavored as long as portions of the complaint have put defendants on notice of the claims against them, particularly when striking the disputed paragraphs may result in dismissal." Manuel v. Lucenti, 2004 WL 2608 355,*2 (N.D.Ill., 11/16/04), Gottschall, J. Exhibit IV. In Manuel, the plaintiff's pro se complaint was 244 paragraphs. The defendant charged that the complaint was confusing, fictional and so forth. Despite the defendant's legal conclusions, the defendant cited only 25 paragraphs to support their motion. The court denied the defendant's motion.

In the instant case, the defendant has failed to identify any paragraph to support their argument. Consequently, the defendant presents no paragraphs about which the plaintiff could respond, placing the plaintiff at an unfair disadvantage. Essentially, the defendant has failed to meet their burden. Therefore, this Court may decide to deny the defendant's motion.

## VIII.  *Defendant's motion to stay is moot*

The defendant seeks to stay this case pending a ruling on their motion to dismiss. When the parties appeared in court on the defendant's motion to dismiss, the defendants did not request a stay. Therefore, the defendant has waived the issue. Also, when this honorable court issues its ruling, the issue will have become moot as the defendant requested a stay pending the resolution of the defendant's motion to dismiss.

## *Conclusion*

The defendant's seek a drastic measure, that is, to dismiss with prejudice. The defendants had failed to meet their burden of proof and persuasion. Justice mandates that this case proceed. Sergeant Knasiak's humiliating insults were deplorable and made publicly at the police station. No person should have to work daily under such painful conditions, at least in this country.

Wherefore, the plaintiff prays that the Honorable Judge Gottschall will deny the defendant's motion and choose amongst the possibilities to allow the case to proceed on its merits.

Respectfully submitted,

_____
Joseph A. Longo

**LONGO AND ASSOCIATES LTD.**
Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mt. Prospect, IL   60056
(847) 640-9490
AttorneyNo.53635

15

## CERTIFICATE OF SERVICE

I, Joseph A. Longo, an attorney, certify that I served this PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STAY PROCEEDINGS by electronic filing on 31 July 2008 before 5pm.  Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.

_____
Joseph A. Longo

# EXHIBIT I

**H**Heller **Financial   Leasing**, **Inc**. v. **Gordon**
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
HELLER **FINANCIAL   LEASING**, **INC**., a Delaware corporation, Plaintiff,
v.
Arthur E. **GORDON**, et al., Defendants.
**No. 03 C 6326.**

Dec. 3, 2004.

Randall Marc Lending, M. Derek Zolner, Leslie Lorraine Allen, Vedder, Price, Kaufman & Kammholz, P.C., Chicago, IL, for Plaintiff.
Anna Jeanne Novak, Peter I. Mason, Freeborn & Peters, Chicago, IL, for Defendants and Counter-Claimants.
Daniel John Voelker, Michele Lynn Foster, Freeborn & Peters, Chicago, IL, for Defendants, Intervenor and Counter-Claimants.

*MEMORANDUM OPINION*

DERYEGHIAYAN, J.
**\*1** This matter is before the court on Defendant Arthur E. Gordon's and Rose A. Gordon's (collectively referred to as "the Gordons") motion to dismiss for lack of subject matter jurisdiction and motion to dismiss in favor of a parallel action. This matter is also before the court on Plaintiff Heller Financial Leasing, Inc.'s ("Heller") motion to dismiss the Defendants' counterclaims. This matter is also before the court on Heller's motion to strike Defendants' jury demand and on third party Pace LLC's (Pace") motion to intervene in the present action. For reasons stated below, we deny the Gordons' motions to dismiss. We also grant Heller's motion to dismiss the Defendants' counterclaims, we grant Heller's motion to strike the Defendants' jury demand, and we grant Pace's motion to intervene.

BACKGROUND

In August of 2000, Pace entered into an $18,000,000 promissory note ("Promissory Note") and Aircraft Chattel Mortgage Security Agreement with Heller. At the same time, as inducement to Heller to make the loans and to extend credit to Pace, each of the Defendants entered into guaranty agreements ("Guarantee Agreements") with Heller. In the Guaranty Agreements, Defendants agreed to pay Heller "on demand ... the due and punctual payments and performance of all indebtedness of Pace to Heller."(Guaranty Par. 1). Pace and Defendants failed to make the payments required under the agreements. In July of 2002, Pace, Defendants, and Heller entered into a Voluntary Surrender and Transfer Agreement whereby Pace agreed to voluntarily convey title to the Aircraft to Heller. Heller brought the present action against the Defendants seeking to recover the difference between the value of the Aircraft and the $18 million due and owing to Heller pursuant to the Guarantee Agreements. Defendants' obligation for the deficiency and the amount of the deficiency are the sole issues presented by Heller's complaint. Defendants have made a demand for a jury trial, and Heller has made a motion to strike this demand. Pace has also made a motion to intervene in the current action.

LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir.2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff."*Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir.1993)). For the purpose of determining subject matter jurisdiction, this court "may properly look

beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."_Ezekiel,_ 66 F.3d at 897 (quoting _Capitol Leasing Co. v. Federal Deposit Insurance Corp. .,_ 999 F.2d 188, 191 (7th Cir.1993)). However the burden of proof "on a 12(b)(1) issue is on the party asserting jurisdiction."_United Phosphorus, Ltd.,_ 322 F.3d at 946.

**\*2** In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. _Thompson v. Illinois Dep't of Prof'l Regulation,_ 300 F.3d 750, 753 (7th Cir.2002); _Perkins v. Silverstein,_ 939 F.2d 463, 466 (7th Cir.1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."_Conley v. Gibson,_ 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based._Kyle v. Morton High School,_ 144 F.3d 448, 444-45 (7th Cir.1998); _Lucien v. Preiner,_ 967 F.2d 1166, 1168 (7th Cir.1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. _Higgs v. Carter,_ 286 F.3d 437, 439 (7th Cir.2002); _Kyle,_ 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim,"_Id.,_ and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim."_Perkins,_ 939 F.2d at 466-67.

DISCUSSION

*I. Motion to Dismiss for Lack of Jurisdiction*

The Gordons contend that this action should be dismissed because Heller has not provided sufficient evidence that this court has subject matter jurisdiction. Heller asserts in its complaint that this court has diversity subject matter jurisdiction. (Comp. Par. 6). The party seeking to invoke the court's jurisdiction bears the burden of showing that subject matter jurisdiction exists. _See NLFC, Inc. v. Devcom Mid-America, Inc.,_ 45 F.3d 231, 237 (7th Cir.1995)(stating that "[t]he party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction."). Diversity jurisdiction exists if "the matter in controversy exceeds the sum or value of $75,000" and the action is "between ... citizens of different States...." 28 U.S.C. § 1332(a). For the purposes of diversity of citizenship "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...."28 U . S.C. § 1332(c)(1). In the Seventh Circuit a corporation's principal place of business is deemed the "place where the corporation has its nerve center."_Krueger v. Cartwright,_ 996 F.2d 928, 931 (7th Cir.1993).

The Gordons argue that they dealt with an entity entitled Commercial Equipment Finance Group ("CEFG") whose main offices are located in California. The Gordons theorize that CEFG is the same entity as Heller and that Heller's principal place of business is thus in California. If Heller's principal place of business was in fact in California, since the Gordons are citizens of California, there would not be complete diversity which is required for diversity jurisdiction. The Gordons speculate that Heller is located in California, but is attempting to conceal that fact by providing documentation showing that its parent company's corporate headquarters are located in Illinois. (Ans.3). The Gordons contend that Heller purposefully creates confusion between the names "Heller Financial Leasing" and "Heller Financial Inc., Leasing." (Ans.3). However, the Gordons provide no basis for such a conclusion or any explanation regarding how the Gordons came up with the two names mentioned by the Gordons.

**\*3** In fact it is the Gordons themselves that vaguely refer to entities throughout their briefs and are confused regarding the proper titles of entities. For example, after the Gordons make reference in their answer to "Heller Financial Leasing" and "Heller Financial Inc., Leasing," the Gordons make reference to an entity termed "Financial." (Ans.2). However, both of the above names contain the word "Financial." Another

example is the Gordons' reference in its answer to "Heller Financial" which again is included in both of the above mentioned names referred to by Heller. (Ans.3).

Heller filed a supplemental brief with the court to which it attached a declaration that is signed by Ron Lis ("Lis"), a Vice President for Heller Financial Leasing, Inc., which is the named plaintiff in the instant action. In the declaration Lis verifies that the corporate headquarters for Heller, the named plaintiff in this action, are located in Chicago, Illinois. Lis also states that CEFG which the Gordons contend they dealt with in California, is not a separate corporation from Heller. Lis states that CEFG is merely a division of Heller and has always been a division of Heller. The Gordons have not provided any evidence to refute the assertions made by Lis. Instead, the Gordons claim that they need further documentation and irrefutable proof that Lis is not lying in his declaration. Heller has provided a signed declaration indicating that this court has subject matter jurisdiction and the Gordons have offered absolutely no evidence that calls into doubt the sworn statement by Lis. Therefore, we deny the motion to dismiss for lack of subject matter jurisdiction.

## II. Motion to Dismiss in Favor of Duplicative Parallel Action

The Gordons seek to dismiss this action based on the fact that a similar action involving the same parties is pending in a California federal bankruptcy court. A district court may dismiss a suit "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court."*Serlin v. Arthur Andersen & Co., 3 F.3d 221, 224* (7th Cir.1993)(quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram, 572 F.Supp. 1210, 1213 (N.D.Ill.1983)*)). In determining whether another action is duplicative a district court has a "a great deal of latitude and discretion...."*Id.*(quoting *Ridge Gold, 572 F.Supp. at 1210)*. An action is duplicative of the present action if the "claims, parties, and available relief do not significantly differ between the two actions ."*Id.* (quoting *Ridge Gold, 572 F.Supp. at 1213)*. When a district court determines that another parallel proceeding should be given "priority" the action before the district court "should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests."*Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co., 203 F.3d 442, 445* (7th Cir.2000).

**\*4** Heller brought the instant action against Defendants alleging a breach of the Guaranty Agreement. Defendants in this action brought a counterclaim against Heller in this action. During the pendency of the instant action Defendant Eiseley Bennett and Defendant Jeffrey Bennett (collectively referred to as "the Bennetts") filed for bankruptcy in the Southern District of California. All claims in the instant action against the Bennetts are currently stayed due to the bankruptcy proceedings. In the bankruptcy proceedings Defendants filed an Adversary Proceeding against Heller alleging the same claims that they have included in their counterclaim in the instant action. As we will explain in detail below, we are granting Heller's motion to dismiss the counterclaim in the instant action. Thus, the same claims are no longer at issue in the two actions. The precise issues and claims in the bankruptcy proceeding are not the same as those in the instant action. We do not find that the bankruptcy proceedings involve duplicative issues, and for the above stated reasons and other reasons, we do not find that the interest of efficient and effective judicial administration would be best served by dismissing the instant action. The proper forum to address the issues in the instant action is in this court which was chosen by Heller. Therefore, we deny the Gordons' motion to dismiss this action in favor of a duplicative parallel action.

## III. Motion to Dismiss Defendants' Counterclaim

Heller seeks to dismiss Defendants' counterclaim. In November of 2000, Pace leased the aircraft in question to KFC National Management Company ("KFC"). Once Heller learned of this lease agreement, Heller notified KFC that the Aircraft Mortgage between Heller and Pace prohibited the lease of the Aircraft to third parties. KFC terminated its aircraft lease with Pace, which was subsequently followed by Pace's default on the Promissory Note. Defendants have set forth two counterclaims based on the alleged conduct by Heller, alleging tortious interference with contractual relations claims and intentional interference with prospective economic advantage claims.

When a case is before a federal court based on diversity jurisdiction the court "has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."_Allstate Ins. Co. v. Keca,_ 368 F.3d 793, 796 (7th Cir.2000). Under Illinois law, the general rules of contract construction apply to guaranty agreements._McLean County Bank v. Brokaw,_ 119 Ill.2d 405, 116 Ill.Dec. 561, 519 N.E.2d 453, 456 (Ill.1998)._See also Fimsa, Inc. v. Unicorp Financial Corp.,_ 759 F.Supp. 1297, 130 (N.D.Ill.1991)(stating that "[u]nder Illinois law ... Guaranties are contracts legally enforceable in accordance with their express provisions.). Under Illinois law, guaranty agreements should be consistently enforced when the language is clear and unambiguous, including provisions under which the guarantor waives "each and every defense." _Chrysler Credit Corp. v. Marino,_ 63 F.3d 574, 577 (7th Cir.1995). Such waiver provisions under which the guarantor waives any available defenses are enforceable under Illinois law, regardless of their severity. _United Air Lines v. ALG, Inc.,_ 916 F.Supp. 793, 795 (N.D.Ill.1991); _See also Citicorp Savings of Illinois v. Ascher,_ 196 Ill.App.3d 570, 143 Ill.Dec. 474, 554 N.E.2d 409, 411 (Ill.App.Ct.1990)(stating that "[w]here the language is not ambiguous, [the guaranty] must be construed according to its terms."); _Bank of Benton v. LaBuwi,_ 194 Ill.App.3d 489, 141 Ill.Dec. 562, 551 N.E.2d 749, 753-54 (Ill.App.Ct.1990)(stating that "[a] guaranty contract which is unequivocal in its terms must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports."). In the instant action the Guaranty Agreements entered into by the Defendants and Heller in the present case state the following:

> **\*5** Guarantor's obligations hereunder shall be unconditional (and shall not be subject to any defense, setoff, counterclaim, or recoupment _whatsoever_ ) ... irrespective of the genuineness, validity, regularity, or enforceability of the indebtedness or any conduct of Debtor [Pace] and/or Lender [Heller] which might constitute a legal or equitable discharge or a surety, guarantor or guaranty.

(Guaranty Par 1)(emphasis added). The language in the Guaranty Agreements is clear and unambiguous. The Guaranty Agreements were part of the inducement to get Heller to extend credit to Pace. These agreements function to allocate the risks of default between the parties. _See United Air Lines,_ 916 F.Supp. at 795 (finding that such provisions are an "attempt by market participants to allocate risks and opportunities."). Defendants' promise to repay the loan in the event of Pace's default was not the only consideration in these agreements. The waiver of all and any "defense, setoff, counterclaim, or recoupment whatsoever" also served as consideration and inducement for Heller to enter into the agreements and extend credit to Pace. _See Chrysler Credit,_ 63 F.3d at 578 (noting that guaranty was made to induce completion of loan). When the language in the agreements is clear and unambiguous, it is not this court's place to step in to try and read an alternate intent into the language of the guaranty agreement. _Fimsa, Inc.,_ 759 F.Supp. at 1301.

The Defendants claim that the waiver provision of the Guaranty Agreements only applies to claims that existed at the time the contract was entered into and not to claims that might arise at a later date. More specifically, they suggest that the court in _Fimsa_ only found a guaranty waiver provision to apply to all present and later claims because the waiver contained language that indicated that the waiver applied to claims that "the undersigned may now have _or hereafter may have."_759 F.Supp. at 1301. As previously stated, under Illinois law, the general rules of contract construction apply to guaranty agreements. _McLean County,_ 519 n.E.2d 456. Under Illinois law, the words of a contract should be interpreted in accordance with their plain and ordinary meaning where they are clear and unambiguous. _Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co.,_ 145 Ill.App.3d 175, 98 Ill.Dec. 512, 494 N.E.2d 634, 642 (Ill.App.Ct.1986)._See also U.S. Fire Ins. Co. v. Schnackenberg,_ 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203, 1205 ((Ill.1981)(stating that "if the provisions ... are clear and unambiguous there is no need for construction and the provisions will be applied as written.").

In the Guaranty Agreements Defendants expressly waive all defenses and counterclaims "whatsoever" which includes future claims. (Guaranty Par 1). Courts have not required temporal language such as "in the future" or "hereafter" in order for a waiver provision to apply to future claims. _See e.g., Home Federal Bank for Savings v. Daly,_ 1990 WL 251775 at \*3 (N.D.Ill.1990); _Lincoln Park Federal Savings & Loan Association v. Carrane,_ 192 Ill.App.3d 188, 139 Ill.Dec. 251, 548 N.E.2d 636, 639 (Ill.App.Ct.1989);

*United Air Lines,* 916 F.Supp. at 794. Therefore, the language of the Guaranty Agreement is applicable to Guarantor's present counterclaims and establishes that Defendants have waived their right to all defenses and counterclaims.

**\*6** Finally, Defendants assert that the waiver provision should not be applied to their counterclaims asserting tortious conduct because such a ruling would run contrary to public policy. The counterclaims that Defendants assert arise from Heller's act of informing KFC that, under the terms of Heller and Pace's Aircraft Mortgage Agreement, Pace did not have the authority to lease the aircraft. As a result of Heller informing KFC of the terms of Heller and Pace's agreement, KFC terminated its pending aircraft lease agreement with Pace. Defendants claim that the present case is analogous to a situation in which, after loaning money to a debtor for the purpose of renting an apartment, the bank burned down the apartment knowing that the debtor was to use rental income to repay the debt. However, this comparison is misplaced because Defendants have not alleged that Heller has done anything criminal such as burning down a building. Rather, all Heller did was inform the third party that, under the explicit terms of Pace's agreement with Heller, Pace did not have the authority to lease the aircraft to a third party. This was not a criminal act. Under the actual terms of the written Aircraft Mortgage Agreement, this was not even a false declaration. (Security Agreement § 5.2).

Furthermore, the Supreme Court of Illinois has stated that it is in the interest of public policy to hold parties to contracts that the parties freely and voluntarily entered into with each other. In the present case, Defendants freely and voluntarily entered into an agreement that clearly and unambiguously waived any "defense, setoff, counterclaim, or recoupment whatsoever" that Defendants might have. (Guaranty Par 1). Not only did Defendants agree to this explicit language by signing the original Guaranty Agreements, under the Voluntary Surrender and Transfer Agreement they subsequently agreed that "[Defendants] shall not dispute the validity or enforceability of the [Guaranty Agreements]." (Surrender Agreement Par 5(d)). By signing the Voluntary Surrender and Transfer Agreement and the original Guaranty Agreements, Defendants effectively twice agreed to waive any "defense, setoff, counterclaim, or recoupment whatsoever."When sophisticated business actors, under the representation of counsel, twice agree to waive all defenses and counterclaims, it is not against public policy to hold those parties to their word, nor is it the court's place to rewrite the terms that the parties have clearly agreed to on their own. Therefore, we grant the motion to dismiss Guarantor's counterclaims.

*IV. Heller's Motion to Strike Jury Demand.*

Heller has moved to strike Defendants' jury demand as it relates to both Heller's breach of guaranty claim and Defendants' counterclaims. Although the Seventh Amendment guarantees the right to a jury trial in civil cases, the right can be waived. *Stewart v.. RCA Corp.,* 790 F.2d 624, 630 (7th Cir.1986). There is a presumption against enforcing such waivers and thus a waiver of the right to a jury trial must be "made knowingly and voluntarily." *Whirlpool FIN. Corp. v. Sevaux,* 866 F.Supp. 1102, 1105 (N.D.Ill.1994); *Sutter Insurance Co. v. Applied Systems,* 2004 WL 161508, at \*7 (N.D.Ill.2004)*In re Reggie Packing Co., Inc.,* 671 F.Supp. 571, 573 (N.D.Ill.1987). A court should "indulge every reasonable presumption" against a jury waiver because the right to a jury trial is fundamental. *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937).

**\*7** Heller argues, in support of its motion to strike Defendants' jury demand, that Defendants have contractually waived this right. The relevant language of the Guaranty Agreements state: "Guarantor hereby waives ... any rights to a trial by jury of any claim or cause of action or in any litigation or any court with respect to or arising out of this Guaranty."(Guaranty Agreement 5). The Defendants do not contest the fact that the jury waiver in the Guaranty Agreements is a valid waiver. Instead, Defendants argue that the language of the waiver indicates that it only applies to claims that "arise out of" the Guaranty Agreements and Defendants argue that the counterclaims do not arise out of the Guaranty Agreements. However, as explained above, Defendants' counterclaims are being dismissed which renders the jury trial issue in regards to the counterclaims a moot issue. In Defendants' answer brief to the motion to strike, they only address the propriety of a jury trial in the context of Guarantor's counterclaims. Defendants also argue that enforcing the jury waiver provision in the Guaranty Agreements would be against public policy when

applied to Defendants' counterclaims because those counterclaims are tort claims. However, even if this argument is true, this reasoning does not apply to Heller's breach of guaranty claim because Heller's claim is only a contract claim and not a tort claim. Defendants have not presented any evidence that would indicate that the waiver provision was not signed knowingly and voluntarily. Therefore, we grant Heller's motion to strike Guarantor's jury demand.

*V. Pace's Motion to Intervene*

Pace seeks to intervene in the instant action pursuant to <u>Federal Rule of Civil Procedure 24</u>.

*A. Intervention as of Right*

Pursuant to <u>Federal Rule of Civil Procedure 24(a)</u> a prospective intervenor that seeks intervention in a timely manner is entitled to intervene: "(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."<u>Fed.R.Civ.P. 24(a)</u>. In the instant action there is no federal statute that confers an unconditional right upon Pace to intervene.

To proceed under 24(a)(2) a prospective intervenor must show that: "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest. *Security Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380 (7th Cir.1995). It is the burden of the prospective intervenor to prove "each of the four elements of intervention as of right,"*Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir.1985), and if the prospective intervenor fails to show that any of the above four factors are not in its favor, "[t]he failure to meet any one factor dictates denial of the petition."*Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir.1995).

**\*8** Pace argues that it has a direct interest at stake in the present action that would be impaired if it were not allowed to intervene. A prospective intervenor must establish that it has an interest in the instant action that is "direct, significant, and legally protectable."  *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,* 101 F.3d 503, 506 (7th Cir.1996). The Seventh Circuit has stated that the interest of the prospective intervenor must be "something more than a mere 'betting' interest ..., but less than a property right ... [and][w]hether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value."*Security Ins. Co. of Hartford,* 69 F.3d at 1380-81. Whether or not the proposed intervenor's interest would be impaired "depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding."*Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 204 (7th Cir.1982).

Pace argues that the "determination of whether Heller performed its obligations ... directly affects Pace because it implicates Pace's obligations under the Promissory Note, as well as the Guarantors [sic] obligations under the Guarantee Agreements."(Reply 2). We agree that determinations in the instant action may affect Pace's interests which are direct and significant. Not only will the amount of indemnification be at issue, findings concerning Heller's performance will inhibit Pace from arguing otherwise in a future action brought on its own behalf or in an action brought by Heller against Pace. Pace also correctly argues that it "has a significant interest in the resolution of the value of the aircraft and related collateral at the time of surrender to Heller and any resulting deficiency because the determination effects [sic] how much Pace owes Heller, if anything under the Promissory Note."(Reply 2-3). Pace's has shown that it has a direct interest that will be impaired if it is not allowed to intervene.

Finally, Pace argues that its interests would not be adequately represented by Gordon. Heller cites _Wade v. Goldschmidt,_ 673 F.2d 182, 186 n. 7 (7th Cir.1982) for the proposition that "presumption of adequacy of representation arises when the proposed intervenors and a party to the suit have the same ultimate objective ."(Inter.Ans.4). However, Heller fails to correctly quote the Seventh Circuit and has omitted pertinent language that is contrary to its position. The quote in _Wade_ actually reads as follows: "Even if we were to assume arguendo that applicants have a direct legally protectable interest, applicants have not overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit _(especially if it is the state)_ have the same ultimate objective. _Environmental Defense Fund v. Higginson,_ 631 F.2d 738, 760 (D.C.Cir.1979); _United States Postal Service v. Brennan,_ 579 F.2d 188, 191 (2d Cir.1978)."_Id._(emphasis added). The court in _Wade_ cited _Environmental Defense Fund v. Higginson,_ 631 F.2d 738, 760 (D.C.Cir.1979) and in _Environmental_ four States sought to intervene in the action. _Id._ at 157.The court in _Wade_ also cited _United States Postal Service v. Brennan,_ 579 F.2d 188, 191 (2d Cir.1978) and in_Brennan_ the proposed intervenors were arguing that the United States Attorney's Office would not adequately represent their interests. _Id._ at 76.However, unlike in _Environmental_ and _Brennan,_ in the instant action neither Pace nor Defendants are a public entity acting on behalf of its citizens and thus pursuing a common interest. We also note that the court in _Brennan_ quoted _Trbovich v. United Mine Workers,_ 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) for the proposition that "[a]n applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden "should be treated as minimal." 579 F.2d at 191.

**\*9** Pace has shown that its interests will not be adequately represented by Defendants. Heller also argues that Defendant Jeffrey Bennet is the Managing Member of Pace and has a fiduciary duty to Pace. Such a connection in and of itself is not proof that his interest and Pace's interests are synonymous and there are potential differences in his choice of arguments and representation in the action and those for Pace. Therefore, we find that Pace's interests would not be adequately represented by Defendants and that Pace has a right to intervene.

_B. Permissive Intervention under_ Rule 24(b)(2)

Pace also argues that it should be allowed by the court in its discretion to intervene. Even if Pace did not have a right to intervene, we would find in our discretion that Pace may intervene. Civil Rule of Procedure 24(b)(2) provides the following:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P 24(b)(2). Clearly, Pace's involvement and connection to the main claim in this action warrants allowing an intervention by Pace. There are clearly common issues of fact and law that will apply to claims involving Defendants and Pace. The instant proceedings are still at the pleading stage and the intervention need not cause any undue delay. Nor has Heller shown that it will be prejudiced by the intervention. We find that the intervention would further the interests of judicial economy and the efficient operation of the judicial system. Therefore, we grant Pace's motion to intervene.

CONCLUSION

Based on the foregoing analysis, we deny the Gordons' motion to dismiss for lack of subject matter jurisdiction and deny the motion to dismiss in favor of a duplicative parallel action. We also grant Heller's

motion to dismiss the Defendants' counterclaims, and we grant Heller's motion to strike the Defendants' jury demand. We also grant Pace's motion to intervene.

N.D.Ill.,2004.
Heller Financial Leasing, Inc. v. Gordon
Not Reported in F.Supp.2d, 2004 WL 2806458 (N.D.Ill.)

END OF DOCUMENT

EXHIBIT II

DOMINION NUTRITION, INC. v. CESCA, 04C4902. (N.D.Ill. 05/10/2005)

[1]     United States District Court, N.D. Illinois, Eastern Division

[2]     04C4902.

[3]     2005.NIL.0000130<http://www.versuslaw.com>

[4]     May 10, 2005.

[5]     **DOMINION NUTRITION, INC., Plaintiff,**
        **v.**
        **RAYMOND CESCA, Defendant.**

[6]     The opinion of the court was delivered by: WILLIAM HART, Senior District Judge

[7]     MEMORANDUM OPINION AND ORDER

[8]     Plaintiff Dominion Nutrition, Inc. ("DNI") alleges that defendant Raymond Cesca is its
        former President and Chairman of the Board.*fn1 Allegedly, after leaving DNI,
        defendant has attempted to market plaintiff's "Unique Products" to potential customers
        of DNI. The Unique Products, which are not specifically defined in the Complaint, are
        indicated to be a processed milk by-product resulting from the production of cream and
        skim milk.*fn2 Cesca's initial contact with the Unique Products was as a consultant
        retained by Dominion Processing LLP ("DP"), a limited liability company that was
        DNI's predecessor. Cesca allegedly had a confidentiality agreement with DP which
        continued to apply when DP was restructured into DNI. Plaintiff contends defendant's
        post-DNI attempts to market the Unique Products constitutes the common law
        violations of (I) breach of fiduciary duty, (III) intentional interference with business
        expectancy, (IV) seizure of corporate opportunity, and (V) breach of contract.*fn3
        There is complete diversity of citizenship and the amount in controversy is in excess of
        $75,000.

[9]     Pending in Utah District Court is a diversity action that DNI brought against Tom
        Myers.*fn4 Under the consulting agreement, Myers allegedly had access to
        confidential information about the Unique Products. Myers left the consultant to work

directly with DP. He allegedly had a tentative agreement to work for DNI, but that arrangement was not consummated. Like Cesca, Myers is alleged to be improperly attempting to market the Unique Products. Allegations regarding Cesca's and Myers's conduct are contained in both the Illinois and Utah actions. The five counts against Myers in the Utah action have identical labels with the five original counts against Cesca in the Illinois action, except that the trade secret misappropriation in the Utah action is based on a California statute, not an Illinois statute. Global Nutrifoods, LLC ("GNF") has intervened in the Utah Action. GNF alleges that consultants retained by DP actually developed and own the rights to the Unique Products and that the consultants have assigned those rights to GNF. GNF alleges that DNI and its principal, Ron Achs, are improperly marketing products for which they do not own the rights.

[10]    Cesca contends that the central dispute is between GNF and DNI regarding who owns the rights to the Unique Products. Presently pending is Cesca's motion to stay the Illinois action pending resolution of the allegedly parallel action in Utah. Also pending is DNI's motion to enforce an alleged settlement agreement between DNI and Cesca. One provision of the alleged settlement agreement is that the Illinois action be dismissed. The motion to enforce the alleged settlement agreement will be considered first.

[11]    On December 15, 2004, Cesca was being deposed in the Illinois action. It is undisputed that, during the luncheon recess, the parties engaged in settlement negotiations. Upon returning from the break, the following was said on the record with Cesca present.

[12]            GRAHAM [attorney for DNI]: We have been talking over the break about the possibility of a settlement, and the proposal that we have advanced is one that would include two principal components.

                First, one in which Mr. Cesca would agree to a noncompete, the terms of which we will work out in a formal document in good faith as soon as we can; but, in general terms we would understand that to mean that he will not work with others directly or indirectly to aid or assist in the production, marketing or other assistance to get high-protein, low-fat dairy-based products into the market.

                And secondly, it would have a non-disparagement component which we would understand to mean that he will not say disparaging things about Dominion or its personnel, or take the position publicly or privately that Dominion does not own the unique products or unique processes as we have talked about them.

                He may, of course, respond to subpoenas or other court invitations; and he may, of course, talk to others who invite him to give his honest opinion and he can answer honestly, but he wouldn't volunteer those

opinions in any setting other are [sic] than, you know, a court invitation, hopefully.

Is that consistent with what we had in mind?

MATHEWSON [attorney for Cesca]: Yes, as a general principle it is consistent with our discussions over the last couple of hours, and we will work in good faith to reach a mutually acceptable agreement in writing on those issues.

And that we are agreeing to suspend Mr. Cesca's deposition as of now, with the understanding that if we are unable to come to terms in connection with a settlement, we will resume his deposition at a time and place convenient to everyone. GRAHAM: Right. So I guess with that we are adjourned.

MATHEWSON: I think we are.

Dec. 15, 2004 Tr. at 99-100.

[13]    It is undisputed that DNI thereafter drafted a written settlement proposal and submitted it to Cesca. The parties, however, could not agree as to the language of the settlement agreement. Cesca's principal objection was that the definition of Unique Products contained in DNI's draft was too broad and would prevent Cesca from working in the dairy products industry. He also objects to the time limitations contained in the draft. Cesca suggested limiting his prohibited activities under the settlement to being applicable to any unique processes or products that the Utah litigation ultimately determines to be owned by DNI.

[14]    In an affidavit provided with plaintiff's reply, *fn5 Graham states that, in July 2004, he had submitted a written settlement proposal to Cesca. He further states that, during the December 15, 2004 breaktime negotiations, the parties had agreed to modify some of the language contained in the July 2004 draft. Graham states that the December 2004 draft is in conformity with the agreement reached during the off-the-record negotiations. Mathewson provides an affidavit stating that there was no discussion of revising the July 2004 draft during the December 15, 2004 off-the-record negotiations. In his affidavits, he states that the parties never agreed as to the products and processes in which DNI has a protectible interest and that there was never any agreement as to a settlement. Instead, Mathewson states that the parties agreed to continue to negotiate in good faith to reach a final settlement, including reaching an agreement as to the interests of DNI that would be protected. Also, the December 2004 draft of DNI contains a mutual release which includes "Cesca releas[ing] DNI . . . from any claims or defenses he asserted or could have asserted and that arise out of or are related to the facts alleged in the complaint." Mathewson states that there was never a discussion of

including such a mutual release in the settlement.

[15]    This court has authority to determine whether the parties have settled the case and dismiss the case if the parties have so agreed. See Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996), cert. denied, 519 U.S. 1117 (1997); Denari v. Genesis Insurance Co., 2004 WL 1375735 *2 (N.D. Ill. June 17, 2004). That would be especially true here since, even if this were purely a state law claim, there is diversity of citizenship and the value of the settlement apparently would satisfy the jurisdictional amount requirement since the underlying claims satisfy that amount. Presently, the court need only consider whether there is a settlement requiring that the action pending before it be dismissed.*fn6

[16]    The deposition at which the purported settlement was reached occurred in Illinois. Cesca is an Illinois resident and the litigation that is one of the subjects of the purported settlement is pending in Illinois. Both parties cite Illinois law regarding whether there is an enforceable settlement agreement. Although the December 2004 draft settlement provides that it and any related disputes shall be interpreted, governed, and enforced according to Idaho law, the parties make no argument based on Idaho law. The parties have implicitly agreed either that Illinois law applies to their present dispute or that the pertinent Illinois law is not substantively different from Idaho law. Illinois law will be applied to the dispute regarding whether an enforceable settlement exists. See Massachusetts Bay Insurance Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998); Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir. 1991); TBI, Inc. v. Communication Consulting Services, Inc., 2004 WL 2609200 *1 (N.D. Ill. Nov. 15, 2004); Morris Silverman Management Corp. v. Western Union Financial Services, Inc., 284 F. Supp. 2d 964, 968-69 (N.D. Ill. 2003).

[17]    An enforceable oral contract to settle a case may be formed before there is a written document memorializing that settlement. Denari, 2004 WL 1375735 at *2; Thermos Co. v. Starbucks Corp., 1998 WL 299469 *4 (N.D. Ill. May 29, 1998).

[18]        In order to establish the existence of an agreement, the parties must demonstrate that there was an offer, acceptance, and a meeting of the minds as to the terms of the agreement. The terms of the agreement must be sufficiently definite for the court to enforce the settlement. Defalco v. Oak Lawn Public Library, 2000 WL 263922, at *3-4 (Mar. 1, 2000) (noting that courts may look to the ordinary linguistic meaning of a term to define the terms of the agreement.) Although an oral settlement must set forth the terms of the agreement with sufficient definiteness, the settlement may be contingent upon a subsequent agreement. "[T]he fact that a settlement agreement calls for the parties to reach another agreement in the future — in other words, an `agreement to agree' — will not prevent the settlement from being

enforced." Thermos Co. v. Starbucks Corp., 1998 WL 299469, at *4 (N.D. Ill. May 29, 1998) (quoting S and T Mfg. Co., Inc. v. County of Hillsborough, 815 F.2d 676, 678-79 (Fed. Cir. 1987)). A party cannot avoid performance under an agreement to agree by withholding its consent, in bad faith, to the unresolved term. See generally, Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir. 1992). Denari, 2004 WL 1375735 at *2.

[19]    If the only evidence to consider were the attorney statements made at Cesca's deposition, it would not be found that an enforceable settlement existed. Graham initially refers to a "possibility" of a settlement. Mathewson then makes clear that the parties are still attempting to reach a settlement and that Cesca's deposition would be completed at a later date if no accord is reached. There would be no possibility of a continued deposition if an accord had already been reached and all that was left was to memorialize it. Graham then agrees with Mathewson's statement. The on-the-record statements only support that a settlement had not already been reached.

[20]    In an affidavit, however, Graham states that the parties had agreed to all the terms of a settlement, that they had specifically agreed to revise the July 2004 settlement proposal. The on-the-record statements at the deposition, of course, are to the contrary. Mathewson's affidavit statements are also to the contrary. On the documents submitted, there is a factual dispute regarding whether this case has been settled. There is no sufficient basis for the court presently finding there is an enforceable settlement requiring dismissal of this case. To the extent DNI desires to further pursue this issue, it should amend its complaint to add a claim that there is an enforceable settlement and the issue will have to be resolved at trial. The other question to consider is whether the present case should be stayed pending resolution of the Utah action in which DNI, Myers, GNF, and possibly Achs are parties.*fn7

[21]        As a general rule, a federal suit may be dismissed "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." Ridge Gold Standard Liquors v. Joseph E. Seagram, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) (citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976); Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co., 600 F.2d 1228, 1233 (7th Cir. 1979)). District courts are accorded "a great deal of latitude and discretion" in determining whether one action is duplicative of another, but generally, a suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." Ridge Gold, 572 F. Supp. at 1213 (citations omitted).

Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993). "[B]efore dismissing a suit as duplicative, `the district judge should consider any special factors counseling for or against the exercise of jurisdiction in the case before him.'" Id. at 224 (quoting

Calvert, 600 F.3d at 1234). To the extent Colorado River provides guidance in the present situation, it is recognized that being parallel actions does not require that the cases have precise symmetry. Cases generally are parallel if there is a substantial likelihood that resolving one case will dispose of all claims in the other case. See Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004).

[22]    The Illinois action and Utah action certainly have much factual overlap. Myers's involvement is alleged in the Complaint before this court and Cesca's involvement is alleged in the complaint before the Utah District Court. Whether DNI has a proprietary interest in the Unique Products and what the Unique Products and Processes actually may be are issues pertinent to the claims in both suits, though a determination that DNI has no proprietary interests probably would not conclusively resolve all claims in both cases. Still, the cases are distinct in that the claims in the present case must be based on any contract and relationship Cesca had with DNI and Cesca's actual attempts to market products to others, while the claims in the Utah case must be based on any contract and relationship Myers had with DNI and Myers's actual attempts to market products to others. It would not be appropriate to simply stay the Illinois action because there is no substantial likelihood that the Utah action will resolve all issues for the Illinois action. Also, Cesca insists that, absent a stay, GNF will be forced to intervene in the Illinois action as well. The Illinois action, however, was filed four months before the Utah action and discovery is about to close. If GNF had any intentions of intervening, it should have so moved months ago. Certainly, it would have been more efficient to have named Myers and Cesca as defendants in a single case. There may, however, have been personal jurisdiction problems if Cesca had been brought into a case in Utah or California. In his motion, though, Cesca contends that there is a forum where all defendants could have been sued. See Cesca Reply at 9. He does not specifically identify that forum, but perhaps he would not object to the claims against him being brought in Utah instead of Illinois.*fn8

[23]    Assuming there would be no personal jurisdiction problem, it could have been appropriate to dismiss one of the actions without prejudice so that DNI could amend the Illinois or Utah action to have Myers and Cesca as defendants in a single lawsuit. Or another way to achieve a similar result would be to transfer this action to Utah or transfer the Utah action to the Northern District of Illinois and then assign the two cases to the same judge or actually consolidate the two cases. At this point in time, however, that would not be an appropriate action to take. Cf. N.D. Ill. Loc. R. 40.4(b)(3) (one requirement for reassigning a case as related is that "the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially"). In the Illinois action, discovery is to be completed by May 15, 2005. Plaintiff has already indicated that it is prepared to move for summary judgment. Alternatively, if there is no summary judgment motion, then the parties will be submitting their final pretrial order and the case will soon be on the court's trial calendar. The latest scheduling order in the Utah action, dated April 11, 2005, provides that the discovery cutoff in that case is October

7, 2005, with a final pretrial conference scheduled for March 3, 2006, and a 10-day jury trial scheduled for March 20, 2006. Joining the Illinois action with the Utah action would likely result in a substantial delay of the Illinois action.

[24]  Since the Utah action is not likely to resolve all issues in the Illinois action and since joining the two actions at this point would likely substantially delay the Illinois action, the Illinois action will not be stayed nor will the Illinois action be transferred or will DNI be required to file a single consolidated action.

[25]  IT IS THEREFORE ORDERED that plaintiff's motion to enforce a settlement agreement [13] is denied without prejudice. Defendant's motion to stay lawsuit [14] is denied. A status hearing is set for May 25, 2005 at 11:00 a.m.

---

Opinion Footnotes

---

[26]  *fn1 Defendant admits that he was Chairman of the Board, but denies that he was the President or an employee of DNI.

[27]  *fn2 In a settlement proposal drafted by plaintiff, the Unique Products are defined as "milk-based products having a high concentration of protein, high calcium, non-fat, and low lactose, or any similar variation thereof."

[28]  *fn3 The Complaint also included a Count II claim for trade secret misappropriation under 765 ILCS 1065/2, but plaintiff has voluntarily dismissed that count of the Complaint.

[29]  *fn4 This case was originally filed in California, but the parties thereafter agreed to transfer the case to Utah.

[30]  *fn5 These facts are not supported by the affidavit filed in support of the initial motion. Although not raised until the reply, defendant had an opportunity to respond because he was granted leave to file a surreply.

[31]  *fn6 In its motion, plaintiff requests that the court order Cesca to execute the December 2004 draft or, alternatively, effectuate the purpose of the settlement. It is noted that the December 2004 draft includes this language: "The parties irrevocably

agree that the United States District Court of Idaho, or other [sic] state courts within Idaho, shall have exclusive jurisdiction (i.e., personal and subject matter jurisdiction) over the parties and this matter for the purposes of enforcing any provision of this agreement."

[32]     <u>*fn7</u> In the Utah action, Achs's motion to dismiss for lack of personal jurisdiction and improper venue is pending.

[33]     <u>*fn8</u> Cesca contends there is no need to bring any claims against him, that he is just a nominal defendant being used to obtain additional discovery. This court has no sufficient basis for assuming that any claims against Cesca are specious.

20050510

Clay v. Brown
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Shawn CLAY, Plaintiff,
v.
Officer Debra BROWN, Officer Lewis, Officer
Alderson, Individually, the County of Cook, and
Michael Sheahan, Sheriff of Cook County, Officially
and Individually, Defendants.
**No. 97 C 5122.**

July 21, 1998.

**MEMORANDUM OPINION AND ORDER**

**GOTTSCHALL** , J.
**\*1** Plaintiff Shawn Clay filed a 42 U.S.C. § 1983 claim against Debra Brown, Maxine Alderson, and Clifton Lewis, in their individual capacities, and against Michael Sheahan, Sheriff of Cook County, in his official capacity. All four defendants moved to strike portions of the complaint or, in the alternative, for a more definite statement, pursuant to Federal Rules of Civil Procedure 12(e) and 12(f). Sheahan and Lewis also moved to dismiss the complaint pursuant to Rule 12(b)(6). For reasons discussed below, the motions are denied.

**I.** *Facts as Alleged in the Complaint*

On July 31, 1995, Clay, an inmate at the Cook County Jail (hereinafter "the Jail"), had a dispute with other inmates. The inmates threatened Clay with violence in the presence of Brown and Alderson, officers employed at the Jail. Knowing that the lock on Clay's cell was broken, the officers nonetheless sent the prisoners back to their cells. Lewis, the officer in charge of the inmates' tier, was also cognizant of the broken locks and the threats to Clay. Upon returning to their tier, the inmates who had threatened Clay entered his cell and beat him.

Prior to July 31, 1995, Sheriff Sheahan was made aware of the numerous broken cell door locks at the Jail. Sheahan also knew of past inmate clashes which

resulted because prisoners were able to leave their cells and enter others' due to damaged cell locks.

Clay originally filed a complaint only against officers Brown and Alderson.[FN1] The First Amended Complaint added defendants Lewis, Cook County, and Sheahan, without specifying capacity. Defendants then moved to strike parts of the complaint and to dismiss the claims against Lewis, Sheahan, and Cook County. Clay, attempting to remedy the faults noted in the motions, filed a Second Amended Complaint dropping defendant Cook County, clarifying Sheahan as an official capacity defendant, and alleging further actions by Lewis. The three-count complaint asserted that Sheahan, Lewis, Brown, and Alderson violated Clay's Fourth, Eighth, and Fourteenth Amendment rights. The defendants contended that the shortcomings of the First Amended Complaint had not been rectified by the Second and requested that their motions be applied to the Second Amended Complaint.

> FN1. The complaint initially named officer "Augerson," later corrected to Alderson.

**II.** *Discussion*

**A. Rule 12(f) Motion to Strike**

Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike pursuant to 12(f) are generally disfavored and usually denied because they are a drastic remedy. *Robinson v. Midlane Club, Inc.,* No. 94 C 1459, 1994 WL 577219, at \*2 (N.D.Ill. Oct.18, 1994). In order to succeed on a motion to strike, the movant must show that the allegations in question are "so unrelated to plaintiffs claims as to be void of merit and unworthy of any consideration." *Id.* Furthermore, the movant must establish that undue prejudice will result from the defendant's allegation. *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* No. 94 C 4692, 1996 WL 68009, at \*1 (N.D.Ill. Feb.14, 1996). Undue prejudice will result if the allegation has the effect of confusing the issues or is so lengthy and complex that it places an overwhelming burden on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the responding party. *Cumis Ins. Soc'y, Inc. v. Peters, 983 F.Supp. 787, 798 (N.D.Ill.1997).*

**\*2** Defendants argue that the words "brutal," "brutally," and "seriously," as used throughout the complaint, are immaterial, vague, and conclusory. Defendants specifically point to Count I, paragraph 10, which states "When the Plaintiff returned to his tier, the inmates who threatened him *brutally* attacked him," and Count I, paragraph 15, which reads "The Plaintiff was *seriously* injured and required medical care" (emphasis added). Defendants further object to those words in Count II, paragraph 15: "As a result thereof, Plaintiff was *seriously* injured by the *brutal* beating by these inmates" (emphasis added). Defendants challenge the same language found in Count III. Defendants ask that these words be stricken.

Defendants also move to strike paragraphs 13 of Counts I and III, which state "That at all relevant times the Defendants were acting pursuant to the practice and customs of the Cook County Department of Corrections and acting within their scope of authority."Again, defendants contend that the statement, except for "acting within their scope of authority," is irrelevant, conclusory, and vague.

Defendants fail to establish that the words "brutally" and "seriously" unduly prejudice them. Nor do defendants establish that the language confuses the issues or that it places an onerous burden on the responding party.

Defendants likewise fail to explain why paragraph 13 deserves to be stricken. Defendants do not advance any reasons to suggest that paragraph 13 either confuses the issues or that it is lengthy or complicated. Vague or conclusory statements alone are not enough to justify striking. *See Trustmark Life Ins. Co., 1996 WL 68009, at \*1.* Defendants' **motion** to **strike** is, therefore, denied.

**B.  Rule 12(e) Motion for a More Definite Statement**

A defendant may move for a more definite statement if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."Fed.R.Civ.P. 12(e). Motions for a more definite statement are normally disfavored. *555 M*

*Mfg., Inc. v. Calvin Klein, Inc.,* No. 97 C 5366, 1998 WL 260258, at \*5 (N.D.Ill. May 20, 1998). A motion is particularly likely to be denied if the same information could be obtained through discovery.*P.M.F. Servs., Inc. v. Grady,* 681 F.Supp. 549, 559 (N.D.Ill.1988).Rule 12(e) specifically addresses pleadings which are unintelligible, not those that lack detail. *White v. City of Chicago,* No. 96 C 3329, 1998 WL 258471, at \*1 (N.D.Ill. May 15, 1998) (citation omitted). Thus, a pleading that satisfies Rule 8 and "fairly notifies the opposing party of the nature of the claim" does not warrant more explicitness. *Id.*"Only when the movant can show that additional information is essential to enable preparation of a response" will the motion be granted. *Robinson,* 1994 WL 577219, at \*3. *See also 555 M Mfg., Inc.,* 1998 WL 260258, at \*5.

Defendants, alternatively, seek that Clay provide a more definite statement to the same language and paragraphs for which they sought the **motion** to **strike**. Defendants argue that the paragraphs are so vague that they effectively inhibit defendants' abilities to respond. Defendants contend that Clay should identify his injuries by location and type and should identify what specific customs he alleges existed.

**\*3** Defendants have not provided this court with any reason why information regarding Clay's injuries would not be available in discovery. Defendants find themselves in the same circumstances with respect to Clay's allegation of custom. Moreover, defendants have not provided the court with any reason why "additional information is essential to enable" a response on their part.*Robinson,* 1994 WL 577219, at \*3. Defendants' motion for a more definite statement is denied.

**C. Motions to Dismiss**

1. *Rule 12(b)(6) Standard*

Rule 12(b)(6) allows the court to dismiss a complaint when the pleadings fail to "state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). When ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and any ambiguities are necessarily assumed in favor of the plaintiff. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992). Consistent with the liberal pleading

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requirements of the Federal Rules, *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998), a court will dismiss the complaint only if it is beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). To sustain a § 1983 claim, the plaintiff must allege that defendant, under color of law, deprived him of a right guaranteed by the Constitution. *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir.1994).

2. *Defendant Sheahan's Motion to Dismiss*

An official capacity suit is essentially a claim against a government entity.*Sheppard v. Fairman,* 64 F.3d 665, 1995 WL 481449, ----3 (7th Cir.(Ill.) 1995). Governing bodies may be sued under § 1983 if the action implements a policy, ordinance, regulation, or custom-even though the custom has not received formal approval-of that body. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690-691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff must allege that the municipality's decision to maintain a custom reflects deliberate indifference to the risk that a violation of a particular constitutional right will result from that custom. *Board of County Comm'rs. v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1392, 137 L.Ed.2d 626 (1997). Plaintiff must demonstrate a direct causal link between the municipal action or inaction and the deprivation of federal rights. *Brown,* 117 S.Ct. at 1388.

Sheahan argues that Clay has not met his burden, as established by *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985), because custom can be inferred from inaction; "some fact indicating such procedures or factual support that the policy or practice does exist must appear in the complaint."(Reply of Defendants to Plaintiff's Responses to Defendants' Motions to Dismiss, p. 4.) Sheahan compares this case to *Morissette v. Peters,* 45 F.3d 1119 (7th Cir.1995), and concludes that this action alleges mere negligence. Also, Sheahan contends that there is no obvious causal link between broken cell locks and a substantial risk of serious harm.

**\*4** Sheahan's heavy dependence on *Strauss* is faulty. *Strauss,* by compelling the plaintiff to allege specific facts, had the practical effect of raising the pleading

standard for civil rights claims against municipalities. Many judges expressed their discontent with *Strauss* because it created "a 'Catch 22' for plaintiff's by requiring them to plead specific evidentiary facts, over which the municipality generally has exclusive control, before plaintiffs will have had the benefit of discovery."*Rosentreter v. Munding,* 736 F.Supp. 165, 168 (N.D.Ill.1990).*See also Hammond v.. Town of Cicero,* 822 F.Supp. 512, 514-516 (N.D.Ill.1993); *Payne v. City of LaSalle,* 610 F.Supp. 606 (N.D.Ill.1985). Eventually, the Supreme Court held that plaintiffs bringing § 1983 claims against a municipality are not subject to a pleading requirement different from the usual notice pleading standard of Federal Rule of Civil Procedure 8(a).*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). While the Court did not specifically comment on *Strauss,* the Seventh Circuit has interpreted *Leatherman* to mean that the heightened pleading requirement as prescribed by *Strauss* is invalid. *See generally Hutchinson v. Spink,* 126 F.3d 895, 900-901 (7th Cir.1997); *Sledd v. Lindsay,* 102 F.3d 282, 288-289 (7th Cir.1996); *Billman v. Indiana Dep't. of Corrections,* 56 F.3d 785, 789-790 (7th Cir.1995); *Jackson v. Marion County,* 66 F.3d 151, 153-154 (7th Cir.1995). Therefore, *Strauss* does not require dismissal of plaintiff's custom claim.

Furthermore, Clay's claim is distinct from *Morissette.*In *Morissette,* plaintiff's cell contained exposed wires 18 above the bed. While sleeping, plaintiff accidentally came into contact with the wires and received an electric shock. Failure to repair the wires was deemed ordinary negligence because a constitutional injury could not reasonably be envisioned from the disrepair; indeed, the court considered plaintiff's actual injuries to be trivial. *See Morissette,* 45 F.3d at 1123-1124. In this case, Clay's alleged injury was neither minor nor was it sustained by simple accident. And, it is not too far fetched to believe that a constitutional tort might have been foreseeable.

If inmate-on-inmate brutality was a plainly obvious result, a custom or practice of not repairing locks can be regarded as deliberate indifference. The existence of a pattern of inmate-on-inmate violence might illustrate that Sheahan's adherence to practice was a "moving force" behind Clay's injuries. *See Brown,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

117 S.Ct at 1390. "The high degree of predictability may also support an inference of causation-that the municipality's indifference led directly to the very consequence that was so predictable."*See Brown,* 117 S.Ct at 1391. Hence, because it is not beyond doubt that Clay can prove some set of facts which would entitle him to relief, Sheahan's motion to dismiss is denied.

3. *Defendant Lewis's Motion to Dismiss*

**\*5** Lewis puts forth several reasons for why his motion should be granted. First, relying on *Strauss v. City of Chicago,* 760 F.2d 765, 769 (7th Cir.1985), Lewis argues that Clay's allegation-that Lewis knew of and disregarded the substantial risk to Clay-is conclusory and unsupported by facts in the complaint. Second, Lewis argues that he was not a "moving force" behind the rights violation, as required by *Board of County Comm'rs v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Third, Lewis argues that he cannot be held liable for negligent monitoring and defective premises are not an obvious risk of a constitutional injury. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Morissette v. Peters,* 45 F.3d 1119 (7th Cir.1995). Finally, there is no duty to keep prisoners separate at all times and Lewis owed no special duty to Clay.

Lewis's reliance on *Strauss* and *Brown* is misplaced. As explained above, *Strauss* is no longer the appropriate standard for determining the adequacy of pleadings. *Brown* is improper because the case deals with municipalities and not with individual capacity defendants.

Clay's allegation in Count II is not that Lewis was negligent in monitoring him, but rather that Lewis, like Brown and Alderson, failed to take any preventive measures despite knowing of a substantial risk of serious harm to Clay. Paragraph 9 is sufficient to equate Lewis's liability to that of Brown's and Alderson's.[FN2] Lewis's motion to dismiss is denied.

> FN2. Paragraph 9 states, "That Defendant LEWIS was aware that the lock on Plaintiff's cell door did not work and Plaintiff believes that Defendant LEWIS knew that SHAWN CLAY had been threatened."

**III.** *Conclusion*

For the foregoing reasons, the court denies defendants' **motions** to **strike** or, in the alternative, for a more definite statement [14-1]. The court also denies defendants Sheahan's and Lewis's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [10-1, 12-1, 14-2].

N.D.Ill.,1998.
Clay v. Brown
1998 WL 417503

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Cite as: Not Reported in F.Supp.2d, 2004 WL 2608355 (N.D.Ill.))

Manuel v. Lucenti
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Julia MANUEL, Darrin Raines, and Ronnie Raines,
Plaintiffs,
v.
Robert C. LUCENTI, esq., and Kevin P. Bolger, esq.
Defendants.
No. 04-C-2531.

Nov. 16, 2004.

Julia Manuel, Chicago, IL, pro se.
Darrin Raines, Chicago, IL, pro se.
Ronnie Raines, Beaumont, TX, pro se.
Peter A. Regulski, Law Offices of Peter A. Regulski,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

GOTTSCHALL, J.
**\*1** Before this court are defendants' **motions** to **strike**
certain paragraphs of plaintiffs' complaint pursuant to
FED. R. CIV. P. 8 and 12(f) and to dismiss plaintiffs'
complaint pursuant to FED. R. CIV. P. 12(b)(1) and
(6). For the reasons set forth below, defendants'
**motion** to **strike** is denied, and defendants' motion to
dismiss is granted in part and denied in part.

*BACKGROUND*

According to plaintiffs' *pro se* complaint, Ronnie
Raines ("Raines"), an African American, hired
defendant Lucenti to represent him as his attorney in
a case involving federal criminal drug charges.
Lucenti then engaged defendant Bolger to make court
appearances on Raines's behalf. Plaintiffs Julia
Manuel and Darrin Raines,[FN1] who are also African
American, helped pay Raines's attorney's fees. Raines
pled guilty to at least some of the charges against him
and received a sentence of life in prison.

    FN1. Julia Manuel and Darrin Raines are

Ronnie Raines's mother and brother. The
three are referred to collectively as
"plaintiffs." All subsequent references to
"Raines" refer to Ronnie Raines.

Although the majority of plaintiffs' complaint focuses
on alleged misconduct on the part of Raines's
attorneys that sounds in legal malpractice and fraud
theories, including failure to give effective advice,
failure to appear in court, withholding documents and
information, failure to return phone calls, insistence
on undocumented cash payments and general failure
to perform promised services, plaintiffs' complaint
alleges violations of three federal laws. Specifically,
plaintiffs claim that defendants violated 42 U.S.C. §
1981 by failing to provide legal services to plaintiffs
using the same degree of skill with which they
provided services to Caucasian clients (Count I),
conspired to violate plaintiffs' equal protection rights
in violation of 42 U.S.C. § 1985 (Count II) and
engaged in a pattern of criminal activity in violation
of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1961, *et
seq.* (Count V).

The core of defendants' **motions** to **strike** and to
dismiss involves the allegations pled by plaintiffs in
support of these federal claims. In their complaint,
plaintiffs set forth in detail several conversations that
allegedly took place between defendants in which
defendants, allegedly motivated by plaintiffs' race,
conspired to take plaintiffs' money and deprive
Raines of adequate legal services. By way of
illustration, plaintiffs allege that the following
conversation between the defendants took place on or
about July 27, 2001:

... Lucenti called Defendant Bolger at his office,
asking him if he wanted to make at least $10,000 and
possibly $20,000 without doing nothing [*sic* ] more
than making some prefunctory [*sic* ] court
appearances in Wisconsin. Defendant Bolger ... asked
for the details. Lucenti stated that it concerned some
"black dope head who I earned a few dollars off over
the years," who was in trouble federally and that he
saw a chance to get some extra money from his
family without much or any work. Lucenti told
Bolger that ... all Bolger had to do was show up in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court until they received another $20,000 they could "let the feds bury" [Raines] ... Bolger told Lucenti that as long as [the plaintiffs] were African Americans and will not know what was going on in his handling of the case then he would have no problem taking their money.

**\*2** Complaint ¶¶ 78-83. Plaintiffs similarly describe other ostensibly private conversations between the defendants throughout the complaint, and also plead other facts that defendants maintain plaintiffs cannot purport to know. *See, e.g.,* Complaint ¶ 73 ("On or about from 1977 to 2001, Lucenti issued bona fide receipts to his Caucasian clients along with an outline or a list of things he would be performing and accepted checks of all kinds from them.") Defendants maintain that they are entitled to the relief they seek primarily because these allegations are not well pleaded facts.

*ANALYSIS*

I. **Motion** to **Strike**.

A. Short and Plain Statement of the Claim.

Defendants first move to strike portions of plaintiffs' complaint under FED. R. CIV. P. 8(a)(2), which requires that the complaint be a short and plain statement of the claim showing that the pleader is entitled to relief. Defendants object that the complaint "consists of 244 paragraphs and is a confused mix of fact, unnecessary history, editorializing, fiction and fantasy ... [and] is rife with surplusage...." Defs.' Mtn. to Strike, ¶ 8. **Motions** to **strike** under Rule 8(a) are disfavored as long as portions of the complaint have put defendants on notice of the claims against them, particularly when striking the disputed paragraphs may result in dismissal. *See, e.g., Davis v. Ruby Foods, Inc.,* 269 F.3d 818, 820 (7th Cir.2001) ( "complaints signed by a lawyer are never dismissed simply because they are not short, concise, and plain"); *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (noting that "[f]at in a complaint can be ignored"). Moreover, as defendants recognize, *pro se* complaints are held to less exacting standards than complaints drafted by attorneys. *See Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir.1996) ("It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally

[.]"). In any event, while defendants apparently take issue with much of the complaint, the only specific paragraphs to which defendants direct the court are paragraphs 12-37, detailing Raines's first meeting with Lucenti. The court declines to use Rule 8 to strike these 25 paragraphs offered as background material from a *pro se* complaint.

B. Immaterial, Impertinent, or Scandalous Matter.

The Federal Rules also allow the court to remove material from a pleading that it finds " 'redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f). To prevail on a **motion** to **strike** under Rule 12(f), defendants must demonstrate that the material at issue does not bear on the subject matter of the litigation and will prejudice the defendants. *See, e.g., NOW, Inc. v. Scheidler,* 897 F.Supp. 1047, 1087 n. 28 (N.D.Ill.1995) ("[t]o strike portions of a complaint, the allegations being challenged must be so unrelated to plaintiff's claims as to be void of merit and unworthy of any consideration" and "must be prejudicial to the movant" (citations omitted)). As with **motions** to **strike** under Rule 8, **motions** to **strike** under Rule 12(f) are disfavored and usually denied. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.,* 109 F.Supp.2d 905, 907 (N.D.Ill.2000).

**\*3** Defendants object to 61 paragraphs in plaintiffs' complaint detailing alleged private conversations and activities that defendants maintain plaintiffs could not possibly know about. Although defendants also couch their opposition to the disputed paragraphs in terms of immateriality and scandal, these objections are valid only if the allegations are false. Defendants therefore are moving to strike the disputed paragraphs from plaintiffs' complaint on the basis that it is highly improbable that the allegations are true, but Rule 12(f) is not the appropriate mechanism to request such relief. *See, e.g., Boyd v. United States,* 861 F.2d 106, 109 (5th Cir.1988) (falsity of a pleading does not provide sufficient basis for granting **motion** to **strike** under Rule 12(f)); *Kinee v. Abraham Lincoln Federal Sav. and Loan Ass'n,* 365 F.Supp. 975, 982 (E.D.Pa.1973) (allegations that portions of pleading were "patently untrue" and therefore impertinent and scandalous not a proper **12(f)** ground).

Although the court cannot strike the contested

portions of plaintiffs' complaint, it cautions plaintiffs that the Federal Rules require responsible pleading, including responsible pleading in the alternative. While Rule 8(e)(2) allows pleading in the alternative and hypothetical pleading, it does not relieve the party of its Rule 11 obligations. In particular, each party is required to certify to the best of its "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...."FED. R. CIV. P. 11(b)(3). In other words, Rule 11 does not tolerate allegations based merely on speculation. The court strongly urges plaintiffs to evaluate carefully the evidentiary bases for the allegations in its complaint. If the record ultimately demonstrates that allegations were never supported by anything more than plaintiffs' subjective speculation, sanctions will be appropriate. As the court has previously cautioned plaintiffs, they are not allowed to rely on unfounded conjecture to enable a legal malpractice claim to masquerade as a federal civil rights action.

II. Motion to Dismiss.

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept the factual allegations in the plaintiffs' complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The court then considers whether any set of facts consistent with the allegations could support plaintiffs' claim for relief. *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). A complaint need only contain enough facts to put the defendant on notice of the claim so that an answer can be framed.*Flannery v. Recording Indus. Assoc. of America,* 354 F.3d 632, 639 (7th Cir.2004). Dismissal should be granted only if it is "beyond doubt" that the plaintiff cannot prove any facts to support a claim entitling plaintiff to relief. *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Complaints prepared *pro se,* such as plaintiffs', are given greater latitude. *Id.*

A. Civil Rights Claims.

**\*4** Plaintiffs indicate that they wish to voluntarily dismiss Count II of their complaint, alleging conspiracy to violate equal protection rights in violation of 42 U.S.C. § 1985. The court, therefore, first turns to plaintiffs' intentional discrimination claim under 42 U.S.C. § 1981.Section 1981 provides that "all persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens."42 U.S.C. § 1981(a). This right "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."42 U.S.C. § 1981(b). To establish a claim under Section 1981, plaintiffs must allege that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract.*Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996).

Defendants argue that the court must consider only plaintiffs' "well pleaded" facts, and argues that they are insufficient to support an inference that defendants' performance and billing practices were motivated by racial animus. For example, defendants maintain that plaintiffs' allegation that defendants refused to accept checks from or issue receipts to plaintiffs lacks a corresponding allegation that defendants routinely accepted checks from Caucasian clients and issued them receipts. *See* Defs.' Mtn. to Dismiss at 8. But this is not so. As noted above, plaintiffs' complaint alleges that Lucenti did issue receipts to his Caucasian clients from 1977 to 2001, and "accepted checks of all kinds from them."Complaint ¶ 73. Plaintiffs' complaint contains enough specificity to put defendants on notice of a colorable violation of Section 1981, particularly in light of the liberal construction that must be afforded *pro se* plaintiffs' claims.

In essence, defendants' motion to dismiss plaintiffs' Section 1981 count presents the same argument as their **motion** to **strike**, which was premised on defendants' disbelief of the incredible nature of plaintiffs' allegations. But Rule 12(b)(6), like Rule 12(f), is an inappropriate mechanism for dismissal of claims based on apparent falsity. *See Walker v. National Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999). This court must honor plaintiffs' request to review their allegations "without any judgment call

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on whether they are believable or not."Ptfs.' Rsp. at 6. However, the court notes that the core of plaintiffs' Section 1981 claim-that plaintiffs received overpriced and deficient legal services compared to Caucasian clients-has a dubious chance of success in light of fact that attorneys are entitled to make fee judgments based upon the individual facts of each case, and plaintiffs will have a hard time accessing relevant material on this issue.

B. RICO Claim.

**\*5** Defendants next move to dismiss plaintiffs' claim under RICO. The RICO statute was originally enacted in "an attempt to eradicate organized, long-term criminal activity."*Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997). RICO makes it unlawful (1) to invest money derived from a pattern of racketeering activity or through the collection of an unlawful debt in an enterprise; (2) to acquire or maintain an interest in or control of an enterprise through a pattern of racketeering activity or through collection of an unlawful debt; (3) for any person employed by or associated with any enterprise to conduct the enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt. 18 U.S.C. § 1962(a)-(c). A "pattern of racketeering activity" under the RICO statute is established by the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten-year period. 18 U.S.C. § 1961(5).

Plaintiffs' claim fails because their complaint does not sufficiently plead a pattern of racketeering activity. Plaintiffs maintain that the pattern of racketeering activity can be derived from defendants' allegedly fraudulent conduct, directing the court to 225 paragraphs of their complaint. Ptfs.' Rsp. at 9. However, the facts set forth in the complaint, which are specific to defendants' interactions with plaintiffs, do not provide evidence that the defendants are engaged in a criminal enterprise. *See, e.g., Pizzo v. Bekin Van Lines Co.,* 258 F.3d 629, 632 (7th Cir.1999) (several allegations of mail and wire fraud arising out of single dispute with store do not constitute a pattern). As the Seventh Circuit explained in *Pizzo,*

A criminal enterprise, as distinct from a normal enterprise that gets in trouble with the law from time to time, is an enterprise that *habitually* resorts to illegal methods of doing business. It is an enterprise whose disposition, whose bent, is criminal-as shown by its illegal acts' composing a pattern from which such a disposition can be inferred, in much the same way that an individual's generous disposition is inferred from a pattern of generous acts, acts frequent enough and similar enough to enable such an inference.

*Id.* at 633 (emphasis in original). In the present case, although plaintiffs complain of 21 alleged acts committed by defendants, these allegations at best show improper activities directed toward plaintiffs arising out of defendants' representation of Raines. They do not provide evidence that would allow a trier of fact to extrapolate a pattern of recurrence, and no inference can be drawn from the allegations that defendants are a criminal enterprise engaged in a pattern of fraudulent activity. *See id.*("[W]e are sure that not all retail stores in the United States are violating RICO; yet we imagine that every retail store in the United States has at least two customers mad enough at it to cry fraud.").

**\*6** Plaintiffs' RICO claim is also doomed because the alleged acts to which plaintiffs direct the court relate to fraud under Illinois law, and fraud is not one of the state law crimes that RICO includes as a predicate act. *See*18 U.S.C. § 1961(1)(A). Rather, only violations of particular federal fraud statutes (specifically wire and mail fraud) constitute predicate acts under RICO. *See*18 U.S .C. § 1961(1)(B). Perhaps plaintiffs anticipated this, as their complaint also contains some references to defendants' "wire, Internet [and] phone meetings" with defendants and others that they claim constitute wire fraud under 18 U.S.C. § 1343. Complaint ¶ 249. However, these allegations cannot save the RICO claim.

As an initial matter, the parties in this action are all alleged to be citizens of the state of Illinois. Thus, many of the telephone conversations at issue presumably would not be interstate communications, which are an essential element of the federal wire fraud statute. 18 U.S.C. § 1343. *See also H.G. Gallimore, Inc. v. Abdula,* 652 F.Supp. 437, 441 (N.D.Ill.1987) (telephone calls alleged in the complaint were not predicate offenses under RICO because they all took place within the State of Illinois). In fact, plaintiffs even complain that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants formed their enterprise to target "unsuspecting citizens *in the state of Illinois.*"Complaint ¶ 249 (emphasis added).

Plaintiffs' complaint does allege that Raines and Lucenti communicated by telephone while Raines was incarcerated in Wisconsin. However, these interstate calls at best might be considered part of a single scheme to defraud, which, as discussed above, is insufficient to meet the pattern requirement. Moreover, with the possible exception of these conversations, plaintiffs plead no facts specifically supporting a claim of federal wire fraud. Rather, plaintiffs complain generally that defendants engaged in similar behavior directed toward other African Americans. These allegations do not meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 782 (7th Cir.1999) ( Rule 9(b) standard applies while fraud allegations under RICO); *see also Cherry v. Hall,* No. 02 C 7895, 2003 WL 29931 at *1 (N.D.Ill. Jan.3, 2003) (applying Rule 9(b) standard to *pro se* plaintiff's RICO claim).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."FED. R. CIV. P. 9(b). In other words, plaintiffs' complaint must state "the who, what, when, where, and how" with respect to each allegation supporting their claim of wire fraud. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). Plaintiffs have not done so. Terse, generalized allegations such as plaintiffs' are insufficient to plead a predicate act under RICO. *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1326-28 (7th Cir.1994).[FN2] Because plaintiffs have failed to plead a pattern of racketeering activity and the only potential predicate acts they allege fall far short of Rule 9(b)'s heightened pleading standard, their RICO claim must be dismissed.

> FN2. The court also notes that plaintiffs' complaint makes vague references to defendants' activities that perhaps could be construed as allegations of mail or tax fraud, but these allegations also fall far short of Rule 9(b)'s heightened pleading standard.

C. State Law Claims.

**\*7** Defendants do not substantively address plaintiffs' state law claims other than to object to plaintiffs' "conclusory allegations." Defendants devote two sentences to plaintiffs' common law fraud claim, maintaining that plaintiffs have failed to plead that claim with required particularity. This argument fails. Although plaintiffs did not plead a pattern of wire fraud under RICO, their allegations of common law fraud are somewhat more detailed. Plaintiffs cite to specific conversations in which defendants allegedly intentionally made untrue statements to plaintiffs that plaintiffs relied upon to their detriment. These allegations are sufficiently particular to meet Rule 9(b)'s heightened pleading standard.

Defendants also argue that this court can decline to exercise jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 after it has dismissed the claims over which it has original jurisdiction. Because plaintiffs' Section 1981 claim survives defendants' motion to dismiss, however, it is improper to dismiss plaintiffs' state counts on this basis.

*CONCLUSION*

For the foregoing reasons, defendants' **motion** to **strike** is denied. Defendants' motion to dismiss is granted in part and denied in part. Counts II and V of plaintiffs' complaint are hereby dismissed with prejudice.

N.D.Ill.,2004.
Manuel v. Lucenti
Not Reported in F.Supp.2d, 2004 WL 2608355 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT V

G.C. & K.B. Investments, Inc. v. Fisk
E.D.La.,2002.
Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
G.C. & K.B. INVESTMENTS, INC. and FTB, LLC
v.
Phillip FISK, Wayne Tilson, Autowork Services, LLC, and Spirit Group, LLC
**Nos. Civ.A. 01-1256, Civ.A. 01-2831.**

Jan. 8, 2002.

*ORDER AND REASONS*

VANCE, J.

**\*1** Before the Court are defendants' motion to dismiss under Rule 12(b)(1) and 12(b)(2), motion to strike under Rule 12(f), and motion for attorney's fees and costs under Rule 41(d). For the following reasons the motion to dismiss is granted in part and denied in part. The motion to strike and the motion for attorneys fees and costs are denied.

I. Background

This case arises from contracts for the construction and operation of SpeeDee Oil Change and Tune-Up franchises. Plaintiff G.C. & K.B. Investments, Inc., a Louisiana corporation, is the entity that deals with the franchisor aspects of SpeeDee operations. Plaintiff FTB, a Louisiana limited liability company, is an affiliate of SpeeDee, and it supervises the construction of new franchise locations. In 1998, Gary Copp, the president of SpeeDee, contacted Wayne Tilson, a Georgia-based real estate developer, about establishing SpeeDee franchises in Georgia. In accordance with its expansion plans, SpeeDee, through FTB, acquired land in Roanoke and Vinton, Virginia; Asheville, North Carolina; and Gainesville, Georgia.

During the course of their dealings, Tilson introduced Copp to Phillip Fisk, a co-owner along with Tilson of Spirit Group, LLC, a corporation registered in North Carolina. Tilson and Fisk suggested that Spirit could build the SpeeDee stores planned for the Georgia and North Carolina properties, as well as the proposed stores in South Carolina and Texas. As a result of these discussions, Spirit Group and FTB entered into a contract in which Spirit Group agreed to construct and sell to FTB "turn-key" prototype buildings for the Vinton, Roanoke, and Gainesville locations for about $650,000 per store. The same parties reached a similar agreement for a location Lawrenceville, Georgia, for which FTB paid Spirit Group a $20,000 deposit. FTB also paid an initial loan commitment fee of $3000 to the Franchise Finance Corporation of America ("FFCA") for the Lawrenceville store. The Lawrenceville unit was never built because FTB was unable to obtain required site permits. Plaintiffs allege that they discovered numerous defects in the three stores that Spirit Group constructed in Vinton, Roanoke, and Gainesville.

During the construction of the stores, Tilson and Fisk formed Autowork Services, LLC in order to become franchisees of SpeeDee stores. After G.C. & K.B. executed franchise agreements with Autowork and Tilson and Fisk, individually, defendants entered into leases with FTB for the Asheville and Gainesville sites. Under the lease terms, defendants agreed to pay a monthly rental fee and property taxes. Defendants also signed leases for the equipment to be used at the stores.[FN1] Plaintiffs allege that defendants failed to pay the rental fees under both the property and equipment leases and fell behind on the royalty payments under the franchise agreements. Eventually, defendants abandoned the two stores. Plaintiffs were forced to find new franchisees to replace the defendants.

FN1. The property lease and equipment lease contain acceleration clauses. The acceleration in the equipment lease provides:

Lessor shall be entitled to exercise, at its option, concurrently, successively, or in any combination, all remedies available at law or in equity, including without limitation any one or more of the following:

(v)To accelerate and recover from Lessee all rent and other monetary sums due and owing and scheduled to become due and owing under this Equipment Lease both before and after the date of such breach for the entire scheduled term of the Equipment Lease;

Pl.'s Ex. B, at 14, ¶ 21B(v);

The property lease contains a nearly identical provision. *See* Pl.'s Ex. C., at 13, ¶ 21D(vi).

**\*2** In the first complaint, filed on April 25, 2001, plaintiffs assert claims for damages against Tilson, Fisk, and Autowork for breaching the franchise agreements. Plaintiffs also assert claims against Spirit Group for failing to honor its warranty obligations under the construction contracts and for failing to provide FTB with an acceptable site plan for the Lawrenceville project. On August 8 and 15, 2001, FTB and G.C. & K.B., respectively, each moved to dismiss Spirit Group from the proceedings without prejudice after they determined that the damage estimates for the Vinton, Roanoke, and Gainesville stores did not exceed the jurisdictional amount. Subsequently, plaintiffs discovered additional construction defects and on September 14, 2001, they filed a second complaint reasserting the construction claims against Spirit Group and adding claims for unpaid rent under the equipment and property leases against Tilson, Fisk, and Autowork. All defendants filed this **motion** to **dismiss** the **case** for lack of subject matter jurisdiction, to strike the second complaint as **duplicative**, and to award fees and costs under Rule 41 because plaintiffs voluntarily dismissed the claims against Spirit Group and then reasserted it.[FN2] Further, Spirit Group asserts, as an additional grounds for dismissal, that the Court lacks of personal jurisdiction over it.

> FN2. Tilson, Fisk, and Autowork then filed a motion for summary judgment for lack of subject matter jurisdiction just as to the original complaint. The Court need not address this motion. The case has been consolidated and the two complaints will be considered as one because the claims are nearly identical as against these three defendants, with the exception of the additional request for unpaid rent.

II. Discussion

A. Personal Jurisdiction over Spirit Group

When, as here, a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff shoulders the burden of establishing jurisdiction over that defendant. *See Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985). Because this Court will rule on the issue without a full evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction. *See Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994) (citing *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985)). In determining whether plaintiffs have made a *prima facie* showing of jurisdiction, the Court must accept as true all uncontroverted allegations in plaintiffs' complaint and resolve any factual disputes in their favor. *See Latshaw v. Johnson,* 167 F.3d 208, 211 (5th Cir.1999); *Wilson,* 20 F.3d at 648.

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the forum state's exercise of such jurisdiction complies with the due process clause of the Fourteenth Amendment. *See Latshaw,* 167 F.3d at 211. Under the Louisiana long-arm statute, jurisdiction is proper if the cause of action arises out of "injury or damage by an offense or quasi offense committed through an act or omission in this state." LA.REV.STAT. § 13:3201(A)(3). In addition, Louisiana's long-arm statute extends jurisdiction to the full limits of due process. Thus, the Court must determine whether the exercise of jurisdiction satisfies the due process clause. *See* LA.REV.STAT. § 13:3201(B); *Guidry v. United States Tobacco Co.,* 188 F.3d 619, 624 (5th Cir.1999) (citing *Petroleum Helicopters, Inc. v. Avco Corp.,* 513 So.2d 1188, 1192 (La.1987)).

1. Due Process

**\*3** The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw,* 167 F.3d at 211 (citing *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)).

a. Minimum contacts

The minimum contacts prong of the due process analysis may be satisfied if the contacts give rise to specific personal jurisdiction or give rise to general personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S.

408, 414, 104 S.Ct. 1868 (1984); _Wilson,_ 20 F.3d at 647.<sup>FN3</sup>

      FN3. The Court will not address the issue of general jurisdiction because plaintiffs do not contest Spirit Group's claim that the Court does not have general personal jurisdiction over it.

A court may exercise specific jurisdiction over a nonresident defendant when the claim asserted against the defendant arises out of or relates to his contacts with the forum state. _See Helicopteros,_ 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8;_Wilson,_ 20 F.3d at 647. To determine whether specific jurisdiction exists, courts must examine whether the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and whether the cause of action arises out of or relates to those activities. _See Guidry,_ 188 F.3d at 625;_D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,_ 754 F.2d 542, 547-48 (5th Cir.1985). The defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there. _Latshaw,_ 167 F.3d at 211 (_citing World-Wide Volkswagen Corp. v. Woodson,_ 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980)). A single act by the defendant directed at the forum state can be enough to confer in personam jurisdiction over him, if the cause of action arises out of that act. _See Ruston Gas Turbines, Inc. v. Donaldson Co.,_ 9 F.3d 415, 419 (5th Cir.1993). In order to determine whether defendant purposefully availed itself of the privilege of conducting activities within this forum, the Court must consider factors such as the quality, nature and extent of defendant's activities in this forum, and the relationship between the cause of action and the contacts. _See D.J. Investments,_ 754 F.2d at 545 n .1 (_quoting Prejean v. Sonatrach, Inc.,_ 652 F.2d 1260, 1268 (5th Cir.1981)).

Here, plaintiffs claim that this dispute arose out of contracts negotiated between FTB and Spirit Group. Plaintiffs submit the affidavit of Gary Copp, president of SpeeDee and its affiliates, testifying that he had extensive telephone and written correspondence with Fisk and Tilson, on behalf of Spirit Group, regarding construction contracts for the sites in Vinton, Roanoke, Gainesville, and Lawrenceville. Pl.'s Opp. to Mot. to Dismiss, Ex. A at ¶ 7. As a result of the discussions, Spirit Group drafted contracts outside of Louisiana and sent the contracts to Copp in Louisiana for his approval. _Id._ at ¶ 8. Copp further testifies that Tilson and Fisk separately made at least one trip to SpeeDee's Louisiana office to discuss the construction projects on behalf of Spirit. _Id._ at ¶ 10.Additionally, he states that during another meeting in Louisiana additional discussions were held about the completed construction projects and related repair issues. _Id._ at ¶ 11.Spirit Group maintains that all of the alleged causes of action arose out of activities outside of Louisiana. _See_ Def.'s Reply Mem. at 3.

**\*4** The Supreme Court has held that the existence of a contract alone is insufficient to confer specific personal jurisdiction.

If the question is whether an individual's contract with an out-of-state party _alone_ can automatically establish minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.... [W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences, which themselves are the real object of the business transaction.... It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

_Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 478, 105 S.Ct. 2174, 2185-86 (1985) (internal quotes and citations omitted). Further, the Fifth Circuit has stressed that not only does a contract alone not confer jurisdiction, but also that district courts should "look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [defendant] purposely established minimum contacts with the forum."_See Spademan,_ 85 F.3d at 1193.

The facts of this case are similar to those in _Spademan_ where the Fifth Circuit affirmed the district court's dismissal of the case based on lack of personal jurisdiction. In _Spademan,_ plaintiff asserted personal jurisdiction over defendant based on the combination of a contractual relationship, the defendant's mailing payments to the forum state and his engaging in communications in the forum state regarding the execution and performance of a contract. _Id._ In addition, plaintiff pointed out the defendant made two shipments of bindings to the forum state. _Id._ The Court rejected the plaintiff's argument, and held that:

The random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over Spademan.

_Id._ at 1194.

Further, the Fifth Circuit has found that the place of contractual performance is central in determining whether the making of a contract with the in-state resident is sufficiently purposeful to satisfy minimum contacts. *See Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 337-38 (5th Cir.1999); *Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.1992) (citation omitted). In *Dickson,* the plaintiff asserted personal jurisdiction based primarily on a repair contract it had with the out-of-state defendant. 179 F.3d 331, 337 (5th Cir.1999). The Court placed great weight on the fact that the bulk performance of the contract occurred out of the forum state. *Id.* at 338. The court there noted that the relationship between the parties had been structured so that once the repairs outside the forum state had taken place, and the plaintiff paid the defendant, all contact between the parties would cease. *Id.* at 338. The Court found that this type of contractual relationship created only limited contacts between the defendant and the forum state, which did not satisfy the minimum contacts analysis.

**\*5** These cases support dismissing the case against Spirit Group for lack of personal jurisdiction. The bulk of the negotiations and performance of the contracts at issue occurred outside the forum state. Indeed, the only discussions conducted in Louisiana occurred after the construction contracts were executed. The types of contacts that plaintiffs present in support of jurisdiction are the kind that the Fifth Circuit has held to be insufficient to confer jurisdiction. *See Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029 (5th Cir.1983) (holding that communications regarding the development or status of a contract was insufficient to confer jurisdiction); *see also Plant Mechanical Services, Inc. v. Drivecon Corp.,* 2001 WL 1002413, *4 (E.D.La.2001) (finding lack of personal jurisdiction when bulk of negotiations and performance of contracts occurred outside forum state).

Furthermore, plaintiffs' reliance on the Supreme Court's decision in *Burger King* is ineffectual. In *Burger King,* the nonresident defendants actively solicited the business of Burger King, in the forum state, Florida, and the parties entered into a twenty-year franchise agreement that was governed by Florida law. *See Burger King,* 471 U.S. at 465-66, 105 S.Ct. at 2178-79. Plaintiffs' own record establishes that Copp initially sought out Tilson, a nonresident, for help acquiring real estate outside the forum. The parties later discussed Spirit Group's desire to construct the SpeeDee stores after the relationship was already established. Further, although plaintiffs contend that Spirit Group agreed to construct additional stores in the future, there is no indication that the parties agreed to be governed by Louisiana law. Considering the totality of the facts in this case, the Court finds that these limited contacts are not of the quality and nature necessary to support specific jurisdiction over Spirit Group. Further, plaintiffs make no showing that would establish the extensive Louisiana contacts necessary to establish general jurisdiction. Accordingly, the Court grants the motion to dismiss Spirit Group.

B. Subject Matter Jurisdiction over Tilson, Fisk, and Autowork

Defendants Tilson, Fisk, and Autowork contend that plaintiffs fail to allege a sufficient amount in controversy to satisfy 28 U.S.C. § 1332(a). The Court determines the amount in controversy from the complaint, "unless it appears or is some way shown that the amount stated in the complaint is not claimed 'in good faith.' " *Horton v. Liberty Mutual Ins., Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573 (1961). To find a lack of good faith "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co .,* 303 U.S. 283, 289, 58 S.Ct. 586, 590 (1938). This amounts to "but one test; good faith and legal certainty are equivalents rather than two separate tests." *Jones v. Landry,* 387 F.2d 102, 104 (5th Cir.1967). The good faith standard is not concerned with subjective states of mind.

**\*6** Plaintiffs' alleged damages include unpaid past rent, property taxes, and future unpaid rent for breaches of the property and equipment leases. *See* Pl.'s Second Cmplt. at ¶ 23. Defendants assert that plaintiffs arguable damages are limited to $57,000 and that they are legally certain to not be able to satisfy the jurisdictional amount because plaintiffs are not entitled to future unpaid rent under the acceleration clauses in the equipment and property leases. *See* Def.'s Reply Mem. at 7. According to defendants, plaintiffs have relet the property and must formally put the new tenants in default before an acceleration demand can be made upon defendants. *See id.* Defendants further allege that plaintiffs have not pleaded compliance with the acceleration clauses.

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). Accordingly, plaintiffs' complaint need only provide notice of the circumstances giving rise to their claim and set forth enough information to outline the elements of their claim or permit inferences to be drawn that these elements exist. *See Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir.1999). The Court finds that plaintiffs meet the liberal notice pleading requirements under Rule 8(a) by including "future unpaid rent" in their demand for relief. This puts defendants on notice that plaintiffs are seeking the amount of rent due for the remaining time under the leases. *See* Pl.'s Second Cmplt. at ¶ 23. Finally, it is true that the leases require plaintiffs to offset the money they receive

for reletting the premises and the equipment against the amounts defendants owe them after accounting for certain expenses. *See* Pl.'s Ex. B at 13, ¶ 21D(iv), Pl.'s Ex. C at 13, ¶ 21D(v). The proceeds from such reletting only reduce the total remaining due under defendants' lease. There is no evidence, however, that the rent paid by the current tenants completely offsets the amount defendants assertedly owe to FTB, about two million dollars for each of the two properties. *See* Pl.'s Ex. E, Affidavit of Mark Dearing. Defendants submit no evidence of the date the property was relet or the or the amount of the rentals under the new leases. Therefore, it is not legally certain that plaintiffs cannot collect at least a portion of the unpaid future rent under the equipment and property leases and meet the jurisdictional amount.

C. Motion to Strike

Defendants move to strike the allegations contained in the second complaint against Tilson, Fisk, and Autowork as redundant under Rule 12(f). Rule 12(f) provides that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."<u>FED.R.CIV.P. 12(f)</u>. A motion to strike under <u>Rule 12(f)</u>"is a drastic remedy to be resorted to only when required for the purposes of justice...."*Augustus v. Board of Pub. Instruction of Escambia County,* 306 F.2d 862, 868 (5th Cir.1962) (*quoting <u>Brown & Williamson Tobacco Corp. v. United States,</u>* 201 F.2d 819, 822 (6th Cir.1953). Accordingly, such a motion should only be granted when "the allegations are prejudicial to the defendant or immaterial to the lawsuit."<u>*Johnson v. Harvey,*</u> 1998 WL 596745, at <sup>*</sup>7 (E.D.La.1998) (*quoting <u>Veazie v. Southern Greyhound Lines,</u>* 374 F.Supp. 811, 815 (E.D.La.1994)).

**\*7** After reviewing the two complaints and the portions of the second complaint that pertain to Tilson, Fisk, and Autowork, the Court denies defendants' <u>Rule 12(f)</u> motion to strike. Defendants do not allege that they were prejudiced by the filing of the second complaint, but merely argue that plaintiffs should have amended the first complaint instead of filing a second one. *See* Def.'s Mot. to Dismiss at 11-12. Because the two complaints have been consolidated into one case, the second complaint essentially amends the first complaint by adding the claim for unpaid rent under the property and equipment leases. Accordingly, in the absence of prejudice to defendants, the Court denies defendants' motion to strike.

D. Rule 41 Motion

Spirit Group asserts that it is entitled to attorney's fees and costs under Rule 41(d) for the previously dismissed action. Under Rule 41(d), a court may require a plaintiff to pay the costs of a prior action as a condition for maintaining a subsequent action only if the plaintiff has dismissed the previous action. <u>FED.R.CIV.P. 41(d)</u>; *see also <u>Duchardt v. Ewing,</u>* 571 F.2d 869, 870 (5th Cir.1978) (per curiam). The decision to stay an action and impose costs under <u>Rule 41(d)</u> is within the broad discretion of the trial court. *See <u>Larson v. Senate of the Commonwealth of Pennsylvania,</u>* 955 F.Supp. 1549, 1582 (M.D.Pa.1997) (*citing* 5 Moore's Federal Practice ¶ 41.16 at 41-185 (2d ed.1996)), *affirmed in part, reversed in part on other grounds,*154 F.3d 82 (3d Cir.1998), *cert. denied,*525 U.S. 1144, 119 S.Ct. 1037. "The purpose of the rule is to prevent the maintenance of vexatious lawsuits and to secure, where such suits are shown to have been brought repetitively, payment of costs of prior instances of such vexatious conduct."*<u>United Transp. Union v. Maine Central R.R. Co.,</u>* 107 F .R.D. 391, 392 (D.Me.1985). A court may refuse to impose costs on the plaintiff if it appears that there was good reason for the dismissal of the prior action. <u>9 Charles Alan Wright & Arthur R. Miller,</u> *Federal Practice and Procedure* § 2375 (2d ed.1987). Here, plaintiffs voluntarily dismissed Spirit Group from the first lawsuit when they determined that the amount of construction damage to their stores was not sufficient to meet the jurisdictional requirement. Plaintiffs filed the second complaint against Spirit Group after discovering additional damage to the stores that allegedly met the jurisdictional amount. Accordingly, the Court finds that imposing costs under <u>Rule 41(d)</u> is not warranted because plaintiffs had good reason to dismiss the first complaint as against Spirit Group, a lack of subject matter jurisdiction.

III. Conclusion

For the foregoing reasons, Spirit Group's motion to dismiss is GRANTED; Tilson's, Fisk's, and Autowork's motion to dismiss is DENIED; and the motions to strike and for attorney's fees and costs are DENIED.

E.D.La.,2002.
G.C. & K.B. Investments, Inc. v. Fisk
Not Reported in F.Supp.2d, 2002 WL 27772 (E.D.La.)

END OF DOCUMENT