# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DETLEF SOMMERFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08-CV-3025 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| THE CITY OF CHICAGO, ) | |
| SERGEANT KNASIAK #1841, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Detlef Sommerfield ("Sommerfield"), a patrol officer in the Chicago Police Department, brought this action under 42 U.S.C. §§ 1981 and 1983 against the City of Chicago ("the City") and Sergeant Lawrence Knasiak ("Knasiak"). Sommerfield alleged that Knasiak repeatedly harassed and discriminated against him on the basis of his race, religion, and national origin, and that Knasiak retaliated against him after he complained about the harassment. The case went to trial in July 2014. The jury returned a verdict for Sommerfield. It awarded him $540,000 in punitive damages and $0 in compensatory damages. ECF No. 366 at 1. Post-trial litigation took nearly three years. The court entered judgment on May 12, 2017, ECF No. 507; *see also* ECF No. 505.

The court has before it post-judgment motions filed by Sommerfield and Knasiak twenty-eight days after the entry of judgment. Sommerfield seeks to bring an indemnity count against the City. Knasiak asks the court alternatively to set aside the judgment and enter judgment for him as a matter of law or to reduce the award of $540,000 in punitive damages, which he claims is grossly excessive. For the reasons that follow, the court denies both motions.

# I. BACKGROUND

The court's prior orders recite the protracted procedural history of this case in detail. *See,
e.g.*, ECF No. 469 at 2–4; ECF No. 496 at 2–3. This order will not retread that ground but will
briefly sketch the pertinent history relevant to the pending motions.

This case is a sequel to, or perhaps the second act of, a 2006 case growing out of the
same course of conduct brought by Sommerfield against the City of Chicago ("the 2006 case").
*Sommerfield v. City of Chicago*, No. 06 C 3132, 2013 WL 139502 (N.D. Ill. Jan. 10, 2013), *aff'd*
863 F.3d 645 (7th Cir. 2017). The jury in the 2006 case awarded Sommerfield $30,000 from the
City in compensatory damages.

In 2009, this court dismissed Plaintiff's claims against the City as duplicative of his
claims in the 2006 case. *Sommerfield v. City of Chicago*, No. 08 C 3025, 2009 WL 500643
(N.D. Ill. Feb. 26, 2009). This court ruled at summary judgment in this case that Sommerfield
"ha[d] not suffered an injury distinct from Knasiak's retaliatory harassment that could be
compensated in addition to the recovery he has already received in the 2006 case for Knasiak's
discriminatory remarks" and was "precluded from recovering compensatory damages based on
his retaliation claim" in the 2006 Sommerfield litigation. *Sommerfield v. City of Chicago*, No. 08
C 3025, 2013 WL 4047606, at *13, 14 (N.D. Ill. Aug. 9, 2013). But this court also ruled "that
Sommerfield [could] proceed on his claims of verbal harassment and retaliation against Knasiak
to the extent that he seeks punitive damages." *Id.* at *15.

Before trial the parties litigated, in a motion in limine, whether the jury should be told
about the verdict in the 2006 case; Knasiak favored disclosure. Order 1, Apr. 11, 2014, ECF No.
301. The court proposed, and the parties accepted, a trial plan designed to minimize the risk of
prejudicing the jury by telling it about the prior verdict. *Id.* Under the plan, the jury would not

be told about the 2006 case and would make an independent finding on compensatory damages. *See id.* If the jury awarded more than $30,000 in compensatory damages, Sommerfield would receive no double recovery. *Id.* at 2.

The court modified its ruling at the conference on jury instructions. The parties agreed that the court had ruled that Sommerfield could recover compensatory damages stemming from one incident, his suspension and denial of a canine handler position based on a series of events that led to the filing of a disciplinary complaint called a complaint register ("CR") lodged against Sommerfield. Trial Tr. 1234–36. Knasiak's counsel argued, and the court agreed, that the jury should be instructed on Seventh Circuit law holding that it could award "punitive damages even if you do not award compensatory" damages. Trial Tr. at 1275:11–14; *see also id.* at 1272:5—1276:9 (adopting defendant's proposed instruction no. 28, which included this language); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995). After further discussion, the court concluded, as the parties argued, that it had labored under a "misapprehension of the law" because the jury did not have to award compensatory damages to award punitive damages. Trial Tr. at 1297:7–8 (discussing order dated Apr. 11, 2014). Knasiak's attorney advocated for putting a blank for compensatory damages beneath each claim on the verdict form, but the court, with the parties' extensive input, eventually worked out a set of instructions and a verdict form designed to minimize confusion and avoid prejudicing the parties. *See id.* at 1297–1321.

Consistent with the court's rulings, the jury was instructed that it could award compensatory damages "for emotional distress and/or pain and suffering stemming from Defendant's issuance of a complaint register (CR) against Plaintiff." Jury Instructions 25, ECF No. 365 ("You should not determine compensatory damages for any other injury . . . . If you

determine that Plaintiff has proven by a preponderance of the evidence that Defendant is liable for any other injury to Plaintiff, the court will decide the appropriate amount of compensatory damages."). The court added that it would calculate damages for lost wages and benefits. *Id.*

The verdict form asked four questions. ECF No. 366 at 1. The first three asked whether Sommerfield was liable for "verbal harassment" (question one), for being "treated unequally based on the consequences that resulted from Defendant's issuance of the complaint register" (question two), and for retaliation (question three). *Id.* A blank for an amount of compensatory damages was indented beneath question two, but not questions one and three. *Id.* The jury found for Sommerfield on all three questions but awarded $0 in compensatory damages. *Id.* Question four asked the jury what amount of punitive damages were appropriate if it "found for the Plaintiff on one or more of Plaintiff's claims." *Id.* Next to its $540,000 answer a handwritten notation on the verdict returned by the jury reads, "(10 years pension)." *Id.*

At the conclusion of the evidence at trial, Knasiak moved for entry of judgment as a matter of law under Federal Rule of Civil Procedure 50(a). ECF No. 359. The court denied his motion by written order. ECF No. 362.

After the trial the court initially denied Sommerfield's motions seeking an award of pre-judgment interest. It also rebuffed his efforts to amend his complaint post-trial to add a pre-judgment interest claim. The court denied Sommerfield's motions to add an indemnity claim against the City to his complaint because the City had made a voluntary payment of all of the economic damages he claimed to him after the trial.

But on February 21, 2017, the court partially reconsidered one of those decisions and found that Sommerfield was entitled to pre-judgment interest. ECF No. 496 at 3–5. The parties litigated the amount of pre-judgment interest, the amounts of back pay and benefits that should

be awarded (economic damages), and the form of the judgment over the next two months. Sommerfield never mentioned an indemnity claim. On May 12, 2017, the court held a hearing, made findings, and entered judgment. ECF No. 507.

Consistent with the jury's verdict, the judgment awarded $540,000 against Knasiak in punitive damages and nothing in compensatory damages. *Id.* at 1. The court also dismissed the City of Chicago. *Id.* The accompanying order noted that neither of the parties' proposed judgments mentioned the City. ECF No. 505 at 1.

Again, the parties agreed to leave the computation of economic damages to the court if Sommerfield prevailed at trial. The judgment recites, as the parties agreed, that Sommerfield is entitled to $54,315.24 in economic damages offset by the same amount due to a voluntary payment made by the City to Sommerfield during the pendency of this case. *See id.* The court also awarded $8,703.96 in pre-judgment interest. *Id.* at 2.

## II. KNASIAK'S POST-JUDGMENT MOTION

The first portion of Knasiak's post-judgment motion raises a challenge to the sufficiency of the evidence at trial. Procedurally, this challenge comes under the heading of a motion for judgment as a matter of law under Rule 50(b) and alternatively for new trial under Rule 59(a). Finally, Knasiak moves under Rule 59(e) to amend the judgment, arguing that the jury's punitive damages award offends due process principles because it is excessive and disproportionate to Sommerfield's damages.

### A. Mootness

Because it is a jurisdictional doctrine, the court must first address Sommerfield's claim that Knasiak's motion is moot. *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71–72 (2013); *Germeraad v. Powers*, 826 F.3d 962, 967 (7th Cir. 2016). Mootness occurs "only

when it is impossible for a court to grant any effectual relief whatever to the prevailing party."
*Wright v. Calumet City*, 848 F.3d 814, 817 (7th Cir. 2017) (citing *Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). Sommerfield contends that the City's voluntary payment to him judicially admitted Knasiak's liability, so even if Knasiak wins his post-trial motion, the judgment would nevertheless stand on the strength of the judicial admission. Sommerfield's mootness argument fails on its own terms.

The City's voluntary payment to Sommerfield did not hamstring Knasiak's ability to contest his liability in this case. "A judicial admission is a statement, normally in a pleading, that negates a factual claim that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). Sommerfield contends that the City's voluntary payment admitted Knasiak's liability or perhaps that the evidence at trial was legally sufficient to support the verdict. Because these are legal conclusions rather than facts, the judicial admission doctrine does not apply to them. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681–82 (7th Cir. 2002) (Rovner, J., concurring in the judgment) ("Because the matter [the appellant] claims was admitted is a proposition of law, the doctrine of judicial admission is not applicable." (quotation omitted)); *see also Cal. N. R.R. Co. v. Gunderson Rail Servs., LLC*, 912 F. Supp. 2d 662, 669 (N.D. Ill. 2012) (holding failure to demand indemnity under contract did not admit judicially that indemnity was unavailable under contract because that was a legal, not factual, question). The judicial admission doctrine also does not apply because the City made the payment outside of this proceeding as part of a disciplinary process. *See, e.g.*, *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 772 (N.D. Ill. 2011) ("a statement made in one lawsuit cannot be a judicial admission in another" (quoting *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996))); *Nat'l Spiritual*

*Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 547 F. Supp. 2d 879, 898 (N.D. Ill. 2008) (collecting authority and holding that statement in sworn declaration submitted to U.S. Patent and Trademark Office was not a conclusive judicial admission).  Finally, the parties have not suggested that Knasiak participated in or ratified the City's decision to pay Sommerfield.  Hence the City's decision cannot be fairly attributed to Knasiak as a voluntary choice to relinquish his right to contest liability in this case. *See Higgins v. Mississippi*, 217 F.3d 951, 958 (7th Cir. 2000) (explaining that "a judicial admission is in the nature of a waiver.  A waiver is a deliberate relinquishment of a known right, and a waiver made for purposes of one lawsuit needn't have been intended to carry over to another").

Without a judicial admission, the predicate for Sommerfield's mootness argument collapses.  The City's payment does not bar the court from vacating or reducing all or part of the judgment ordering a new trial, or rendering judgment for Knasiak, and "[s]o long as a court retains the 'raw ability' to take some action that will have a concrete effect on the parties' rights, the case is not moot even if the court would be reluctant to take that action." *Germeraad*, 826 F.3d at 968 (quoting *In re UNR Indus., Inc.*, 20 F.3d 766, 768–69 (7th Cir. 1994)) (other citation omitted).

**B. Judgment as a Matter of Law**

Renewing arguments he made at summary judgment and at the end of Sommerfield's case in chief, *see* Fed. R. Civ. P. 50(a), Knasiak contends that the evidence admitted at trial was legally insufficient to support the jury's verdict.  He moves under Rule 50(b) for entry of judgment as a matter of law in his favor.  Because the evidence was legally sufficient to allow the

jury to conclude that Knasiak directly caused Sommerfield's injuries and the 'cat's paw' theory was not in play, the verdict will not be disturbed.

1. Rule 50(b) Motions

A Rule 50(b) motion for judgment as a matter of law calls upon the court to "decide whether the jury had 'a legally sufficient evidentiary basis' for its verdict." *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013) (per curiam) (quoting Fed. R. Civ. P. 50(a)(1) and citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)) (other citation omitted). Judgment as a matter of law should be rendered only if "on the basis of the admissible evidence, no rational jury could have found for the prevailing party." *Stragapede v. City of Evanston*, 865 F.3d 861, 865 (7th Cir. 2017) (quoting *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 431 (7th Cir. 2012)). The court "may not make credibility determinations or weigh the evidence" on a motion for judgment as a matter of law. *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1018 (7th Cir. 2016) (quoting *Reeves*, 530 U.S. at 150); *see also Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 311 (7th Cir. 2011) (court cannot "rest on [its] own view of contested evidence" when deciding motion for judgment as a matter of law (citing *Zimmerman v. Chi. Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004))). Rather, the court views the evidence and "construe[s] the facts strictly in favor of the party that prevailed at trial[,] . . . drawing all reasonable inferences in that party's favor and disregarding all evidence favorable to the moving party that the jury is not required to believe." *May*, 716 F.3d at 971 (internal quotation and citation omitted) (citing *Reeves*, 530 U.S. at 151) (other citation omitted); *see also Gracia*, 842 F.3d at 1019 ("[T]he court is obliged to construe the facts in favor of the parties who prevailed under the verdict." (citing *Tart v. Ill. Power Co.*, 366 F.3d 461, 464 (7th Cir. 2004))).

## 2. The Jury Had a Legally Sufficient Basis for Its Verdict

Applying the Rule 50(b) standard in light of the earlier rulings in this case, the jury had a legally sufficient basis for its verdict. This court has repeatedly acknowledged the rule that Knasiak cannot be held liable under Sections 1981 and 1983 unless Sommerfield can demonstrate that Knasiak "caused or participated in a constitutional violation." *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (internal quotation marks omitted). Similarly, individual liability under § 1983 is appropriate where the "individual defendant caused or participated in a constitutional deprivation." *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (quoting *Hildebrandt*, 347 F.3d at 1039). And the Seventh Circuit has held that for intentional discrimination claims under Sections 1981 and 1983, individual liability can attach under a "cat's paw" theory—that is, "subordinate governmental employees with unlawful motives who cause the real decision-makers to retaliate" can be held individually liable under Sections 1981 and 1983. *Smith*, 681 F.3d at 898 (citations omitted); *see id.* at 899. To prevail on a cat's paw theory, the plaintiff must show that "the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and . . . that the biased subordinate's scheme was the proximate cause of the adverse employment action." *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013). Knasiak maintains that Sommerfield did not produce sufficient evidence to permit the jury to conclude that Knasiak personally participated in the decisions to suspend Sommerfield or to deny him the canine handler position. He analyzes the evidence at trial under the direct and indirect frameworks often used at summary judgment on employment discrimination and retaliation claims. *See* ECF No. 509 at 9–15. In the first place, the Seventh Circuit did away with the formal distinction

between the direct and indirect methods in *Ortiz*, *supra*. *E.g.*, *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017) (discussing the effect of *Ortiz*). Once the case goes to trial, the burden-shifting framework used at summary judgment "falls away, and the question is simply whether that evidence is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 621 (7th Cir. 2008) (citing *Shank v. Kelly–Springfield Tire Co.*, 128 F.3d 474, 478 (7th Cir. 1997)). So whether Sommerfield produced enough evidence to make out a prima facie case under the burden-shifting frameworks "is not dispositive." *Id.*

Knasiak's arguments directed to whether the evidence was sufficient to support a cat's paw theory also miss the mark. *See* ECF No. 509 at 11–14. These arguments rest on the incorrect premise that this court concluded at the close of the evidence that Sommerfield could prevail on a cat's paw theory, even though he never advanced one. *Id.* at 11. While the court discussed the elements of a cat's paw theory when it denied Knasiak's motion for judgment as a matter of law after Sommerfield rested his case, the court did not embrace that theory or reject Sommerfield's theory of causation. *See* Order, July 23, 2014, ECF No. 362. The court explained its decision this way:

> At trial, Sommerfield presented evidence that Knasiak filed a complaint register (CR) against him for insubordination. Evidence at trial could suggest to a jury that discriminatory animus motivated Knasiak's decision to file the CR against Sommerfield. Additionally, Sommerfield presented evidence that an officer was ineligible to become a K-9 handler if the officer received three or more suspensions, and that Sommerfield received exactly three suspensions.
>
> A reasonable jury could find that discriminatory animus motivated Knasiak's filing of the CR and that the CR was a proximate cause of Sommerfield's suspension, which in turn was a proximate cause for the decision to deny Sommerfield a K-9 handler position.

*Id.* at 2.  That is, the evidence allowed the jury to find that a chain of proximate causation connected Knasiak's actions to Sommerfield's suspension and loss of the canine handler job.  As the Seventh Circuit's recent formulation of the cat's paw test shows, the discussion in the court's order served to highlight that under controlling law the jury could find that discrimination occurred if it believed the evidence that Knasiak tried to launder his discriminatory and retaliatory motives by using a supervisor as an unwitting dupe.  *See Grant*, 870 F.3d at 570 (explaining that "[u]nder the cat's paw theory of liability, when a biased subordinate who lacks decision-making authority uses a 'formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action,' the biased subordinate's actions are evidence of discrimination" (quoting *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014))).

Consistent with its cat free causation analysis, the court instructed the jury on a theory of causation, not the cat's paw theory.  *See* Jury Instructions 23–24, ECF No. 365.  The court therefore need not delve into the cat's paw cases Knasiak cites.  *See, e.g.*, *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 929 (7th Cir. 2017); *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012).  Like the evidence at summary judgment, the evidence here suffices to support the jury's findings that Knasiak proximately caused Sommerfield's deprivations, and so Knasiak's Rule 50(b) motion must be denied.  *See Sommerfield v. City of Chicago*, No. 08 C 3025, 2011 WL 4553021, at *5–6 (N.D. Ill. Sept. 29, 2011).

## C. Reduction of Punitive Damages

Altering a judgment on a Rule 59(e) motion "is proper only when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'"  *Stragapede*, 865

F.3d at 865 (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)).  Knasiak takes issue with the jury's decision to award Sommerfield $540,000 in punitive damages and nothing in compensatory damages, arguing that the verdict violates the Due Process Clause.  As explained in Part I, *supra*, the jury was told that it could make a very narrow finding on compensatory damages.

Sommerfield starts with a waiver argument.  Knasiak waived his proportionality challenge, Sommerfield says, by including an instruction on punitive damages in his proposed jury instructions and by failing to object to Sommerfield's request for punitive damages in his Rule 50(a) motion for judgment as a matter of law at the close of the evidence.  The argument misapprehends the basis of Knasiak's post-trial request to eliminate or reduce the amount of punitive damages.  Knasiak does not challenge the sufficiency of the evidence to support an award of some punitive damages; he claims the jury awarded an excessive amount of punitive damages.  Reply 19, ECF No. 547; Knasiak Post-Trial Mot. 15–17, ECF No. 509.  He could not have made that argument until the jury returned its verdict, so he did not need to raise a pro forma proportionality objection before the jury retired to deliberate.  *See Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 775 (7th Cir. 2002) ("The purpose of requiring that the [Rule 50] motion be made after the submission of all the evidence, but before the case is given to the jury, is to afford the opposing party an opportunity to cure any defect in its case before the jury retires" (citing *Szmaj v. AT & T Co.*, 291 F.3d 955, 957 (7th Cir. 2002))).  Admittedly, Knasiak had almost everything he needed to make this argument after the jury returned its verdict and he waited for years during the protracted post-trial proceedings in this case, but the deadlines for post-trial motions have long since gone by the board.  *See Sommerfield*, 2017 WL 8220504, at *1–2 (declining to enforce deadlines to file post-trial motions because they went unobserved for

years).  Finding no sufficient argument for waiver, the court proceeds to the due process challenge.

The Supreme Court established the framework for analyzing a punitive damages award in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).  "In *Gore*, the Supreme Court observed that punitive damages 'may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition,' but punitive damages violate the Due Process Clause '[o]nly when an award can fairly be categorized as grossly excessive in relation to these interests.'" *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 838 (7th Cir. 2013) (quoting *Gore*, 517 U.S. at 568) (alteration in original).  Three "guideposts" must be considered: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).  The court looks to these guideposts in turn and then an additional argument Knasiak raises about his financial resources.

1. Knasiak's Misconduct is Reprehensible Enough to Support Punitive Damages

Knasiak cites a 1996 case reading *Gore* as "suggest[ing] a hierarchy of reprehensibility with acts of violence or threats of bodily harm being the most reprehensible, followed by acts taken in reckless disregard for others' health or safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence." *Florez v. Delbovo*, 939 F. Supp. 1341, 1347–48 (N.D. Ill. 1996) (citing *Gore*, 517 U.S. at 575–76).  Knasiak's conduct falls somewhere beneath the top tier of the supposed hierarchy because, as he sees the jury's verdict, he committed no violent acts and did not threaten violence.

If there was doubt, the Court subsequently clarified that *Gore* does not establish a hierarchy but a series of "factors" to be considered. *AutoZone*, 707 F.3d at 839 (quoting *State Farm*, 538 U.S. at 419). The list in *Florez* is incomplete today. *State Farm* instructs courts to look at whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

538 U.S. at 419 (quoted in *AutoZone*, 707 F.3d at 839); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 494 (2008). In contrast with a hierarchy, the absence of all of these factors "renders any award suspect," not unconstitutionally excessive *per se*. *State Farm*, 538 U.S. at 419.

Knasiak never hit Sommerfield, but that does not prevent his conduct from being "extremely reprehensible," as the Seventh Circuit described the case of a bank employee subjected to repeated, continuous sexual harassment by three men who were her superiors. *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 561, 567 (7th Cir. 2006). In addition to sexual harassment and verbal harassment about her Greek heritage, one defendant put his hands on the plaintiff's knees after hours and blocked the door when she tried to leave. *Id.* at 561. Without mentioning that conduct, the court focused on the fact the defendants had "acted with impunity, using their positions of power to take advantage of and harm" to be "extremely reprehensible." *Id.* at 567 (affirming award). In another recent case, the Seventh Circuit upheld a five-to-one punitive damages award based on one company's false statement about the other's fans used in wastewater treatment facilities, calling the defendant's behavior "outrageous" and lamenting that the punishment was not harsh enough. *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d

514, 516–17, 520 (7th Cir. 2012).  As those examples illustrate, the absence of physical harm does not preclude a substantial punitive damages award in a rigidly hierarchical way.  *See id.* at 520 (opining that 5-to-1 award should have been higher for making false statements about another company's product).

Here, as in *Farfaras*, Knasiak's behavior, as found by the jury, was "extremely reprehensible."  433 F.3d at 567.  As the jury found the facts, Knasiak abused a position of power, one of public trust, to harass and intimidate Sommerfield whose financial vulnerability is obvious enough given the length of his career and his efforts to maintain his pension eligibility.  Knasiak's harassment persisted for years and escalated in tone and frequency; it often occurred in the presence of other Chicago police officers, who looked on.  *See id.*; *see also AutoZone*, 707 F.3d at 839 (finding punitive damages appropriate based on employer's persistent "reckless indifference" to plaintiff's back condition where condition caused him pain and plaintiff testified that he could not afford to lose his job); *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485–86 (7th Cir. 2003) (holding organized cover-up of Title VII violations warranted punitive damages); *Gracia*, 102 F. Supp. 3d at 992 (collecting cases) (holding that "a $50,000 award is in line with a range set by Seventh Circuit precedent and reflective of the distress described, which the jury determined to be real (if not particularly long-lasting or accompanied by articulable physical ailments)").  For these reasons and after considering the *State Farm* factors, several of which are present, the court finds Knasiak's conduct to be abominable enough to warrant punitive damages.

2. The Disparity Between the Harm Actually Inflicted and the Punitive Damages Award is Not Excessive

The court next calculates the ratio of the punitive damages awarded, $540,000 here, to "the actual harm inflicted on the plaintiff."  *Gore*, 517 U.S. at 580 (citing *TXO Prod. Corp. v.*

*Alliance Res. Corp.*, 509 U.S. 443, 459 (1993)).  Knasiak focuses on the jury's $0 compensatory damages award.  As he forthrightly admits, the Seventh Circuit has repeatedly upheld verdicts awarding punitive damages but no compensatory damages in employment discrimination cases. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 656 & n.3 (7th Cir. 2001); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1009, 1010 (7th Cir. 1998); *see also Hennessy*, 69 F.3d at 1352, 1356 (holding that evidence supported award of some punitive damages with zero compensatory damages in Title VII case but remanding for consideration of whether the amount should be reduced).  The leading case suggests that the awards can be reconciled because "the jurors preferred to award a single sum under the punitive category rather than apportion between compensatory and punitive damages." *Timm*, 137 F.3d at 1011.  That strikes this court as a distinct possibility here.

In any event, back pay and Sommerfield's economic damages belong in the denominator of the ratio because they compensate for the harm actually inflicted on Sommerfield. *See AutoZone*, 707 F.3d at 839–40 (adding back pay to compensatory damages to compute ratio). Knasiak says that the economic damages awarded in the judgment should not be treated as the harm inflicted because the City of Chicago voluntarily paid Sommerfield an amount he claimed would make him whole for his economic damages.  Because the court determined that amount was an offset, ECF No. 496 at 9, if the issue had been fully litigated, Sommerfield could not, according to Knasiak, prove actual and proximate causation for all the economic damages he claimed. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (discussing actual and proximate causation principles).  Knasiak submits that the correct amount of actual damages is "substantially less" than the figure in the judgment, though he does not propose a correct figure. ECF No. 509 at 21.  But the judgment does not equivocate; "the court finds that Sommerfield is

entitled to $54,315.24 in economic damages and $8,703.96 in prejudgment interest." ECF No. 507 at 1.

Meanwhile, Sommerfield complains that Knasiak leaves out prejudgment interest from the $54,315.24 amount of actual harm. The difference comes to only a little more than $8,000, but because the amount of compensatory damages is so small, it affects the whole number of the final ratio. Without the interest, the ratio comes to almost 9.96:1 (punitive to actual harm). Add the prejudgment interest and the ratio falls to about 8.56:1 ($540,000:$63,019.20).

The $30,000 the jury in the 2006 Sommerfield case awarded also belongs in the calculation of actual harm. This court precluded Sommerfield from obtaining compensatory damages for Knasiak's verbal harassment and retaliation precisely because the 2006 verdict compensated him for that harm. *Sommerfield v. City of Chicago*, No. 08 C 3025, 2013 WL 4047606, at *13, 14 (N.D. Ill. Aug. 9, 2013). With the $30,000, the ratio falls to 5.8:1 ($540,000: $93,019.20).

If anything, the single-digit swings in the ratio that an $8,000 figure can produce show how modest the economic damages here are. When compensatory damages are "very small," "the presumption" that something more than a single-digit ratio is excessive "can be rebutted." *Nueros*, 698 F.3d at 520 (citing *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003)) (explaining that this rule is consistent with the Supreme Court's analysis in *State Farm*, 538 U.S. at 425, and collecting additional authority). "The proper focus of analysis of the ratio itself is the adequacy of the combined award of compensatory and punitive damages to motivate the prosecution of a meritorious claim. If compensatory damages are slight, a single-digit ratio is likely to be insufficient." *Id.* (quoting *Gavin v. AT & T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006)). Set aside for the moment the possibility that the jury aggregated punitive and compensatory

damages into one figure. *See Timm*, 137 F.3d at 1011. The ratio still falls on the upper end of the single-digit range, and the inclusion of prejudgment interest makes more than a ten percent difference. That is, the compensatory damages here are modest at best, making a ratio on the upper end of the single digits acceptable to incentivize plaintiffs to prosecute this sort of a claim and provide a meaningful deterrent for would-be workplace harassers. *See Gavin*, 464 F.3d at 641 (reasoning that the plaintiff could recover more than $75,000 to incentivize prosecution of a claim worth about $1,600); *Mathias*, 347 F.3d 672 (7th Cir. 2003) (upholding 37:1 ratio for $5,000 in compensatory damages).

3. <u>Knasiak Has Not Shown a Disparity between the Punitive Damages Awarded and the Penalties Authorized or Imposed in Comparable Cases</u>

Knasiak cites several discrimination cases with ratios he says are smaller than the one here. *See, e.g.*, *David v. Caterpillar*, 324 F.3d 851, 864 (7th Cir. 2003); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1422–25 (7th Cir. 1986). "The fact-specific nature of claims, particularly in the civil rights context, results in a dearth of apples-to-apples comparisons, so addressing every existing case (or even all of the cases cited by the parties) would be a fool's errand." *Torres v. City of Chicago*, No. 12 C 7844, 2016 WL 4158914, at *25 (N.D. Ill. Aug. 5, 2016) (Gottschall, J.) (quoting *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 883 (E.D. Wis. 2015)) (alterations omitted); *see also Lampley*, 340 F.3d at 486 ("[B]ecause Title VII cases are so fact-specific, 'we will not normally disturb an award of damages in a Title VII case at or under the statutory cap, as this decision is largely within the province of the jury.'" (quoting *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 755 (7th Cir. 2002))). Instead, the third guidepost requires the court to "compare the punitive damages in this case to the 'civil or criminal penalties that could be imposed for comparable misconduct.'" *AutoZone*, 707 F.3d at 840 (quoting *Gore*, 517 U.S. at

583) (not discussing case law the parties considered relevant and instead looking to legislative guidance on the appropriate size of a punitive damages award).

Though Congress has not capped punitive damages awards in § 1981 cases like this one, Knasiak urges the court to consider the caps for punitive damages against employers in Title VII cases. *See* 42 U.S.C. § 1981a(b)(3). The Title VII cap ranges from $50,000 to $300,000 depending on the number of employees the defendant has. *See id.* Knasiak compares himself to a company with one employee, but his comparison seems quite strained given that Title VII concerns itself with "employers" and does not contemplate individual liability as § 1981 does. *See Lugo v. Int'l Bhd. of Elec. Workers Local #134*, 175 F. Supp. 3d 1026, 1033 (N.D. Ill. 2016) (dismissing Title VII claim against agent of employer for this reason). *Florez, supra*, stated that, while Congress has not capped punitive damages on § 1981 claims, the caps for Title VII "give[ ] at least some indication of Congress's judgment as to the approximate level of punitive damages." 939 F. Supp. at 1348.

The damages cap on Title VII claims has something to say here, but it is not what Knasiak thinks. When Congress capped punitive damages for Title VII claims, it included this language: "Nothing in this section shall be construed to limit the scope of, or the relief available under, Section 1981 of this Title." 42 U.S.C. § 1981a(b)(4). The Supreme Court has made clear that the "remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)); *see also id.* at 455–56 (discussing overlap and differences between the two statutes). Hence, the exception to the Title VII damages cap in § 1981a(b)(4) gives defendants notice that they should not expect the § 1981a(b)(3) caps to mark the upper limits of punitive

damages exposure in § 1981 cases. *See Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 581–82 (7th Cir. 1996) (reviewing punitive damages award for § 1981 violation for excessiveness without mentioning § 1981a(b)(3) caps); *see also Syrnik v. Polones Constr. Corp.*, 918 F. Supp. 2d 262, 265–66 (S.D.N.Y. 2013) (citing *Zakre v. Norddeutsche Landesbank Girozentrale*, 344 F. App'x 628, 631 (2d Cir. 2009)) (upholding $500,000 punitive damages award in Title VII case involving antisemitism in the workplace based on the absence of a punitive damages cap under New York civil rights statutes).

This does not mean that the sky is the limit for punitive damages in § 1981 actions. Punitive damages cannot be imposed automatically, and they must have an evidentiary and constitutionally sufficient basis. *See Merriweather*, 103 F.3d at 581–82. But because Knasiak offers no basis for regulatory comparison other than the damages cap in § 1981a(b)(3) for assessing the third guidepost, *see* Knasiak Post-Trial Mot. 23–24, ECF No. 509, he has not demonstrated that the guidepost steers toward an excessiveness finding.

4. Knasiak's Resources Support Imposition of Punitive Damages

Under a separate heading, Knasiak claims that his financial condition means that he will be punished too harshly by the punitive damages the jury awarded, so they should be reduced. Based on the cases he cites, the court believes (though it is not entirely certain) that he means to argue that remittitur is required under the Due Process Clause. *See, e.g.*, *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1287 (7th Cir. 1995) (affirming 3:1 ratio of punitive damages and mentioning size of the defendant company as factor in decision); *DeRance, Inc. v. PaineWebber, Inc.*, 872 F.2d 1312, 1328–31 (7th Cir. 1989) (reducing $20 million punitive damages award to $7 million against company and letting $500,000 in punitive damages stand against individual responsible for most of the fraud); *Lee v. Edwards*, 101 F.3d 805, 810–13 (2d

Cir. 1996) (ordering remittitur after considering *Gore* factors); *Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir. 1992) (finding awards excessive partially in view of individual defendants' net worth).

Knasiak points to his trial testimony on his recent financial and employment status. *See* Trial Tr. 1132–35, ECF No. 509 Ex. A. He retired in 2007, so he argues that specific deterrence has no role to play.

The court disagrees. While Knasiak may no longer be in the workplace, he did not testify that he has become a hermit. He still participates in civil society and still has the potential to interfere privately with the civil rights § 1981 safeguards. While he may have less opportunity to torment a subordinate, he can still violate § 1981 by interfering with another person's constitutional rights. *Cf. Annis v. Cnty. of Westchester*, 939 F. Supp. 1115, 1222 (S.D.N.Y. 1996), *vac'd in part on other grounds*, 136 F.3d 239 (2d Cir. 1998) (reasoning that retired police officer would not have the opportunity to violate § 1983 and the Equal Protection Clause, which statute requires action taken under color of state law).

As for his resources, Knasiak testified that he has worked at most sporadically (a doctor told him that it would be stressful) since he retired. He has a mortgage on a home in Arkansas, three vehicles, medical bills not covered by insurance, and a negative net worth.

Notably, the defendant's resources do not appear among the *Gore* guideposts. In *Mathias*, *supra*, the Seventh Circuit explained how a defendant's resources affect the analysis of punitive damages. "[S]anctions should be based on the wrong done rather than on the status of the defendant; a person is punished for what he does, not for who he is, even if the who is a huge corporation" or a retired police officer. 347 F.3d at 676; *see also AutoZone*, 707 F.3d at 839 ("the measure of punishment [must be] both reasonable and proportionate to the amount of harm to the

plaintiff and to the general damages recovered"). So wealth cannot be a basis for awarding

punitive damages. *Mathias*, 347 F.3d. at 677 (citations omitted). But that approach must be

tempered by the recognition that imposing a punishment far in excess of a defendant's ability to

pay promotes disrespect for the law and burdens society with the additional costs over-

punishment creates, as when the defendant is driven into the bankruptcy courts by a judgment no

one thinks he could ever pay, *see Kemezy v. Peters*, 79 F.3d 33, 35 (7th Cir. 1996). Obviously, in

some circumstances (but not when the City hires counsel for an officer), a defendant's resources

become relevant "in enabling the defendant to mount an extremely aggressive defense against

suits such as this and by doing so to make litigating against it very costly, which in turn may

make it difficult for the plaintiffs to find a lawyer willing to handle their case, involving as it

does only modest stakes, for the usual 33–40 percent contingent fee." *Mathias*, 347 F.3d at 677.

Consequently, the plaintiff need not even put on evidence of the defendant's resources to get

punitive damages. *Kemezy*, 79 F.3d at 35–36.

Under the Seventh Circuit's framework for looking at a defendant's resources, Knasiak's

argument based on his financial resources—the award amounts to ten times his annual pension—

must be rejected because the amount is not grossly excessive in proportion to the wrong done,

rather than his wealth. *See Mathias*, 347 F.3d at 677–78. In the relevant sense, Knasiak's

resources increase the need for deterrence because his former employer has covered the cost of

his defense, though it will not pay his punitive damages. That drives up Sommerfield's costs of

litigating a case like this and makes it harder for him to find a lawyer. *See Mathias*, 347 F.3d at

677. A "slap on the wrist" will not align the incentives of a plaintiff like Sommerfield and the

large institution willing to fund a vigorous defense to maintain a reputation. *Neuros*, 698 F.3d at

520 (observing that 5:1 punitive damages would have had a "negligible" deterrent effect given

the gravity of the harm intended and the effort to eliminate a company's national competitor from the market); *see also Mathias*, 347 F.3d at 677.

* * *

After considering the *Gore* guideposts and Knasiak's resources in the proper light, the court cannot say that the jury's punitive damages award was grossly excessive in light of the legitimate interests of punishment and deterrence it serves. In this regard, the court remains mindful that "[t]he judicial function is to police a range, not a point." *Mathias*, 347 F.3d at 678.[1]

### III. SOMMERFIELD'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT

For the third time since the jury returned its verdict, Sommerfield moves, now post-judgment, for leave to amend his complaint and add an indemnity count against the City. ECF No. 511 at 1. The court denied his first post-trial request to add an indemnity count in March 2016 because the City voluntarily decided to pay him all of the economic damages he then claimed to be owed.[2] Order 4, Mar. 21, 2016, ECF No. 469 at 4. The court also rebuffed Sommerfield's efforts to get economic damages awarded against Knasiak because "allowing a recovery against Knasiak for the exact damages in the exact categories the City has paid Plaintiff would provide him with an impermissible windfall." Order 8, Feb. 21, 2017, ECF No. 496. The court added that "Knasiak could argue that the City paid too much, but he advances no such

---

[1] All this said, this court has become increasingly concerned about whether there is a conflict of interest when individual police officers are represented by attorneys hired by the City. The City is ultimately liable for compensatory damages, but the officer may well be left to pay punitive damages himself. Could an attorney be reluctant to argue vigorously against an award of punitive damages if a result could be an increased jury award of compensatory damages?

[2] As the court explained:

As far as this court can determine, Plaintiff's proposed claim for indemnification against the City is moot. Plaintiff does not dispute that the City has done or has agreed to do the following: (1) resolve the two grievances filed by Plaintiff; (2) remove Plaintiff's suspension from his record; (3) pay Plaintiff D2 level compensation; (4) send Plaintiff to canine handler training; (5) appoint Plaintiff to a canine handler position; (6) pay Plaintiff back pay; and (7) pay Plaintiff the past due monthly canine handler stipend.

ECF No. 469 at 4.

argument." *Id.* at 9.  Sommerfield sprung a surprise motion for leave to amend his complaint on the court shortly after the final hearing before the entry of judgment.  *See* Order 1–2, May 16, 2017, ECF No. 508.  The court denied that motion for failing even to attempt to show that an amendment was proper under the governing Federal Rules of Civil Procedure.  *See id.* at 3 (citing Fed. R. Civ. P.  15(b)).  The order stressed that due to the timeline of events on May 12, 2017, the order did not alter the 28-day deadline to file a Rule 59(e) motion.  *Id.* at 1.

Sommerfield's third effort is now before the court.  He timely filed a four-page motion on June 9, 2017, ECF No. 511, and followed up with a 10-page memorandum a week later, ECF No. 514.  The motion mentions Rule 59(e) in a footnote, ECF No. 511 at 1 n.1,[3] but the memorandum omits that rule.  The City says that the motion is untimely (more about this soon).  In this, Sommerfield presents a veritable parade of procedural vehicles in which to grant him relief— Rule 15(b) dealing with amending pleadings after trial; Rule 15(d) which controls the filing of supplemental pleadings; Rule 54(c) governing the form of judgments; the reconsideration standard; and the constructive amendment doctrine.  *See* Mem. Supp. Mot. to Am. Compl. 4–9, ECF No. 514.  Sommerfield cryptically asserts that "[a]t least to some extent, the city is liable for the 12 May 2017 judgment under Illinois law and the collective bargaining agreement." *Id.* at 8.

Were the court to allow it, Sommerfield's proposed indemnity claim would still go nowhere, except as to his claim for indemnification for pre-judgment interest awarded against Knasiak.  As nearly as the court can tell, Sommerfield thinks he needs the judgment to make collecting any attorney's fees he wins later in this case easier.  Mem. Supp. Mot. to Am. Compl. 6.  He still cites nothing for this proposition, so it is still waived.  *See id.*; Order 10, Feb.

---

[3] In that footnote, Sommerfield argues that the judgment is newly discovered evidence permitting the amendment of the judgment under Rule 59(e).  Accepting this argument would read Rule 59(e) out of the Federal Rules of Civil Procedure because if Sommerfield is right, every judgment would trigger the right to move to alter it automatically.

21, 2017, ECF No. 496 ("Plaintiff cites no authority for the remarkable proposition that the one-recovery rule gives way when recovering otherwise unrecoverable damages might improve Plaintiff's position in postjudgment litigation over fees—fees Plaintiff says will be paid by a nonparty.").  Anyway, the payment of an award of attorney's fees turns out to be discretionary, and this court could be reversed for requiring the City to indemnify any fees awarded.  *See Winston v. O'Brien*, 773 F.3d 809, 814 (7th Cir. 2014) (further opining that the plaintiff, a stranger to the collective bargaining agreement at issue here, would not have standing to enforce it, even assuming it required payment of attorney's fees).  Also, it hardly needs to be said that Illinois law does not allow the City to pay the punitive damages awarded against Knasiak.  *See* 745 Ill. Comp. Stat. 10/2-302 (West 2018).  But on pre-judgment interest, the City suggests no bars to indemnification beyond the possibility that the award of pre-judgment interest might be overturned on appeal and reopening this case would extend an already protracted proceeding.  *See* ECF No. 524 at 9–10.

The City's concerns about protracting this litigation are well founded.  "[W]hen a district court has entered a final judgment of dismissal, the plaintiff cannot amend under Rule 15(a) unless the judgment is modified, either by the district court under Rule 59(e) or 60(b), or on appeal."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015) (citing *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995)) (other citations omitted); *accord Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citing *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)); *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (same citation).  Under this rule, Sommerfield must first satisfy the requirements of Rule 59(e) or 60(b) before the court can consider his request to amend his complaint.

Even considering Sommerfield's memorandum,[4] he has not demonstrated that Rule 59(e) relief is warranted. "[R]elief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case, and 'the mere desire to expand allegations of a dismissed complaint does not, by itself, normally merit lifting the judgment.'" *Childress*, 787 F.3d at 442 (quoting *Foster*, 545 F.3d at 584). The City overstates Sommerfield's delay on the pre-judgment interest issue. The court laid the groundwork for resuscitating Sommerfield's claim for indemnification of pre-judgment interest in its February 21, 2017 order when it reconsidered denying Sommerfield's request for that relief. The court's denial of leave to amend made good sense while that category of damages was off the table in 2016. After pre-judgment interest reentered the picture in February 2017, the parties spent the next two-and-a-half months discussing and litigating exactly how much pre-judgment interest Sommerfield should get. Yet in all that time, Sommerfield never raised the issue of indemnification. He simply offers no explanation, much less a good one, showing extraordinary circumstances for waiting or for failing to advise the court that he intended to move to amend. Given how long in the tooth this case is and how long the City has been out of it, the prejudice to all litigants from reopening the judgment here does not just outweigh, it crushes, any prejudice Sommerfield will experience.[5] *See, e.g.*, *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679–80 (7th Cir. 2005); *Lac Courte Oreilles Band of*

---

[4] The City contends that Sommerfield's memorandum is untimely because it, unlike Sommerfield's separate motion, was filed after the 28-day Rule 59(e) deadline. The Seventh Circuit has repeatedly rejected efforts to end run the Rule 59(e) deadlines, which a district court cannot extend, by filing a placeholder motion and then adding details in a memorandum later. *E.g.*, *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Riley v. Nw. Bell Tel. Co.*, 1 F.3d 725, 726–27 (8th Cir. 1993); *Hope v. United States*, 43 F.3d 1140, 1143–44 (7th Cir. 1994); *Martinez v. Trainor*, 556 F.2d 818, 819–21 (7th Cir. 1977). This court cannot consider the memorandum, and it explained why the one-sentence Rule 59(e) argument in Sommerfield's opening motion is wrong. *Supra* note 3. For these independent reasons, Sommerfield's motion must be denied.
[5] Even were the court to review Sommerfield's request to amend under the liberal standard of Rule 15(a)(2), it would deny the motion for the same reasons under the heading of undue delay. *See, e.g., Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (leave to amend may be denied for "undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile").

*Lake Superior Chippewa Indians of Wis. v. United States*, 367 F.3d 650, 668 (7th Cir. 2004);

*Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991); *Hightower v. Godinez*, 524 F.

App'x 294, 296 (7th Cir. 2013); *Messner v. Calderone*, 407 F. App'x 972, 973–74 (7th Cir.

2011).

## IV. CONCLUSION

For the reasons stated, plaintiff Detlef Sommerfield's post-trial motion for leave to file an

amended complaint, ECF No. 511, is denied.  Defendant Lawrence Knasiak's combined renewed

Rule 50 motion for judgment as a matter of law, Rule 59(a) motion for a new trial, and Rule

59(e) motion to alter or amend judgment, ECF No. 509, is also denied.

ORDER ENTERED:


_____/s/_____
Joan B. Gottschall
United States District Judge

Dated:  March 31, 2018