IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Detlef Sommerfield, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08-cv-3025 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| Lawrence Knasiak, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2014, plaintiff and former Chicago police officer Detlef Sommerfield ("Sommerfield")

obtained a $540,000 jury verdict for punitive damages on his employment discrimination claims

against former Chicago police sergeant Lawrence Knasiak ("defendant" or "Knasiak").  After

years of litigation over indemnification and interest, this court entered judgment in the amount of

$548,703.96 on May 12, 2017.  ECF No. 507.  Sommerfield appealed, and the Seventh Circuit

affirmed.  *Sommerfield v. Knasiak*, 967 F.3d 617 (7th Cir. 2020).

The court has before it Sommerfield's petition (styled as a motion) under 42 U.S.C.

§ 1988 for over $2 million in attorney's fees and costs incurred by Sommerfield's lawyer,

Joseph A. Longo ("Longo").  *See* Fee Pet. 37–38, ECF No. 633.  Sommerfield seeks a lodestar

fee award (see below) of a $550 hourly rate multiplied by 4,103.32 hours (2,889.72 hours spent

on *Sommerfield II* plus 1,213.6 hours spent on *Sommerfield I*), plus nontaxable expenses.  *See*

*id*.; LR 54.3(e) Jt. Stmt. at 2, ECF No. 572; ECF No. 580 (plaintiff's memorandum in support of

request for *Sommerfield I* time).  In total, Sommerfield requests $2,256,826 in fees and $4,534.25

in costs.  Sommerfield also requests an upward adjustment of the lodestar figure.  *Id.* at 29–37.

Knasiak responds that Longo's hourly rate should be set at $315 or $360, depending on the date

1

on which the hours were worked; that some of Longo's time should be billed at a paralegal rate of $105 or $125 per hour, depending on the date; that many of Longo's hours are inadequately documented, were not reasonably necessary, or both; and that the court should not adjust the lodestar figure upward but should instead adjust it downward due to Longo's partial or limited success and his prolonging of this case. *See* Def.'s Resp. to Fee Pet. ("Resp.") 5–39, ECF No. 634. Knasiak contends that the court should award approximately $250,000 ($191,982.40 in fees and costs for litigation in the district court, $56,952 for litigating the appeal, and $144 for collection attempts). *Id.* at 38–39. Knasiak further argues that Sommerfield should not be awarded any fees for proving fees. *Id.* at 39.

## I. Standard for Awarding Fees and Costs: The Lodestar Method

The same standard applies when deciding whether, and how much, to award in reasonable attorney's fees to a prevailing party under 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-5(k). *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 n.1 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)). There is no dispute that Sommerfield qualifies as a prevailing party.

Normally the court uses the lodestar method to calculate a reasonable fee, even where the attorney has a contingency fee agreement. *Id.* at 639 (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)). The lodestar method adopted in *Hensley* and subsequent cases proceeds in two steps. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–65 (1986). The court first calculates the lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (citation omitted). The lodestar figure enjoys a strong presumption of reasonableness. *Perdue v. Winn ex rel. Kenny A.*, 559 U.S. 542, 553–54 (2010); *accord Pickett*, 664 F.3d at 639.

2

At the second step of the *Hensley* analysis, the court considers whether to adjust the lodestar based on factors not subsumed in it. *See Perdue*, 559 U.S. at 553; *Hensley*, 461 U.S. at 434. The Seventh Circuit has opined that "[p]erhaps the most important of these factors is the degree of success on the merits, especially 'where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief.' " *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 434); *see also Thorncreek*, 886 F.3d at 638–39.

## II. Background

This case and the 2006 case from which it sprang ("*Sommerfield I*" or "2006 case") have a long and convoluted procedural history that has been chronicled exhaustively in prior opinions and orders. *See, e.g.*, *Sommerfield*, 967 F.3d at 618–21; *Sommerfield I*, 2018 WL 1565601, at *1–3 (N.D. Ill. Mar. 31, 2018). Both *Sommerfield* suits stem from the same underlying facts. Sommerfield, who is German and Jewish, worked for the Chicago Police Department. Two juries have found that he was discriminated against based on his religion and national origin. Knasiak supervised Sommerfield beginning in 2000; his conduct figured prominently in both trials. The claims in both cases were trimmed at summary judgment.

Sommerfield initially named the City of Chicago ("the City") as the sole defendant in the 2006 case. He moved in 2007 for leave to amend his complaint to add Knasiak as a defendant, but the motion was denied by then-Judge Filip in light of the impending close of discovery. *See* Minute Entry, *Sommerfield I*, No. 06 C 3132, ECF No. 66 (N.D. Ill. Aug. 16, 2007). The denial ultimately prompted Sommerfield to file the 2008 case and name Knasiak as a defendant.[1] *See* *Sommerfield I*, slip op. at 3–4 (N.D. Ill. Feb. 26, 2009) (discussing this history in detail), ECF No. 45.

---

[1] Sommerfield also named the City as a defendant in this case, but the court dismissed the claims against the City as duplicative on February 26, 2009. *See* Order, *Sommerfield II*, ECF No. 45.

Sommerfield obtained a $30,000 jury verdict against the City in the 2006 case. He won a $540,000 punitive damages verdict in the instant case in 2014, which verdict was reduced to judgment in 2017 after protracted post-trial proceedings. *See* Jury Verdict Form, *Sommerfield II*, ECF No. 366 (N.D. Ill. July 24, 2014); Judgment, *Sommerfield II*, ECF No. 366 (N.D. Ill. Apr. 12, 2017).

### A. *Sommerfield I Fee Litigation*

In the first of the two fee petitions filed in *Sommerfield I*, Sommerfield sought $1.5 million in fees incurred obtaining the $30,000 verdict against the City. Specifically, plaintiff sought fees for 3,742 hours of attorney time at a rate of $395.00 per hour for Longo, plaintiff's lead counsel in both cases.

In an extensive report and recommendation adopted by the district court and affirmed by the Seventh Circuit, Judge Cole concluded that Longo's reasonable hourly rate was $300, not $395. Judge Cole combed through the hours to which the City objected, docket entry by docket entry; deducted 864 hours as unreasonable; and reduced the lodestar figure by 50% to account for the limited success Longo achieved in *Sommerfield I*. *Sommerfield v. City of Chicago*, 2012 WL 5354987, at *9–14 (N.D. Ill. Oct. 29, 2012), *report and recommendation adopted*, 2013 WL 139502, at 1 (N.D. Ill. Jan. 10, 2013), *aff'd*, 863 F.3d 645 (7th Cir. 2017). In reaching his decision, Judge Cole stressed, *inter alia*, the modest recovery achieved ($30,000) compared to the fees counsel sought (about $1.5 million). *Id.* at *15–17. He found the requested amount of fees to be unreasonable in light of a number of factors, including "the pervasive, needless proliferation of legal fees through the pattern of unreasonable and unnecessary expenditures of time . . ., the uncomplicated nature of the case, the time and labor that reasonably should have been expended had Longo not needlessly dilated the proceedings, the absence of any novel or difficult questions, the absence of any evidence that Longo's acceptance of this case precluded

4

employment . . . ." *Id.* at *17. Judge Cole specifically concluded that a "fee not to exceed $430,000 more than adequately compensates Mr. Longo for the time that reasonably should have been expended in this uncomplicated case in which he had rather limited success." *Id.* at *18. The Seventh Circuit affirmed, stating that the "reduction for limited success strikes us as entirely appropriate." 863 F.3d at 651; *see also id.* at 650 ("Magistrate Judge Cole scrupulously followed the proper procedure for determining attorney's fees.").

After Sommerfield lost his appeal of the *Sommerfield I* fee award, he filed a second petition for fees and costs expended litigating his first fee petition ("fees on fees"). Pl.'s Pet. For Supplemental Att'y Fees, *Sommerfield I*, No. 06 C 3132, ECF No. 746 (N.D. Ill. Apr. 26, 2013). Judge Leinenweber denied the request for fees on fees in its entirety because Mr. "Longo claimed an exorbitant amount of fees in the first fee petition, spent an unnecessary amount of time presenting the petition, and achieved little to no success for his efforts." 2017 WL 3675722, at *4 (Aug. 25, 2017). Judge Leinenweber also denied Sommerfield's request for costs because he was not the prevailing party on his first fee petition. *Id.* at *7 (noting that Sommerfield obtained just 30% of the fees he sought for litigating *Sommerfield I* on the merits).

### B. The Pending Fee Petition

Local Rule ("LR") 54.3 of this court establishes a procedure for exchanging materials and, ideally, narrowing disputes over attorney's fees and costs. The process largely failed in this case.

While Knasiak's appeal remained pending, the parties filed a status report and LR 54.3(e) joint statement in this court showing that they were far apart on many issues. *See* Status Report, *Sommerfield II*, ECF No. 572 (N.D. Ill. Jan. 23, 2019). This court referred the case to Judge Kim to attempt mediation, but to no avail. Minute Entry, *Sommerfield II*, ECF No. 573 (N.D. Ill. Jan. 24, 2019). Judge Kim held preliminary settlement discussions by phone and terminated the

referral approximately two weeks later, explaining that "because Plaintiff believes that he is entitled to $667,480 (1,213.6 hours at $550 per hour) of fees for the hours his counsel spent in the 2006 case . . . plus reasonable fees for prosecuting this 2008 case, any effort to resolve this matter would not be productive." Minute Entry, *Sommerfield II*, ECF No. 577 (N.D. Ill. Feb. 13, 2019). This court authorized the parties to brief the two threshold questions that appeared to be impeding efforts to settle: (1) whether "any of the fees and costs sought in the 2006 case are recoverable in this case, despite the final judgment and the Seventh Circuit's affirmance in the 2006 case" and (2) the basis for the request "for a $550 hourly rate here [for Longo], particularly in light of the fact that he is seeking compensation for hours he expended in the 2006 case." Order 2, *Sommerfield II*, ECF No. 579 (N.D. Ill. Feb. 14, 2019).

Following briefing, the court ruled on both questions on April 18, 2019. ECF No. 584. First, this court ruled that the $300 *Sommerfield I* hourly rate, "adjusted strictly for inflation," was Longo's reasonable hourly rate for work performed before October 29, 2012. Order 11, ECF No. 584 (Apr. 18, 2019). The court did not determine how to adjust this hourly rate for inflation, however, because the parties had not briefed the question. *Id.* at 12. The court also did not rule on Longo's hourly rate on or after October 29, 2012. *Id.*

Second, the court ruled that Sommerfield could not recover hours rejected by the courts in *Sommerfield I* because "the discovery-related hours claimed in the 2006 case were allowed or disallowed for reasons unrelated to Sommerfield's success on the merits." *Id.* at 8. "Arguments about the results achieved in this case," the court added, "remain available to Sommerfield if he wishes to request an adjustment to the lodestar figure at step two." *Id.*

Following this court's rulings, Sommerfield filed his first petition for attorneys' fees. ECF No. 596 (July 8, 2019). Following several extensions, briefing was completed in

January 2020.  The Seventh Circuit issued its opinion affirming the judgment on the merits while the first petition was pending, ECF No. 628, and Sommerfield promptly filed a motion seeking guidance on how to proceed with his request for fees for the appeal, ECF No. 631.  Sommerfield suggested a further round of LR 54.3 conferencing in an effort to narrow disputed issues on fees for the appeal.  ECF No. 631 at 3.  This court ordered the parties to submit a single round of briefing encompassing all requested fees through the appeal stage.  *See* ECF No. 632.  By that time, it had "become clear . . . that [the] lawyers' ability to resolve their dispute informally [had] been compromised to the point that engaging in the Local Rule 54.3 conference process for the outstanding issues would likely prolong these proceedings further without substantially narrowing the issues."  *Id.*  Indeed, based on the court's experience, "submitting a round of supplemental briefing [would have been] likely to confuse rather than clarify the substantive issues and possibly lead to additional procedural disputes.  Accordingly, all of the parties' disputes over fees and costs must be presented in a single round of briefing."  *Id.*  Plaintiff then filed the pending fee petition.  ECF No. 633.

### III.  Reasonable Hourly Rate

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citing *Pickett*, 664 F.3d at 640).  As the fee applicant, Sommerfield bears the burden to establish the market rate for his attorney's work.  *Id.* (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)).  If a fee applicant carries the burden to submit sufficient evidence of the market rate, the burden shifts to the responding party to show that a lower rate is reasonable.  *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (citing *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999)).

7

### A. *Interest on $300 Hourly Rate*

The first issue is how to adjust Longo's $300 hourly rate for compensable hours before October 29, 2012. *See* Order 11, ECF No. 584 (Apr. 18, 2019) (adopting this rate "adjusted strictly for inflation"). To compensate attorneys for the delay in payment, a court may elect to use the attorney's current market rate or award interest on the attorney's market rate at the time the work was performed. *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)).

The parties' briefing on how to select the correct interest rate is unhelpful. Sommerfield punts the question to the court. He contends that courts have considerable discretion when adjusting fee awards to account for the passage of time since the hours were worked, but he does not propose a specific figure or methodology. *See* Fee Pet. 11–12. "After Her Honor chooses the options and decides how she wishes, wants or desires to proceed, then, seemingly, a CPA may have to be retained to make the calculations." *Id.* at 12. Knasiak proposes a five percent increase to the $300 hourly rate for time expended before October 29, 2012. Resp. to Fee Pet. 12. Knasiak does not explain how he arrived at the five percent figure, however. *See id.*

Adding interest to a lawyer's past hourly rate compensates for the loss of the time value of money. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 571. In the absence of any meaningful argument from either party for adopting a particular method of computing interest, this court is inclined to adopt the method used in the only case on point from this district the parties cite. *See* Fee Pet. 12 n.10. As in *Duran v. Town of Cicero*, 2012 WL 1279903, at *16 (N.D. Ill. Apr. 16, 2012), this court would prefer to increase the $300 rate for all compensable hours before October 29, 2012, by the annual average prime rate, with interest compounded annually, from October 29, 2012. *See id.* (citing *In re Cont'l Illinois Secs. Litig.*, 962 F.2d at 571, and *Dupuy v. McEwen*, 648 F.Supp.2d 1007, 1018–19 (N.D. Ill. 2009)). However, the complex calculations

8

required to apply this method here would likely prolong an already unacceptably long fee

petition process with further wrangling over accounting and, as alluded to in the briefing, the

hiring of experts. The court therefore adopts Knasiak's proposal and sets a historic rate of $315

for hours Longo worked before October 29, 2012.

### B. Longo's Local Market Rate

The court next determines Longo's reasonable hourly rate for hours worked after

October 29, 2012, that is, hours worked after the fee period in the 2006 case. Sommerfield

claims that Longo's hourly market rate in 2019 should be set at $550 per hour. The reasonable

hourly rate, continues Sommerfield, must be set high enough to incentivize attorneys to take civil

rights and employment cases such as this one. *See* ECF No. 633 at 9–13. As he does throughout

his briefing, Longo stresses the risk he was taking by bringing this case, the difficulty of the

litigation, and the long delay between filing and a fee award. *See id.*

The Supreme Court has held that "a 'reasonable' fee is a fee that is sufficient to induce a

capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*,

559 U.S. at 552 (citing *Del. Valley, supra*, 478 U.S. at 565). Insofar as Sommerfield argues that

this court should veer from the lodestar method, the Supreme Court has been equally clear that

"the lodestar method yields a fee that is presumptively sufficient to achieve this objective," that

is, provide an adequate incentive to undertake the representation of a meritorious civil rights suit.

*Id.* (citations omitted). Under the lodestar method, a case's "novelty and complexity . . .

presumably are reflected in the number of billable hours recorded by counsel," and

"considerations concerning the quality of a prevailing party's counsel's representation normally

are reflected in the reasonable hourly rate." *Id.* at 553 (internal quotations and citations omitted).

Again, the reasonable hourly rate must be "derived from the market rate for the services

rendered" by the prevailing attorney. *Pickett*, 664 F.3d at 640 (citing *Denius v. Dunlap*, 330

F.3d 919, 930 (7th Cir. 2003)).  The court therefore examines the evidence the parties have

submitted to determine Longo's reasonable hourly rate in the market at the first step of the

lodestar analysis.  *See id.* at 646–47 (reversing decision to rely on impermissible non-market

factors at the first lodestar step).

To demonstrate that the market rate for the services Longo provided in this case was $550

per hour, Sommerfield submits two declarations signed by Longo on July 31, 2018, and July 2,

2019; the declarations of six other attorneys practicing in the Chicago area; a collection of

articles reporting on the jury verdicts Longo has obtained (but not his hourly rate); and two

orders issued by the Cook County Circuit Court awarding Longo attorney's fees in 2009 and

2010.[2]  *See* ECF Nos. 633-1 through 633-8, 633-18 at PageID Nos. 11393–11395.  For his part,

Knasiak relies primarily on a 2018 decision by Judge Dow finding that Longo's market rate

in 2012–17 for a workplace religious discrimination case was $360.  *Smith v. Rosebud Farm,*

*Inc.*, 2018 WL 4030591, at *4 (N.D. Ill. Aug. 23, 2018) (finding 20% increase over the 2012

*Sommerfield I* award was sufficient and describing the 83% increase in hourly rate sought by

Longo as "excessive").  In January 2019, about five months after *Smith*, Judge Durkin also

determined that Longo's reasonable hourly rate was $360 in an employment discrimination and

civil rights suit.[3]  *Nichols v. Ill. Dep't of Transp.*, 2019 WL 157915, at *3–6 (N.D. Ill. Jan. 10,

2019), *aff'd*, 4 F.4th 437 (7th Cir. 2021).

---

2   With his original fee petition, Longo submitted a copy of what is commonly called the Laffey Matrix,
    which is a table of rates for attorneys in the Washington, D.C., area.  ECF No. 580-1.  The Laffey
    Matrix is not among the exhibits to Longo's renewed fee petition, however, and so it is not before the
    court.  Nonetheless, the court finds the Laffey Matrix unpersuasive as to Longo's hourly rate for the
    reasons explained in *Nichols* and *Smith*.  *See also Pickett*, 664 F.3d at 649–50.

3   An appeal stemming from a post-fee-award dispute between Longo and his client in *Nichols* has been
    briefed, but not argued, in the Seventh Circuit.  *See Nichols v. Longo*, No. 21-1982 (7th Cir. Nov. 15,
    2021).

Much of the evidence on which Longo relies is nearly identical to the evidence supporting the fee petitions in *Smith* and *Nichols*. However, Longo's declaration contains averments not present in his declarations submitted in *Smith* and *Nichols*, or in *Sommerfield I*. Longo avers, "Many years ago and for many years previous to those years, I had hourly clients. I charged $395/hour and clients paid that rate." Longo Decl. ¶ 2, July 2, 2019, ECF No. 633-18 at PageID No. 11393. Since the inception of this litigation in 2006, Longo's practice has focused on employment discrimination and retaliation cases taken on a contingency basis. *See id*. ¶ 3. However, "At least since 2019, my hourly rate has been $550/hour. I have charged this and clients have paid it." *Id.* ¶ 5. Longo adds that he has sometimes charged a discounted hourly rate to clients who could not afford a higher rate for a consultation on an employment discrimination claim. *Id.* ¶¶ 4-5.

The court must "presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett*, 664 F.3d at 640 (citing *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). However, the attorney's affidavit must provide enough specificity to allow the court to conclude that the work for which the attorney received a claimed hourly rate was in fact comparable to the instant litigation. *See Denius*, 330 F.3d at 930–31. By way of illustration, in *Denius* an attorney submitted an affidavit averring that his hourly rate in 2001 was $200. *Id.* at 930. The district court found the attorney's affidavit insufficient because nothing in the record showed that clients paid the lawyer $200 per hour "in other civil rights litigation." *Id.* The Seventh Circuit affirmed the district court's decision setting a lower rate. *See id.* Like the lawyer in *Denius*, Longo avers that he received a $550 hourly rate in 2019, but he does not specify, and nothing in the record shows, whether he received $550 for providing

11

those services in comparable employment or civil rights litigation. *See* ECF No. 633-18

at PageID No. 11393.[4]

     Since Longo's affidavit does not show what clients actually paid him for comparable

work, the court looks to the "next best evidence" of Longo's market rate, namely "evidence of

rates similarly experienced attorneys in the community charge paying clients for similar work

and evidence of fee awards the attorney has received in similar cases." *Pickett*, 664 F.3d at 640

(quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999)) (other citation

omitted). The $360 hourly rate set in *Smith* and *Nichols* constitutes the most recent fee awards

for Longo's work in similar litigation.

     Sommerfield submits two state court orders that do not appear to have been before the

*Nichols* or *Smith* courts. *See* ECF No. 633-18 at PageID Nos. 11394–95. Dated in 2009

and 2010, the orders were issued in two cases in the Circuit Court of Cook County, Illinois.

They award Longo attorney's fees at hourly rates of $375 and $395 respectively. *Id.*

Sommerfield has provided no other information about these cases. This court cannot determine

from the one-page excerpts in the record whether these cases involved civil rights and

employment issues comparable to this litigation. Nor can the court determine whether either fee

award resulted from a lodestar analysis or settlement. Without this information, the state court

orders are unhelpful because the court cannot determine whether they provide a proper basis of

comparison for computing a reasonable hourly rate here. *See Iroanyah v. Bank of Am.*, 753 F.3d

---

4   Although Longo's declaration dated January 13, 2021, is not properly before the court because added
only in reply, *see infra* at 45–46, it does not fill the gap. Longo avers that he has been paid $550 per
hour for work that "entailed discrimination/harassment/retaliation issues," but he does not specify
whether clients paid him $550/hour for litigation or for the consultation described in his 2019
declaration. Pl.'s Ex. 24 ¶ 4, ECF No. 635-9

686, 694 (7th Cir. 2014); *Cavada v. City of Chi.*, 2014 WL 4124273, at *3 (N.D. Ill. Aug. 18, 2014); *Bordeau v. N. Serv. Bureau, Inc*, 2020 WL 6261691, at *3 (W.D. Wis. Oct. 23, 2020).

The readily available public information on the Cook County Circuit Court cases Longo cites suggests strongly that they are not comparable. According to their docket sheets, both cases involved claims of fraud.[5] One of the cases was appealed. The Illinois appellate court's opinion confirms that the plaintiff brought consumer fraud claims against a car dealer stemming from the purchase of a truck. *Shehu v. Popescu*, No. 1-1-0723, 2012 WL 6962053, at *1 (Ill. App. Ct. May 1, 2012). The other case was filed in the municipal division of the Cook County Circuit Court, and, per the docket sheet, the plaintiff demanded $7,000 in damages. As plaintiff has introduced no evidence demonstrating that either state court case is comparable to this litigation or that the markets for consumer fraud suits and employment discrimination suits are comparable, this court finds neither order to be probative of Longo's reasonable market rate in this civil rights and employment discrimination suit. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014).

The $360 rate set in *Nichols* and *Smith* therefore provides the most probative evidence of Longo's hourly rate. With the exception of the evidence discussed thus far, both decisions were based on an evidentiary record very similar to the record here. Specifically, Sommerfield submits the declarations of six attorneys–David L. Lee (July 12, 2018); John T. Moran (undated); Aaron B. Maduff (July 25, 2018); Scott A. Mayer (Aug. 1, 2018); Robin Potter (Aug. 2, 2018); and Marc J. Siegel (Aug. 1, 2018). ECF Nos. 633-1, 633-2, 633-4 through 633-7. Judges Durkin and Dow had materially identical declarations from Lee, Potter, and Maduff

---

5   *See* Docket sheets, Nos. 2009-L-000444 and 2008-M3-003871, accessed at https://www.cookcountyclerkofcourt.org/CourtCaseSearch/DocketSearch.aspx (visited Nov. 24, 2021).

before them.  *See* Declarations, *Nichols v. Ill. Dep't of Transp.*, No. 12-cv-1789 (N.D. Ill.

Aug. 11, 2017), ECF Nos. 290-2, 290-3, 290-4; Declarations, *Smith v. Rosebud Farm, Inc.*,

No. 11-cv-9147 (N.D. Ill. Nov. 16, 2017), ECF Nos. 411-2, 411-3, 411-4.  And the record in

*Nichols* included a materially identical Moran declaration.  *See* Declaration, *Nichols v. Ill. Dep't*

*of Transp.*, No. 12-cv-1789 (N.D. Ill. Aug. 11, 2017), ECF No. 290-6.  Mayer and Siegel's

declarations are unique to this case, but they have essentially the same deficiencies (vagueness)

as the other attorney declarations.  Judges Dow and Durkin both explained clearly why the

attorney declarations are unpersuasive and unhelpful in determining Longo's hourly rate.  *See*

*Nichols*, 2019 WL 157915, at \*3–4; *Smith*, 2018 WL 4030591, at \*3.  This court adopts their

reasoning because it applies with equal force to the evidence Longo has submitted in support of

his fee petition in this case.  *See Nichols*, 4 F.4th at 442 (affirming these rulings).  After weighing

the evidence, this court finds the 2018 and 2019 rates for Longo awarded in *Smith* and *Nichols* to

be the most persuasive evidence of Longo's reasonable hourly rate, particularly because they

overlap with the 2012–19 time period for which Longo seeks fees here.  *See Pickett*, 664 F.3d

at 646–47; *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir.

2009); *Nichols*, 2019 WL 157915, at \*5.  For all of these reasons, the court determines that

Longo's reasonable hourly rate is $360 for hours in this case after October 29, 2012.

### C.  *Paralegal Hourly Rate*

As discussed below, Knasiak objects that Longo billed an attorney's hourly rate for tasks

that should have been delegated to a paralegal.  *See infra* Part IV(E).  Because the court sustains

some of these objections, the reasonable hourly rate for paralegal tasks performed by Longo

must be determined.  Knasiak contends that the reasonable hourly rate for a paralegal should be

set at $105 for hours until October 29, 2012, and $125 for hours after that date.  Resp. 20.  Citing

no legal authority, Sommerfield counters that he should get his full attorney's rate because

14

Knasiak has submitted no affidavits or other evidence of a reasonable paralegal rate. Reply 25. Sommerfield submits no evidence of a reasonable paralegal rate, however. *See id.*

Billing rates should be set based on evidence where possible. *Cf., People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313–14 (7th Cir. 1996) ("Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.' " (citation omitted)); *see also, e.g.*, *Ryan M. v. Bd. of Educ. of City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 788 (N.D. Ill. 2010) (basing paralegal rate on affidavits submitted by the parties). The court will not set a lower rate for paralegal hours before October 29, 2012, because Knasiak does not base his request for a $105/hour paralegal rate for that period on any evidence or case. *See* Resp. 20. No paralegal rate was set in *Sommerfield I*, so the case sheds no light on a reasonable rate for paralegal-level work performed by Longo before October 29, 2021. *See Sommerfield I*, 2012 WL 5354987.

The City's billing records show the paralegal rate actually paid by a client. The City paid an hourly rate of $85 for paralegal services in 2009. Pl.'s Ex. 11 at PageID No. 11250, ECF No. 633-16. Knasiak advocates for a higher paralegal rate during this period, forcing the court to conclude that he does not think the $85/hour rate the City paid is reasonable for Longo. The billing rate the City paid for paralegal services increased during this case's long pendency. By 2014, the City paid $125/hour for paralegal services. Pl.'s Ex. 11 at PageID No. 11309, ECF No. 633-17; *see also id.* at PageID No. 11365 ($125 in 2017). In line with the rate the City paid, Judges Durkin and Dow concluded that $125/hour was a reasonable paralegal rate by combing through the cases cited by the parties. *See Nichols*, 2019 WL 157915, at *7; *Smith*, 2018 WL

15

4030591, at *8. In the absence of any better evidence and because the analysis in *Smith* and

*Nichols* is cogent, this court sets a reasonable hourly rate for paralegal services at $125.

### IV. Number of Hours Reasonably Expended on the Litigation

Despite the court's plea for a concise presentation in a single round of briefing (*see* ECF

No. 632), the parties have made a muddle of the record of Longo's time entries and defendants'

objections. Sommerfield submits Longo's billing records in six documents that together set out

over 5,000 discrete time entries. Pl.'s Ex. 9, ECF Nos. 633-9 through 633-14. They are

nevertheless incomplete insofar as they do not include Longo's supplemental time entries for

"2017–10/31/20." [6] *Compare id.*, *with* Fee Pet. 37–38, ECF No. 633. Knasiak objects to 52% of

Longo's requested hours. Pl.'s Ex. 12, ECF No. 633-18 at PageID No. 11403. Knasiak has

spread his objections across eleven exhibits, many of which overlap. *See* Def.'s Exs. 5–15, ECF

Nos. 634-5 through 634-15. Depending on how one counts,[7] Knasiak groups his objections to

Longo's time records into nine or ten categories. For time entries for May 21, 2008–June 6,

2018, Knasiak submits a "master list" of objections as exhibit 6 to his response. ECF No. 634-6.

The next eight exhibits are purportedly drawn from the master list. Each supposedly represents a

subset of the master list's time entries subject to a specific objection. *See* Def.'s Exs. 7–14.

---

6  In his fee petition, Sommerfield states that Longo billed 522.4 hours during this period. ECF No. 633 at 38. The court does not have the original billing records for this time period. Accordingly, it has been forced to use Knasiak's summary of these records and his objections. Def.'s Ex. 15, ECF No. 634-15. The total number of hours claimed in Knasiak's exhibit exceeds the number in Sommerfield's fee petition: 574.8. The court cannot account for the discrepancy between Sommerfield's fee petition and Knasiak's exhibit 15. Defendant's exhibit 15 and its hours total have been used because they represent the only evidence of the time Sommerfield seeks for this period. The bottom line figure in Sommerfield's fee petition (4,103.32 hours) is therefore 52.4 hours less than the total hours requested as this court has calculated them (4,155.7 hours) (3,709.6 lodestar hours plus 446.1 hours for fees on fees).

7  One of the columns in defendant's exhibit 6 is entitled "Support Staff/Paralegal Rate." This column arguably groups two distinct objections together.

If the court were to rule serially on the objections in defendant's exhibits 7–14, hundreds of hours would potentially be deducted more than once. Double discounting hours is reversible error. *Baker v. Lindgren*, 856 F.3d 498, 506–07 (7th Cir. 2017); *Spellan v. Bd. of Educ. For Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995). The court therefore has three options: (1) estimate an across-the-board reduction by ruling on a representative sample of Knasiak's objections; (2) cross-check every line of Longo's billing records against Knasiak's eleven exhibits of objections; or (3) rule based primarily on defendant's "master list" of objections (Def.'s Ex. 6), despite the master list's flaws (discussed below).

Combing through and correlating all the objections and time entries would be highly labor-intensive and error-prone. A cursory comparison of Knasiak's master list of objections (Ex. 6) and his exhibits illustrates the difficulties that would be involved. Again, the master list has seven columns, one for each category of Knasiak's objections. *See* ECF No. 634-6 at PageID No. 12119. Knasiak objects to many time entries on multiple grounds. Each of the following eight exhibits (7–14) purports to show just the time entries objected to under one of the corresponding columns of the master list. Exhibit 7, for example, purports to show all of the time entries in exhibit 6 to which Knasiak objects as "Excessive/Improper/Unnecessary Motions." *See* ECF No. 634-7. However, spot-checking reveals that some of the time entries are missing from the "master list" in exhibit 6. For instance, exhibit 7 lists objections to eight time entries, totaling 1.7 hours, recorded on October 20, 2008, but exhibit 6 lists only five time entries, totaling 0.5 hours, for that date. *Compare* ECF No. 634-7 at PageID No. 12398, *with* ECF No. 634-6 at PageID No. 12125. In exhibit 10, defendant objects to a May 21, 2008, time entry in the amount of 2.9 hours for "Draft complaint; research whether similar allegations can be made in a new lawsuit against City of Chicago though such allegations might exist in the

17

other lawsuit that we have;" this time entry does not appear in exhibit 6. *Compare* ECF No. 634-10 at PageID No. 12555, *with* ECF No. 634-6 at PageID No. 12119. Exhibits 6–14 span 574 pages of overlapping time entries. The task of sifting through exhibits 7–14 line by line in search of objections absent from the master list would be herculean, mind-numbing, and error-prone in the extreme. A "district court is 'not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness.' " *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 954 (7th Cir. 2020) (quoting *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010)).

The second option–an across the board percentage reduction to account for objections– seems highly appealing at first. "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) (citations omitted); *see also Royce*, 950 F.3d at 955. However, the court cannot "eyeball" the fee petition or base an across the board reduction on an arbitrary, subjective overall impression of the reasonableness of the requested fees. *See Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997); *Spellan v. Bd. of Educ. For Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995); *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439–40 (7th Cir. 1992).

Unfortunately, estimating what percentage of Longo's hours should be deducted based on Knasiak's objections is nearly impossible on this record without adjudicating all of the objections. The court experimented with random sampling, but the experiment failed. The unusual number and variety of overlapping objections undermined the court's confidence that the sampling produced representative results. The court has reluctantly concluded that sifting

18

through the time records and objections, though voluminous, avoids the risk of arbitrary hours reductions.  *See Smith*, 969 F.2d at 440 (reversing arbitrary hours reductions).

Ruling on the objections in Knasiak's "master list" (Def.'s Ex. 6, ECF No. 634-6) is therefore the most workable of a set of extremely problematic alternatives.  Using the master list avoids double deducting hours and permits relatively efficient rulings on the majority of Knasiak's objections.  The master list is far from perfect, however.  For one thing, the count of the total number of hours Sommerfield claims included on the master list, with and without objection, is approximately 125 hours less than the figure in the parties' joint LR 54.3 statement. *Compare* LR 54.3(e) Jt. Stmt. at 2, ECF No. 572 (2,249.5 hours claimed for this time period); *with* ECF No. 634-6 at PageID No. 12393 (2,125 hours).  The discrepancy has not been explained, and the court is at a loss to account for it without comparing each line of Longo's billing records to each line of the master list—something the court has neither the time nor the inclination to do.

The master list also does not reflect some of Longo's time spent on the appeal and on litigating fees.  Knasiak's exhibit 15 (ECF No. 634-15) lists Longo's entries for time spent litigating the appeal, fees, and efforts to collect the judgment (until October 31, 2020), and contains another set of partially overlapping categories of objections.  Knasiak makes clear in his response brief that many of his objections, such as those to billing for travel time and administrative tasks, apply to all of Longo's billing records, including his work on appeal.  A court faced with a fee petition has an "independent obligation to scrutinize the legitimacy of such a submission." *Jaffee v. Redmond*, 142 F.3d 409, 416 n.2 (7th Cir. 1998) (citing *Spellan*, 59 F.3d at 646 (7th Cir. 1995)).  Consistent with this duty, this court has made every effort to apply its rulings consistently to all of Longo's billing records, including to the objected-to hours in

19

Knasiak's exhibit 15. In the absence of specific objections from Knasiak, however, the court has sometimes erred on the side of compensating Sommerfield for doubtful time entries in exhibit 15.

The courts' line-by-line rulings can be found in the appendices. The following discussion illustrates the court's reasoning and basis for the deductions from the hours claimed by Sommerfield.

### A. Waiver Objections Based on the LR 54.3 Process

Each side advances a series of waiver arguments stemming from the timing and contents of time entries and objections exchanged during the LR 54.3 process. Knasiak argues repeatedly that any hours Longo did not include in his initial time entries, including hours spent successfully defending the subsequently filed appeal and certain time entries that were initially blank, should not be included in the lodestar. *See, e.g.*, Resp. 26–28. Meanwhile, Sommerfield complains that Knasiak introduced certain objections, such as his objection to hours Longo billed for travelling to and from the federal courthouse in Chicago, for the first time after the LR 54.3 process fell apart. *See* Fee. Pet. 22.

The parties' broad waiver arguments conflict with LR 54.3's plain text: "By providing the opposing party with information under this rule about the party's hours, billing rates and related nontaxable expenses, no party shall be deemed to make any admission or waive any argument about the relevance or effect of such information in determining an appropriate award." LR 54.3(d). If the parties believed they were not getting necessary information during the LR 54.3 process, they could have (but did not) filed a motion under LR 54.3(g) seeking guidance from the court. *See* LR 54.3(g) (setting forth requirements for a motion for guidance). "[A] party that does not believe it is getting the required information should not simply lie in the weeds and spring the matter once a motion is filed, but should seek direction from the Court in

order to facilitate the purposes of Local Rule 54.3(d)." *Jones v. Ameriquest Mortg. Co.*, 2008 WL 4686152, at *5 (N.D. Ill. May 19, 2008); *see also Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 918 (7th Cir. 2010). It is therefore too late for the parties to complain about the process, the letter and spirit of which none of the attorneys observed.

Based on the attorney's correspondence in the record, both sides share responsibility for prolonging and delaying the LR 54.3 process. *See* Pl.'s Ex. 12 at PageID Nos. 11371–92, ECF No. 633-18; Pl.'s Ex. 23, ECF No. 633-21; Def.'s Ex. 4, ECF No. 634-4; Def.'s Ex. 16, ECF No. 634-16. Longo provided an initial round of vague and non-specific billing records. *See* ECF No. 563 at 6–9. Court intervention was necessary to prod him to clarify. *See* 2018 WL 11344761, at *2 (July 11, 2018) (requiring Longo to be more specific about which hours were attributable to the 2006 case in his initial round of LR 54.3 papers). Knasiak countered with vague and sometimes unhelpful objections and general argument. *See, e.g.*, Def.'s Ex. 4 at PageID No. 11579.

Despite the numerous delays and sometimes acrimonious correspondence, the lawyers eventually moved the LR 54.3 process to a conclusion. In particular, Knasiak's lawyer provided Sommerfield with a spreadsheet detailing his objections to certain time records (*see* Def.'s Ex. 4 at PageID Nos. 11581 (email sent Sept. 24, 2018)), and the parties ultimately filed the first fee petition, which had to be refiled in any event. Knasiak does not appear to have been hindered in any way from presenting his objections to this court. Neither has Sommerfield. Sommerfield has made his position on time billed for commuting clear in his briefing, and he identifies no prejudice resulting from the specificity of Knasiak's line-by-line objections. Short, understandable objections can sometimes be more helpful than lengthy memoranda. *See, e.g.*, *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014) (affirming fee award; "The City's line-by-

line objections were admittedly brief, but they were specific enough to allow a response, and the format was considerably more practical and economical than a long memorandum detailing each objection."). Although they were doubtless frustrating to the lawyers, the delays in disclosing time entries and objections about which the parties complain did not prejudice their ability to make their arguments to this court. *See Johnson v. G.D.F., Inc.*, 2014 WL 463676, at *13 (N.D. Ill. Feb. 5, 2014) (rejecting similar waiver argument); *Jones*, 2008 WL 4686152, at *6–7 (same).

Since neither party has been prejudiced and the lawyers on both sides bear responsibility for the excruciating LR 54.3 process, it would be unfair in the extreme to punish just one side by applying waiver or forfeiture principles. *See Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 569 (7th Cir. 2006) (stating that LR 54.3's "purpose is to avoid exactly the type of hypocritical [block billing] objections presented by the defendants"); *Sommerfield II*, 2018 WL 11344761, at *1 n.2 (citing *Johnson,* 2014 WL 463676, at *13). Limiting Sommerfield to the time entries Longo initially disclosed would also be unfair and one-sided. Knasiak complains about Longo supplementing his time records, but Knasiak specifically reserved the right to amend his objections during the LR 54.3 process. *See* Letter from Knasiak's counsel dated Oct. 28, 2020, ECF No. 634-16.

Two more points about the time entries Longo initially disclosed deserve mention. First, Longo could not have disclosed some of the objected-to hours initially because the appeal and fee litigation were ongoing. Compensation for an attorney's reasonably necessary time spent successfully defending an appeal may be recovered as part of the lodestar. *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988) (citing *Bond v. Stanton*, 630 F.2d 1231, 1234–35 (7th Cir. 1980)); *see also, e.g.*, *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). Local Rule 54.3

22

does not require an attorney to look into the future and disclose hours not yet worked. That is why the court allowed the parties to rebrief fees and costs after the Seventh Circuit affirmed the judgment. ECF No. 632.

Second, some of the tasks in the initial time records were blank. *See* Resp. 23 (citing Pl.'s Ex. 9, ECF Nos. 633-9 through 633-14; Def.'s Ex. 6, ECF No. 634-6; Def.'s Ex. 10, ECF No. 634-10). Knasiak objected, and Longo amended many of the blank entries. Knasiak maintains that Longo reconstructed what task he performed years after he performed it. *See id.* (citing ECF No. 572 at 1) (other citation omitted). Longo responds that no reconstruction occurred. He represents that, for unknown reasons, converting his billing records to ".pdf" format resulted in the initially blank task entries. Fee Pet. 28 n.27; Reply 38, Pl.'s Ex. 12 at PageID No. 11388 (Email from Longo to Schumann dated Dec. 4, 2018). The court has no reason to doubt Longo's representations, which are of course subject to the strictures of Rule 11 of the Federal Rules of Civil Procedure. Knasiak asserts that Sommerfield may not supplement an initial disclosure of time records during the LR 54.3 process, but he cites no authority. *See* Resp. 28. Again, LR 54.3(d), quoted above, refutes his position. And even if Longo had reconstructed his time entries, "[T]here is no *per se* rule requiring the submission of contemporaneous time records in the Northern District of Illinois." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000). However, reconstructed time records may be reduced or deducted in the court's discretion. *Id.* (citing *Shakman v. Democratic Org. of Cook Cnty.*, 634 F. Supp. 895, 899 (N.D. Ill. 1986)) (other citation omitted). Knasiak does not argue that the reconstructed records are inaccurate or that he was prejudiced in any way by Longo's

later supplement to the initially blank time entries.  *See* Resp. 28.  The court would not,

therefore, deduct these hours because they were reconstructed.[8]

For these reasons, the court rejects the parties' broad waiver arguments under LR 54.3.

Longo's supplemental time entries, identified by Knasiak as reconstructed, will be considered,

including his time entries for time spent defending the appeal and litigating fees.  Except as

specifically discussed below, Knasiak's objections are waived for lack of specificity.

### B.  Redacted Time Entries

During the LR 54.3 conference process, an initial disclosure of billing records "may be

redacted to prevent disclosure of material protected by the attorney-client privilege or work

product doctrine."  LR 54.3(d)(1).  Local Rule 54.3 plainly does not require production of a

privilege log.  However, "redactions should be limited to the extent necessary to protect the

privilege while, to the extent possible, maintaining the opposing party's ability to determine the

reasonableness of the entry."  *Kurgan v. Chiro One Wellness Ctrs. LLC*, 2015 WL 1850599,

at *7 (N.D. Ill. Apr. 21, 2015); *Cuff v. Trans States Holdings, Inc.*, 2013 WL 140607, at *3

(N.D. Ill. Jan. 11, 2013), *aff'd*, 768 F.3d 605 (7th Cir. 2014).

Knasiak objects that 216.6 hours of partially or fully redacted time entries do not contain

enough information to justify the redaction.  *See* Resp. 25–26.  Longo represents that he

attempted to resolve this dispute during the LR 54.3 conference process.  *See* Reply 30–32.  He

---

8  Nor will the court sustain Knasiak's objections based upon the originally produced time records.
Notably, Knasiak's exhibits listing objections appear to be based on Longo's time records as
originally disclosed.  For instance, in defendant's exhibit 10 Knasiak objects to the following time
entries: 09/04/2013: 0.1 hours for "defendant;" 9/11/2013, 4.3 hours for "reconsideration;" 1/11/2014,
0.7 hours for "defenses" and 1.9 hours for "mentioning his financial status in relation to the
indemnifying statute" (total 2.6 hours); 1/14/2014, 2.4 hours for "exhibits."  The text of these entries
appears to have been truncated in the billing records Longo originally disclosed to Knasiak's lawyer.
The version of Longo's time records docketed as plaintiff's exhibit 9 (ECF Nos. 633-9 to 633-14),
includes the full text of these entries.  *See* ECF No. 633-10 at PageID No. 11039; ECF No. 633-11 at
PageID No. 11043.

24

represents he advised Knasiak's lawyer that the redactions covered privileged communications, that he repeatedly asked Knasiak's lawyer what additional information he needed, and that he received no response. *Id.*

As explained above, both attorneys caused the LR 54.3 process to fail. Excessive redaction during the LR 54.3 process does not necessarily result in disallowance of the redacted time entries, however. *Stragapede v. City of Evanston*, 215 F. Supp. 3d 708, 726 (N.D. Ill. 2016). If the fee applicant files redacted time records with the court, the fee applicant must carry its burden to show that the redacted hours were reasonable and necessary, which may include moving to file unredacted records under seal and, if necessary, for the court's eyes only. *See id.* at 724. This court has reviewed the partially redacted records. However, the court cannot determine whether the approximately 85 hours of fully redacted time entries (*see* Def.'s Ex. 13, ECF No. 634-13) were reasonable and necessary without knowing something about what the records contain. Because Knasiak's counsel shares responsibility for the collapse of the LR 54.3 process, Sommerfield will be ordered to file his unredacted time entries under seal for in camera review, so the court can determine whether they should have been fully redacted and whether the time should be deducted. *See Stragapede*, 215 F. Supp. 3d at 724–27; *Cuff*, 2013 WL 140607, at *1.

### C. Vagueness and Block Billing Objections

Knasiak objects to many of Longo's time entries as vague. Def.'s Ex. 10, ECF No. 634-10. Regarding records supporting an award of costs and fees, "the amount of itemization and detail required is a question for the market." *In re Synthroid Mktg. Litig*, 264 F.3d 712, 722 (7th Cir. 2001). Longo's billing records must contain "the level of detail that paying clients find satisfactory"–no more and no less. *Id.* (citing *Medcom Holding Co. v. Baxter Travenol Lab'ys,*

*Inc.*, 200 F.3d 518 (7th Cir. 1999)); *see also Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000).

Knasiak's block billing objections relate closely to his vagueness objections. Block billing is the practice of lumping several tasks into a single time entry. Block billing frustrates the court's and the opposing party's ability to determine how much time the lawyer spent on reasonably necessary litigation tasks by making it unclear exactly how much time was spent on which tasks. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). Rather than asking whether block billing has occurred, the court inquires whether Longo's time records are "sufficiently detailed to permit adequate review of the time billed to specific tasks" and whether that time was reasonably necessary. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *see also Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012).

Many of the time entries to which Knasiak objects as vague or on block billing grounds provide a level of detail comparable to defense counsel's billing records. *Compare* Def.'s Ex. 10, ECF No. 634-10; *with* Pl.'s Ex. 11, ECF Nos. 633-16, 633-17 (excerpts of defense counsel's billing records). For example, on March 13, 2014, defense counsel billed, and the City paid for, 2.5 hours for "Prepared for pretrial conference." ECF No. 633-17 at PageID No. 11311; *see also id.* at PageID No. 11314 (2.5 hours billed on March 31, 2014, for "Prepared for witness preparation with [witness name]"). Longo's 1.9-hour entry on March 24, 2014, for 4.5 hours for "Review defendant's documents to prepare for trial" need not be more specific. Def.'s Ex. 10, ECF No. 634-10 at PageID No. 12563. The court therefore overrules many of

Knasiak's objections because the market demands no greater detail than Longo provides. *See Farfaras*, 433 F.3d at 569.

Some of Longo's entries mix attorney tasks with clerical or paralegal tasks. Longo's time entries surrounding the trial provide prime examples (July 9–24, 2014). Longo lists everything he did each day in a single entry, making it impossible to separate time spent travelling and working on administrative tasks, such as communicating about scheduling and exhibits, from reasonably necessary work. The following entry for July 13, 2014, is typical:

> several telephonic conversations with Mr. Sommerfield regarding trial; several conversations with Ms. Herman regarding trial strategy; Review, revise motion relating to deceased, Margaret Barron's testimony; Review, revise notice of motion; Correspondence to court's clerk regarding motion relating to Baron; Review arguments relating to defendant's motion concerning Johnson; review, revise and/or prepare for direct examinations of Abuzanant, Pickering, Galassi, Trinidad; review, revise opening statement; review, revise part of closing statement; prepare for various motions; prepare generally for trial; prepare voir dire; Electronically file notice of motion; Received, reviewed electronic mail from court regarding notice of motion; Electronically file motion to reconsider regarding Baron; Received, reviewed electronic mail from court regarding Baron; several correspondences to and from jury consultant; correspondences to and from reader for testimony of Margaret Baron.

Def.'s Ex. 6 at PageID No. 12280, ECF No. 634-6 (11.8 hours billed).

Deducting all of the block billing mixing compensable and non-compensable tasks would be inconsistent with the aims of the fee-shifting statute, which is to compensate for the amount of time reasonably expended on the case. *See Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009), *amended sub nom. Dupuy v. McEwan*, 2009 WL 10740693 (N.D. Ill. Dec. 21, 2009) (citation omitted). The court instead reduces these time entries by one third to account for the uncertainty created by Longo's block billing of compensable and non-compensable tasks. *See Harper*, 223 F.3d at 605 (citing *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657–58 (7th Cir. 1985)) (other citation omitted).

### D. *Excessive and Unnecessary Motions*

Knaisiak objects to 618.3 hours of excessive and unnecessary motions. *See* Def.'s Ex. 7, ECF No. 634-7. Knaisiak cites this court's orders denying certain motions. *See* Resp. 17–18. A motion need not be granted for time spent prosecuting it to be reasonably necessary. As the Seventh Circuit has explained, "some legal research will prove fruitless on an ultimately successful claim, and a prevailing party may in appropriate circumstances recover for time spent going down roads that seemed promising but turn out to be dead ends." *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014) (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)). As a result, a "court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable" when they were taken. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996); *accord Montanez*, 755 F.3d at 555 (affirming disallowance of fees for unnecessary legal research).

The court will not deduct time for partially successful motions, that is, motions that were granted in part and denied in part, because it is nearly impossible to determine from the billing records which hours were spent on the successful and unsuccessful portions of partially granted motions. *See Smith*, 2018 WL 4030591, at *6–7. The court deducts 220.8 hours Longo spent on unnecessary and excessive motion practice, as detailed in Appendices A and B.

### E. *Administrative/Paralegal Tasks*

The fee-shifting statute does not relieve a lawyer of the obligation to exercise billing judgment, and so a court reviewing a fee petition must "disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.' " *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (citing *Halderman v. Pennhurst State Sch. & Hosp.*,

28

49 F.3d 939, 942 (3d Cir. 1995)). Knasiak objects that 320.7 hours of Longo's billing cover tasks that a reasonable attorney would have delegated to nonprofessional support personnel. Def.'s Ex. 8, ECF No. 634-8. Longo's billing records include numerous entries for administrative tasks such as reviewing email notifications of docket activity from the CM/ECF system (over and above time spent reviewing the filings themselves), dictating dates to be calendared and reviewing the calendared dates for accuracy, communicating with court personnel about administrative matters such as scheduling, writing cover letters for courtesy copies sent to the judge (usually billed as "Correspondence with Judge regarding courtesy copy of [filing]"), reviewing file stamped copies of his own filings, and checking the court's website before presentment hearings to determine whether his appearance is required (sometimes objected to as a paralegal task). *See* Def.'s Ex. 8. As for paralegal tasks, defendant objects to time spent finding a form civil cover sheet on the court's website and completing and filing the cover sheet, filing papers using the CM/ECF system, drafting notices of motion, and communicating with court staff about scheduling hearing dates. *See* Def.'s Ex. 9, ECF No. 634-9.

A client would not pay a lawyer's hourly rate for administrative tasks such as filing documents and checking the court's website. Courts therefore consistently disallowed or reduced to a paralegal rate Longo's hours spent on administrative and paraprofessional tasks. *See Nichols*, 2019 WL 157915, at *7; *Smith*, 2018 WL 4030591, at *8–9. The reasons given in *Smith* and *Nichols* apply equally to Longo's billing records here, with the exception of the 0.4 hours Longo spent downloading and completing a civil cover sheet to be filed with the complaint. Recognizing that preparing a civil cover sheet does not require an attorney's skill, courts regularly either deduct or reduce to a paralegal rate attorney time spent on this task. *E.g.*, *Brzowski v. Sigler*, 2021 WL 4283206, at *8 (N.D. Ill. Sept. 21, 2021) (deducting time spent

preparing civil cover sheet); *Chatman v. Stellar Recovery, Inc.*, 2017 WL 951246, at *2–3
(N.D. Ill. Mar. 10, 2017) (same); *Blackwell v. Kalinowski*, 2012 WL 469962, at *6–7 (N.D. Ill.
Feb. 13, 2012) (citing *Jablonski v. Astrue*, 2011 WL 824601, at *2 (N.D. Ill. Mar. 3, 2011))
(same). Knasiak contends that Longo's time spent preparing a civil cover sheet should be
delegated to a paralegal, not that the task is administrative. *Compare* Def.'s Ex. 8 at PageID
No. 12463, *with* Def.'s Ex. 9 at PageID No. 12544. The court will therefore reduce the 0.4 hours
Longo spent on this task to a paralegal rate, though it is hard to see how the skill of a paralegal
was needed to prepare the cover sheet in this case since an administrative assistant would have
had the cover sheet from *Sommerfield I* to use as a guide.

Sommerfield submits what appear to be excerpts of defense counsel's billing records for
this case. *See* Pl.'s Ex. 11, ECF Nos. 633-16, 633-17; Fee Pet. 26, ECF No. 633. He argues that
these records show that the City pays an attorney's rate for services Knasiak claims are
administrative or should be billed at a paralegal rate. Plaintiff has identified one instance in
which the City paid a lawyer 0.3 hours for preparing a notice of motion. *See* Fee Pet. 26 n.24;
Pl.'s Ex. 11 at PageID No. 11256, ECF No. 633-16 (time entry for Dec. 28, 2010). Defendant's
counsel's billing records actually support deducting time for administrative tasks, however. The
City refused to pay for entries for administrative tasks such as "filing court documents" and
"preparing form notices" as such tasks were inappropriate for attorney billing. *See* Pl.'s Ex. 11
at PageID Nos. 11265, 11281.

The payment for preparing a notice of motion appears to have been an oversight.
Notations throughout the billing records show that the City objected to attorneys billing for filing
documents, drafting notices, and general clerical tasks such as compiling exhibits to motions and
mailing or transmitting documents. *See, e.g.*, *id.* at PageID Nos. 11265, 11281, 11300, 11307.

Read in their totality, defense counsel's billing records confirm that a client would not pay an attorney for work similar to the administrative tasks for which Sommerfield seeks compensation. This court declines to engage in a game of "gotcha" whereby one 0.3-hour apparent oversight by the City results in Longo being paid for hundreds of hours no reasonable client would be willing to compensate.

Judge Durkin's response to Longo's final argument applies here as well: "The fact that Mr. Longo is a solo practitioner 'who has decided to forgo additional support staff does not entitle him to bill professional rates (*i.e.*, attorney rates or paralegal rates) for clerical work.'" *Nichols*, 2019 WL 157915, at *6 (citing *Smith*, 2018 WL 4030591, at *8). For the same reasons as the *Smith* and *Nichols* courts, this court finds the majority of defendant's objections to administrative and paralegal tasks to be well-taken.[9]

## F. *Excessive, Redundant, or Unnecessary Work*

The lodestar figure "should exclude work that was 'excessive, redundant, or otherwise unnecessary.'" *Sommerfield I*, 863 F.3d at 650 (quoting *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012)). Knasiak identifies 656 hours of tasks he contends fall into this category. *See* Def.'s Ex. 11, ECF No. 634-11. Knasiak's objections under this heading fall into two broad categories.

First, many of Longo's time entries follow a pattern of excessive and redundant billing that was found unreasonable, and deducted, in *Sommerfield I*, *Smith*, and *Nichols*. Longo bills a minimum 0.1-hour for reading every email he receives from the court over and above the time he spends reviewing the filing itself. For a typical motion and notice of presentment (such as the

---

9    Knasiak generally objects that Longo's time spent filing documents electronically and drafting notices of motion should be billed at a paralegal rate, but he occasionally claims these tasks are administrative (*e.g.*, July 25, 2018 time entry). All time reasonably spent on electronic filing and drafting a notice of motion will be awarded at the paralegal rate.

motion to extend time filed December 2, 2008), Longo recorded 0.2 hours reading two form emails that take seconds for a reasonable attorney to process. Longo also frequently records 0.1 hours for dictating a calendar date and reviewing his dictation. Much of this time must be deducted because it should have been delegated to support personnel. But these entries also represent excessive and redundant billing. *See Nichols*, 2019 WL 157915, at *7; *Smith*, 2018 WL 4030591, at *8.

Second, Knasiak argues that Longo spent an excessive amount of time conducting legal research, drafting motions and briefs, reviewing court orders and other documents, and preparing for hearings. The court understands these objections to argue that Longo spent too much time conducting legal research. His distinct arguments that certain litigation steps were not reasonably necessary at all are resolved under the headings of unnecessary and excessive motion practice and peripheral matters.

*Litigation in District Court*

At the outset, the court will not deduct the 4.3 hours Longo spent preparing for the final pretrial conference on March 12 and March 13, 2014, because spending half a day preparing for such a hearing is entirely reasonable. In a similar vein, the amount of time Longo spent on legal research, motion practice, and preparing for hearings appears reasonable in many instances when compared to the time billed by defense counsel on the same matter. As an example, Longo billed 91.1 hours from November 5–December 12, 2010, for drafting, researching, and revising Sommerfield's response to Knasiak's first summary judgment motion and LR 56.1(a)(3) statement of undisputed material facts. However, by the court's calculations, Knasiak's attorney billed the City for 69.3 hours for drafting the summary judgment motion and a total of 95 hours for researching, drafting, and revising the motion and reply. *See* Pl.'s Ex. 11 at PageID Nos. 11253–58, ECF No. 633-16. While Longo's response was shorter than these two filings

32

combined, the rough parity between the time billed by lawyers on both sides leaves the court

unable to say that Longo billed excessively for Sommerfield's response. To cite another

example, the 22.1 hours Longo billed in October–November 2014 drafting a reply brief in

support of a motion for clarification seems at first blush to be excessive because the motion for

clarification raised narrow issues. The court does not deduct this time, however, because defense

counsel billed approximately 20 hours to prepare Knasiak's response to the motion. *See* Pl.'s

Ex. 11 at PageID Nos. 11334–36, ECF No. 633-17.

Between June 21 and August 6, 2017, Longo spent a long time, 88.1 hours, researching

and drafting his response to Knasiak's post-trial motion. In this court's experience, post-trial

motions can consume a great deal of attorney time reviewing trial transcripts and conducting

research. Defense counsel's billing records bear this out. Knasiak's lawyers billed about as

much time as Longo, approximately 91 hours, for drafting Knasik's post-trial motion and reply.

*See* Pl.'s Ex. 11 at PageID Nos. 11356–58, 11363, ECF No. 633-17. Accordingly, these hours

will not be deducted.

On the other hand, the court sustains Knasiak's objections to 10.1 hours of 39.2 hours

Longo spent in September 2013 on his motion for reconsideration of the second summary

judgment ruling. Most of Longo's arguments in support of this motion bordered on the

frivolous. He obtained very modest results (a slight clarification of one issue). Given the results

obtained, spending nearly 40 hours on the motion for reconsideration exceeded the bounds of

reasonable lawyering.

*Time Spent Litigating the Appeal*

Knasiak also objects to the approximately 197.2 hours he calculates Longo spent

successfully defending the appeal. *See* Def.'s Ex. 15, ECF No. 634-15; Resp. 35–37, ECF

No. 634. Consistent with this opinion, the court has culled from these entries travel time and

time spent on administrative tasks. Knasiak asks the court to reduce further the time spent on the appeal by 20% to account for inefficient and unnecessary use of time. *See* Resp. 37. Knasiak calculates that Longo billed 103.6 hours preparing his brief, 50.7 hours preparing for oral argument, and 16.7 hours drafting an amended jurisdictional statement. Resp. 36. With the exception of the hours spent drafting the amended jurisdictional statement, the court cannot determine how Knasiak calculated these figures. Sommerfield does not dispute these calculations, and, based on the court's review, they do not appear wildly inaccurate, although the court cannot verify the exact figures.

The court deducts Longo's time for preparing amended jurisdictional statements and responding to the Seventh Circuit's order dated October 30, 2019. The Seventh Circuit twice found that Longo failed to comply with Seventh Circuit Rule 28(b), governing the jurisdictional statement in an appellant's brief, and ordered him to correct the deficiencies. *See* Orders dated Oct. 30, 2019, and Jan. 24, 2020, *Sommerfield v. Knasiak*, No. 18-2045, ECF Nos. 36, 62 (7th Cir.). This court has reviewed Longo's original brief filed September 16, 2019, as well as his two amended jurisdictional statements (ECF Nos. 32, 42 and 63). Longo's failure to file a fully compliant jurisdictional statement in Sommerfield's opening brief is inexplicable. Had he done so, the time he spent responding to the Seventh Circuit's orders would have been unnecessary. No client would pay for Longo's unexplained mistakes.

As for the 100 hours Longo billed for drafting Sommerfield's brief, this court does not have the benefit of the time records of Knasiak's appellate attorneys. Substantial work and effort properly went into preparing the brief Longo filed. Nonetheless, taking into account the complexity of the facts and legal issues, Longo's brief on the merits falls well below the level of organization and clarity one would expect after 100 hours of effort. Longo and the opposing

34

lawyer both spent considerable space in their briefs discussing an issue the Seventh Circuit found to be largely irrelevant. *See Sommerfield II*, 967 F.3d at 622 ("We also find much of the discussion in the briefs in this court about the so-called cat's paw idea to be beside the point."). Longo of course had to respond to Knasiak's cat's paw argument, but an extended discussion was not required. After reviewing the brief and Longo's billing records, it is clear that the time spent exceeded what was reasonable and necessary. However, Longo's time entries make it exceedingly difficult to determine how much time was spent on necessary and unnecessary tasks (*e.g.*, 6.8 hours on August 26, 2019, for "continuing to analyze trial transcripts and draft appellate brief"). Def.'s Ex. 15 at PageID No. 12710, ECF No. 634-15.

Longo's time entries for oral argument preparation are similarly unilluminating. Depending on the complexity of the issues involved, approximately 50 hours of preparation for oral argument has been awarded where the preparation included an attorney mooting the appeal with other attorneys. *Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 2010 WL 2430776, at *1 (E.D. Wis. June 14, 2010). However, Longo's preparation for oral argument appears to have been a solitary activity, as far as the time entries show. Longo's time entries make determining how much time was spent on reasonably necessary activity impossible, so the court exercises its discretion to reduce Longo's time spent litigating the appeal by 20% to account for the excessive and unreasonable time spent writing the brief and preparing for oral argument. *Cf., Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) ("Almost a week's work is far too much for preparing to argue an appeal in a case involving simple facts, a three-day trial, and legal issues of limited (though not trivial) scope and novelty."); *Jones v. Ameriquest Mortg. Co.*, 2009 WL 631617, at *5–6 (N.D. Ill. Mar. 10, 2009) (reducing 60 hours billed for argument preparation by over one-third); *Riter v. Moss & Bloomberg, Ltd.*, 2000 WL 1433867, at *6 (N.D. Ill. Sept. 26,

2000) (reducing argument preparation time to 36.1 hours even though lawyers mooted the appeal); *Lee v. Keith*, 2007 WL 2683804, at *3 (C.D. Ill. July 24, 2007) (reducing by half 30 hours billed for oral argument preparation). Using Knasiak's undisputed calculations for time spent on oral argument and brief writing (rounded to whole numbers to avoid the appearance of greater precision than the record supports), the total comes to 150 hours, so the court deducts 30 hours from the lodestar.[10]

### G. Peripheral Matters: Public Relations and Communicating With Other Lawyers

Knasiak objects to 29.5 hours Longo billed as peripheral and unnecessary to advancing this litigation. The time entries in question encompass tasks such as Longo reviewing a case-related article in a newspaper, communicating with several organizations regarding trial publicity, and conferring with counsel for Sommerfield's police union regarding indemnification. *See* Def.'s Ex. 12. Sommerfield's response to these objections reads in full: "Indeed, such time is reasonable when determining how to strategize in the instant case, based upon what occurred in other cases." Reply 30, ECF No. 635.

Time spent on public relations is not ordinarily compensable on a fee petition unless it was reasonable and necessary to advance the litigation. *See World Outreach Conf. Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 917 (N.D. Ill. 2017), *aff'd,* 896 F.3d 779 (7th Cir. 2018) (collecting cases in this district deducting time spent on media outreach and public relations). Longo's conclusory statements that reading the article contributed to developing case strategy fails to carry his burden to demonstrate that reading the article was reasonable and necessary work for which a client would pay. The court therefore deducts this time (0.2 hours).

---

10  Twenty percent is likely a conservative estimate. Several time entries mention researching the causation of Sommerfield's promotions and suspensions. These entries likely relate to the cat's paw issue. Excluding a block-billed entry on September 30, 2019, entries specifically mentioning those activities (from 8/27–9/2/2019) total 37.4 hours.

Many of Longo's time entries concerning communications with other lawyers are cryptic. For example: "Telephone with Paul Geiger, FOP, regarding indemnification" (Feb. 19, 2014); "Correspondence with Ms. Herman relating to strategy concerning dead puppy" (May 5, 2014); and "Telephone with Jewish United Fund" (June 8, 2014). Def.'s Ex. 12 at PageID No. 12665, ECF No. 634-12. The court deducts the time associated with these entries because the briefing and billing records leave the court unable to determine whether the time was reasonable and necessary. *See Teague v. Miehle*, 2019 WL 1253985, at *5 & n.5 (N.D. Ill. Mar. 19, 2019).

But the 2.4 hours Longo spent communicating with another lawyer and reviewing the other lawyer's opening statement from another case will not be deducted (March 4–5, 2014) because the billing records show that Longo used the other lawyer's opening statement to draft his opening statement in *Sommerfield II*. The court also does not deduct the time Longo recorded between March 19–July 30, 2015, for communicating with a lawyer involved in his client's then-pending arbitration proceedings regarding motions to stay those proceedings, strategy, and drafting modifications to the arbitration agreement. Knasiak's objection to these entries is hypocritical. His lawyers billed, and the City paid for, time they spent communicating about the same motions with someone identified as "D. Seery," to discuss "strategy" regarding the arbitration proceedings. *See* Pl.'s Ex. 11 at PageID No. 11340, ECF No. 633-17. Finally, the objections to 0.6 hours Longo recorded on June 6, 2018, for reviewing and drafting correspondence during the Seventh Circuit settlement conference are overruled, as this time was on its face reasonable and necessary.

### H. Time Spent Travelling To and From the Courthouse

Longo billed a total of 2.8 hours of travel time for every hearing at which he appeared. *See* Def.'s Ex. 14, ECF No. 634-14. Each trip was broken in two 1.4-hour time entries, one for travelling from his office in the Chicago suburbs to the courthouse and another for making the

return journey.  *See id.*  At $360/hour, Longo billed $1,008 for travel for each hearing (plus a minimum of one hour for the hearing itself, no matter how short).  This court deducts Longo's time commuting to and from the courthouse for two reasons.

First, Longo's time records in *Nichols* and in this case raise serious concerns that Longo is not recording his actual travel time.  Traffic in the Chicago area is notoriously unpredictable, as is parking near the courthouse.  It is vanishingly unlikely that Longo's travel time never varied.  Even if the court were inclined to do so (it is not), it has no way of determining Longo's actual travel times.  That is, Sommerfield has not "put forth any evidence to support these driving times . . .so as to meet [his] burden of establishing reasonableness."  *Ryan M. v. Bd. of Educ. of City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 792 (N.D. Ill. 2010). (citing *Hensley*, 461 U.S. at 437) (reducing travel time and listing examples of evidence that could be submitted to show travel times were reasonable).

Second, Judge Durkin's analysis of Longo's billing records in *Nichols* applies with equal force to his records here.  As in *Nichols*, "Longo's voluminous petition gives no hint that he bills paying clients every time he drives to court; especially in a case like this where he made [36.5] such trips."[11]  *Nichols*, 4 F.4th at 443.  Nor does Longo present any evidence that a client would pay him over $1,000 every time he travels to court.  *See id.*; *Mouloki v. Epee*, 2017 WL 2791215, at *5 (N.D. Ill. June 27, 2017).  Longo avers that he charges clients for travel, but he does not say how much he charges or what his clients pay.  *See* Longo Decl. ¶ 13, July 31, 2018, ECF No. 633-3.

---

11  Longo apparently did not bill for his return trip on March 13, 2014.  *See* Def.'s Ex. 14 at PageID No. 12689, ECF No. 634-14.

### I. Costs and Expenses

Sommerfield requests $4,534.25 in nontaxable costs and expenses.  *See* ECF No. 633-14 at PageID Nos. 11174–77, 11215; ECF No. 633-18 at PageID No. 11396; ECF No. 633-20 at 15–16.  Knasiak objects to most of these costs as lacking supporting documentation or because the description Sommerfield provided during the LR 54.3 process did not show that the cost was reasonably necessary.  Resp. 28–29.

Unlike his objections to Longo's billing records, Knasiak does not specify to which line items of costs and expenses he objects.  *See id.* at 28.  From the cases Knasiak cites, he may be objecting to charges for postage, UPS fees, and perhaps transcripts (because the number of pages of the transcript is not listed).  *See id*.  Knasiak also explicitly objects to the $2,150 Longo spent on retaining a certified public accountant ("CPA") to calculate pre-judgment interest.  *See id*. at 29.

Although the court has granted considerable leeway in reviewing the fee petition and objections, Knasiak's objections to costs violates the rule that "objections to fee petitions be clear and specific."  *Nilssen v. Gen. Elec. Co.*, 2011 WL 633414, at *8 (N.D. Ill. Feb. 11, 2011), *report and recommendation adopted in part, rejected in part,* 2011 WL 13380400 (N.D. Ill. May 3, 2011).  "[T]he cases requiring clarity and specificity in objections to fee petitions do not allow for the shifting to the court of the objector's responsibility to particularly delineate those fees with which it takes issue and to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed."  *Id.* at *10.

Knasiak concedes in his briefing that $616.40 of the itemized costs listed on plaintiff's exhibit 9 (ECF No. 633-14) should be allowed.  Resp. 29.  The court has performed several calculations in an effort to reach the bottom-line figure Knasiak gives in his brief, but to no avail.  With the exception of the CPA charges discussed below, the court simply cannot tell to which

items Knasiak objects.  After years of exchanging LR 54.3 material and litigating fees, this is completely unacceptable.  Knasiak's objections to mail, UPS, and transcript expenses are overruled for want of specificity.

The court would not be inclined to sustain these objections in any event.  As with time entries, costs and expenses in fee litigation must be documented "with the level of detail which would be provided to a paying client."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) (citation omitted).  The parties have provided no evidence of what a fee-paying client would accept in terms of details for these sorts of expenses.  Knasiak argues that Longo must provide receipts or other documentation verifying that each expense was incurred, but cites no authority or evidence showing that fee-paying clients require this level of documentation.  *See* Resp. 28.  Sommerfield contends that the City did not object to similar cost entries in *Sommerfield I*, but that is at best weak evidence of what the City, or any other client, considers adequate to pay a lawyer's bill for costs and expenses.

The court also overrules Knasiak's objections to the cost of a CPA.  As with all compensable expenses in fee litigation, the question is not whether Sommerfield ultimately prevailed based on the CPA's calculation, but rather whether it was reasonable for Longo to engage the CPA's services.  *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996).  Longo's decision to retain a CPA to perform interest calculations was reasonable, given that Knasiak also retained, and the City paid for, the services of a CPA.  Sommerfield represents that the calculations of both CPAs were used to advance negotiations over the proper amount of pre-judgment interest.  *See* Reply 40, ECF No. 635.

However, the court deducts one cost for fee litigation: $13.90 for binding the fee petition. ECF No. 633-20 at 15.  All other costs are included in the lodestar.

### J. Lodestar Calculation

Appendices A, C, and D contain line-by-line rulings on Longo's time entries.

Appendix B explains the court's reasoning for deducting or including time spent on purportedly

unnecessary motion practice. The following table summarizes the overall lodestar calculations:

| | Hours Requested | Hours Deducted | Hours Awarded at Attorney Rate | Hourly Rate - Attorney | Hours Reduced to Paralegal Rate | Hourly Rate - Paralegal | Fees Awarded |
|---|---|---|---|---|---|---|---|
| *Sommerfield I*[12] | 1,213.6 | 1,213.6 | 0 | $315 | 0 | $125 | $0 |
| Initial 4/1/2008-10/28/2012 records[13] | 423.6 | 83.9 | 339.7 | $315 | 10.8 | $125 | $108,355.50 |
| Additional ("Missing") 6/26/2009-10/3/2011 records[14] | 9.1 | 2.8 | 6.3 | $315 | 0 | $125 | $1,984.50 |
| Initial 10/29/2012-11/16/2018 records (without fees on fees)[15] | 1,827.9 | 367.6 | 1,460.3 | $360 | 19.8 | $125 | $528,183.00 |
| Additional ("Missing") 1/22/2014 - | 14.4 | 8.4 | 6.0 | $360 | 0 | $125 | $2,160.00 |

---

12  LR 54.3(e) Jt. Stmt. at 2, ECF No. 572.

13  Pl.'s Ex. 9, ECF No. 633-9 (355.9 hours from 2008–11); Pl.'s Ex. 9, ECF No. 633-10 (67.7 hours from 1/3/2012 to 10/21/2012).

14  Pl.'s Ex. 9, ECF No. 633-14 at PageID No. 11178.

15  Pl.'s Ex. 9, ECF No. 633-10 (117.9 hours from 10/29/2012–12/31/2012; 120.1 hours in 2013); Pl.'s Ex. 9, ECF No. 633-11 (1042 hours in 2014); Pl.'s Ex. 9, ECF No. 633-12 (182 hours in 2015); 70.5 hours in 2016); Pl.'s Ex. 9, ECF No. 633-13 (281.8 hours in 2017); Pl.'s Ex. 9, ECF No. 633-14 (11.6 hours from 3/31/2018–6/6/2018 (initial records); 94.3 hours from 4/27/2018–11/16/2018 (supplemental records)); *infra* note 20 (2.9 hours removed from litigation total as fees on fees (initial records)); Appendix D (89.4 hours removed from litigation total as fees on fees (supplemental records)).

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/8/2016 records[16] | | | | | | | |
| Supplemental records 7/13/2017 – 10/31/2020 (without fees on fees)[17] | 221.0 | 71.8[18] | 149.2 | $360 | 0 | $125 | $53,712.00 |
| **Totals** | **3,709.6** | **1,748.1** | **1,961.5** | **N/A** | **30.6** | **N/A** | **$694,395.00** |

| | Amount Requested | Amount Deducted | Amount Awarded |
|---|---|---|---|
| Costs[19] | $4534.25 | $13.90 | $4,520.35 |

| | | | | | | Amount |
|---|---|---|---|---|---|---|
| **Lodestar (without fees on fees)** | | | | | | **$698,915.35** |

## V. Fees for Litigating the Fee Petition ("Fees on Fees")

Sommerfield asks the court to award $245,355 in fees for litigating his fee petition. He submits time entries for 446.1 hours of Longo's time.[20]  *See* Def.'s Ex. 15, ECF No. 634-15; Appendix C, Appendix D.  "A request for attorney's fees should not result in a second major litigation."  *Hensley*, *supra*, 461 U.S. at 437; *see also Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988).  The Seventh Circuit has therefore instructed lawyers seeking fees, most recently

---

16  Pl.'s Ex. 9, ECF No. 633-14 at PageID Nos. 11178–79.

17  Def.'s Ex. 15, ECF No. 634-15; Appendix C (total of 574.8 hours claimed, 353.8 hours designated as fees on fees).

18  *See* Appendix C (33.8 hours deducted (appeal), 8 hours deducted (collection)); *supra* Part IV(F) (additional 20% (30 hours) of time deducted).

19  Pl.'s Ex. 9 at PageID Nos. 11174–77, ECF No. 633-14 ($2,039.83 in costs 5/23/2008–8/8/2017); Pl.'s Ex. 12 at PageID No. 11396 ($2,169.53 in "inadvertently excluded expenses" and $15 UPS charge during the LR 54.3 process); Def.'s Ex. 15 at PageID No. 12734 ($309.89 in costs 2/22/2019– 1/17/2020).

20  While reviewing defendant's exhibit 6, it became apparent that certain hours identified as related to litigating the merits were in fact spent litigating fees.  *See, e.g.*, Def.'s Ex. 6 at PageID No. 12392 (time entries for 5/30/2018), ECF No. 634-6.  The court has reclassified 2.9 of Longo's merits hours in exhibit 6 hours as fees on fees.  Similarly, 89.4 hours of the 94.3 hours billed from 4/27/2018– 11/16/2018 were determined to have been spent on fee litigation.  *See* Pl.'s Ex. 9, ECF No. 633-14; Appendix D.

Longo on appeal in *Nichols*, to "review carefully their petition and cut unnecessary costs."

*Nichols*, 4 F.4th at 444. "We have frowned upon lawyers who litigate fee awards with greater

vigor than any other issue." *Id.* (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 554

(7th Cir. 1999)).

Longo has engaged in a consistent pattern of exercising no billing judgment and

submitting bloated fee petitions for nearly every conceivable hour he could bill, no matter how

obviously unreasonable the time is. Judge Leinenweber denied Longo's *Sommerfield I* petition

for fees on fees in its entirety. 2017 WL 3675722, at \*5–6. He cited, among other reasons,

Longo's "inflated bill" for his work in litigation relative to his results and the "exorbitant" and

"extravagant" fee petition he requested which forced the court and his counter party "to deal with

matters that never should have been submitted." *Id.* at \*5 (quotations and citations omitted).

"[Mr.] Longo," added the *Sommerfield I* court, "certainly 'pile[d] on the hours' in this case, and

as the hours led to little other than unnecessary work 'affecting the due administration of justice,'

he should not be paid any more for them than he already has." *Id.* at \*6 (citation omitted). The

next year, Judge Dow denied Longo's fees on fees petition in *Smith*, stating that "as in

*Sommerfield*, the fee litigation amounted to an excruciating exercise in sustaining defense

objections to entries that Longo should have screened out on his own had he taken the

Supreme Court's, the Seventh Circuit's, and Judge Leinenweber's and Magistrate Judge Cole's

guidance to heart." *Smith*, 2018 WL 4030591, at \*17.

These rulings apparently did not alter Longo's billing records or his approach to fee

litigation. Judge Durkin wrote in his 2019 *Nichols* opinion that Longo apparently included

"almost every single hour worked on this case for every administrative, substantive, and travel

task." *Nichols*, 2109 WL 157915, at \*12. Judge Durkin also disallowed all of Longo's fees for

pursuing fees, finding that the lodestar figure was reasonable in view of the litigation as a whole and stating, "Despite being reprimanded for similar practices by multiple courts in several previous litigations, Longo's continued failure to litigate cases efficiently and submit reasonable bills is further justification to deny fees on fees." *Id.*

The petition at hand is therefore Longo's fourth submitted to this court in as many years, yet he appears not to have altered his approach to fee litigation. Longo avers that he exercised billing judgment and removed some hours from his fee petition, but he does not state how many or provide any detail. *See* Longo Decl. ¶ 12, July 31, 2018, ECF No. 633-3. As the discussion of the many objections above shows, his billing records and fee petition refute his conclusory averment.

The nine exhibits attached to Longo's reply brief without explanation exemplify his excessive and unreasonable approach to fee litigation.[21] Longo has been repeatedly advised in this case, and in *Sommerfield I* at the fee petition stage, that "reply briefs are for replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief. *Sommerfield v. City of Chicago*, 2012 WL 3779104, at *1 (N.D. Ill. Aug. 31, 2012) (citing *United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007)) (other citations omitted) (striking

---

21 The numbers of the exhibits to Sommerfield's reply fill gaps in the numbering of the exhibits to his opening fee petition. The exhibits are: (a) a supplemental declaration of Longo dated January 13, 2020 (Pl.'s Ex. 14, ECF No. 635-1); (b) an article dated September 6, 2017, about Judge Posner's retirement (Pl.'s Ex. 15, ECF No. 635-2); (c) excerpts from a brief in a 1998 Seventh Circuit case filed by Longo (Pl.'s Ex. 16, ECF No. 635-3); (d) ten pages of documents from *Atkins v. City of Chicago*, No. 05 C 6109 (N.D. Ill.) (Pl.'s Ex. 17, ECF No. 635-4); (e) the declaration of the late Honorable Edward C. Hofert, a former judge of the Cook County Circuit Court, signed in 2005 (Pl.'s Ex. 18, ECF No. 635-5); (f) a 59-item list of responses to certain of Knasiak's objections, incorporated by reference in plaintiff's reply brief (Pl.'s Ex. 19, ECF No. 635-6); (g) a three-page document incorporated into plaintiff's reply brief making legal arguments about this court's summary judgment opinion (Pl.'s Ex. 20, ECF No. 635-7); (h) an excerpt of a transcript of a hearing held in 1998, at which Longo did not appear, in which a Wisconsin trial court discusses Wisconsin law on awarding fees (Pl.'s Ex. 21, ECF No. 635-8); (i) a second supplemental declaration of Longo dated January 13, 2021 (Pl.'s Ex. 24, ECF No. 635-9); and (j) a copy of the Seventh Circuit's decision in *Semmerling v. Bormann*, No. 19-3211 (Jan. 5, 2021) (Pl.'s Ex. 25, ECF No. 635-10).

Longo's request for $65,000 in additional fees and costs because he made it for the first time in a reply brief). Yet Longo makes no effort in his reply brief to explain why the accompanying exhibits should be considered. A separate problem is that exhibits 19 and 20 contain legal argument in a transparent attempt to skirt the expanded 44-page limit for Sommerfield's reply brief. *See* Pl.'s Ex. 19, ECF No. 635-6, cited in Reply 23; Pl.'s Ex. 20, ECF No. 635-7, cited in Reply 22. Exhibit 20 summarizes this court's summary judgment opinion. The summary judgment opinion speaks for itself, and a simple citation would have sufficed. Except for the Seventh Circuit opinion, which the court must consider in all events, the exhibits to plaintiff's reply are stricken because Knasiak has not had an opportunity to respond to them. *See* 2012 WL 3779104, at *1. Exhibits 19 and 20 are stricken for the additional reason that they violate the 44-page limit set by the court. *See* ECF No. 632; *see also Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 803 (N.D. Ill. 2015) (striking exhibit that contained legal argument because "labeling a brief an exhibit does not change the essential nature of the thing" (citation omitted)).

In short, Longo has not heeded the warnings of this court and the Seventh Circuit in *Sommerfield I*, *Smith*, and *Nichols*. Including the 1,237.6 hours expended in *Sommerfield I* sought here, 47.1% of the requested hours have been deducted from the lodestar. Meanwhile, Longo spent 446.1 hours litigating fees, i.e., 22% of the 1,992.1 hours reasonably necessary to litigate this case in this court and on appeal. So for every hour reasonably expended litigating this case, Longo spent approximately 13 minutes litigating fees. As other judges have noted, this lack of billing judgment and bloated fee litigation deserves no encouragement. *See Nichols*, 2019 WL 157915, at *10–11; *Smith*, 2018 WL 4030591, at *11–13; *Sommerfield I*, 2017 WL 3675722, at *1.

This court's decision not to award fees for fee litigation is not based on the prior opinions alone. As discussed above, Longo has sought large swaths of obviously non-compensable time and thrust upon the court and opposing counsel the task of sifting through the minutia of resolving hundreds, if not thousands, of objections to time Longo should have in good faith cut in the first place. Despite the poorly developed record in support of the fee petition, this court has performed this task as best it could and substantially reduced the hours claimed. When considering the results Longo obtained and the protracted course of this litigation as a whole, this lodestar figure reasonably and sufficiently compensates Longo. *See, e.g.*, *Sommerfield I*, 2017 WL 3675722, at *5–6.

## VI. Requests to Adjust the Lodestar Figure

The lodestar figure enjoys a "strong presumption" of reasonableness, but "that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The lodestar may be adjusted upward or downward. *See generally id.* at 554–56 (discussing situations in which an upward adjustment is appropriate); *Montanez v. Simon*, 755 F.3d 547, 556–57 (7th Cir. 2014) (discussing downward adjustment for achieving partial success). Both parties ask the court to adjust the lodestar figure. Their arguments largely center on the degree of success, or lack thereof, Longo achieved in this case. Before reaching the primary issue, this court dispenses quickly with two of Sommerfield's arguments.

Sommerfield first contends that the lodestar should be increased to account for the risk Longo took by litigating this case on a contingency basis. Many lawyers, Sommerfield argues, would have opted to pursue a less risky contingency case or a fee-paying client in light of the relatively small verdict in *Sommerfield I* and the fee awarded by Judges Leinenweber and Cole.

46

*See* Fee Pet. 31–33. Longo filed *Sommerfield II* before he knew the results of the jury verdict and fee award in *Sommerfield I*, so this argument holds little water on its own terms.

Regardless, the Supreme Court has held that "the lodestar is presumptively sufficient to induce a capable attorney to take on a meritorious civil rights case." *Nichols*, 4 F.4th at 443 (citing *Perdue*, 559 U.S. at 552). Since *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992), the law has been clear that the lodestar cannot be enhanced because the lawyer took the case on a contingency basis. *See also Pickett*, *supra*, 664 F.3d at 641. In *Dague*, the plaintiff petitioned for fees after winning a suit under federal environmental statutes against the owner and operator of a landfill. *See* 505 U.S. at 559. The trial court increased the lodestar by 25% for reasons similar to Sommerfield's request: the "risk of not prevailing was substantial" and "absent an opportunity for enhancement, [the plaintiff] would have faced substantial difficulty in obtaining counsel of reasonable skill and competence in this complicated field of law." *Id*. at 560. The Supreme Court reversed. *Id.* at 562–67. In the passage most directly applicable to Sommerfield's arguments, the Court explained that the lodestar figure ordinarily encompasses the relative difficulty of establishing the merits of a claim "either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *Id.* at 562 (citing *Blum v. Stenson*, 465 U.S. 886 at 898–99). The *Dague* Court held that the claim's legal and factual merits should "play no part in the calculation of the [fee] award" or enhancement. *Id*. at 563. *Dague* controls here. Sommerfield's request to add a multiplier to account for the risk of taking *Sommerfield II* on a contingency basis must be, and is, denied under *Dague*. *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998).

This court also denies Sommerfield's request for an enhancement due to an unusual delay in receiving payment. An unusual delay in payment may justify increasing the lodestar to

47

achieve a reasonable fee.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  Accounting for the time value of money may be accomplished, as it has been here, either by awarding interest on an attorney's historical rates or compensating the attorney at present rates for past work.  *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744–45 (7th Cir. 2003) (citations omitted).  Either way, the adjustment should be made to the attorney's hourly rate under the lodestar "in accordance with specific proof linking the attorney's ability to a prevailing market rate."  *Perdue*, 559 U.S. at 555.  As explained above, the evidence Longo has submitted does not justify setting a higher rate, and the hourly rates used in the lodestar calculation account for the delay in payment by adding interest to Longo's $300 historical rate for hours before October 30, 2012, and by compensating all subsequent hours at what the court has found to be Longo's current market rate of $360.  Further increasing the lodestar for delay in payment would give Longo a windfall. "Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.' "  *Id.* at 552 (citation omitted). "Congress intended that statutory fee awards be adequate to attract competent counsel, but . . . not produce windfalls to attorneys."  *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (quotation omitted).

Remaining are the competing requests for lodestar adjustment based on the degree of success Longo achieved.  On the one hand, Sommerfield emphasizes the size of the approximately $540,000 in punitive damages awarded by the jury.  *See* Fee Pet. 29–30.  As Sommerfield points out, this figure is a double-digit multiple of the $30,000 verdict in *Sommerfield I.  See id.* at 17, 29–30.

On the other hand, Knasiak contends that the lodestar should be cut in half "for the wasteful amount of time [Longo] spent litigating."  Resp. 33.  He points to three outcomes

adverse to Sommerfield. *See id.* at 32–33. First, after the *Sommerfield I* verdict and judgment, this court narrowed the claims in *Sommerfield II* because the *Sommerfield I* verdict barred relitigation of certain issues merged into the *Sommerfield I* judgment under the doctrine of collateral estoppel.[22] *See Sommerfield II*, 2013 WL 4047606, at *13–19 (granting partial summary judgment). Second, this court separately granted partial summary judgment and dismissed Sommerfield's First Amendment retaliation claim on July 1, 2014, approximately two weeks before trial. 2014 WL 3189418, at *3–5. Third, Knasiak points out, despite the award of punitive damages, the *Sommerfield II* jury awarded no compensatory damages. *See* Verdict form, ECF No. 366.

The Supreme Court in *Hensley* identified twelve factors to be considered when determining whether the lodestar calculations resulted in a reasonable fee. *See Hensley*, *supra*, 461 U.S. at 429 n.3. Of those considerations, "the most critical factor is the degree of success obtained." *Id.* at 436. A plaintiff who obtains excellent results "should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." *Sommerfield I*, 863 F.3d at 651 (quoting *Montanez*, 755 F.3d at 556).

To be sure, the jury awarded a more substantial verdict in *Sommerfield II*—18 times the $30,000 awarded in *Sommerfield I*. The lodestar figure is therefore considerably more proportionate to the *Sommerfield II* verdict (roughly a 1.3-to-1 lodestar-to-verdict ratio), which raises less of a concern than in *Sommerfield I* that the lodestar misses the mark of a reasonable fee. *See generally Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) (discussing principles governing the use of proportionality when considering adjustment to

---

22  Additionally, Sommerfield's claims against the City were dismissed at the complaint stage as duplicative of the claims in *Sommerfield I*. Order at 3–7, ECF No. 45 (Feb. 26, 2009).

the lodestar). However, the success Longo achieved does not warrant the unusual step of increasing the lodestar. In this court's view, the *Sommerfield II* verdict resulted from the fact that punitive damages were available in *Sommerfield II*, but were unavailable against the City in *Sommerfield I*. *Sommerfield II*, 2013 WL 4047606, at *15 (citing 42 U.S.C. § 1981a(b)(1) and *Passannati v. Cook Cnty.*, 689 F.3d 655, 677 (7th Cir. 2012)). Thus, although the verdict represents a good result in terms of a dollar amount for Sommerfield, an upward adjustment is not appropriate. Several claims dismissed at summary judgment involved distinct facts and legal theories from those the jury heard at trial. Specifically, Sommerfield lost the ability to ask the jury to award damages based on his assignment to patrol duties without a partner, assignment to hospital duties, and undesirable patrol times. *Sommerfield II*, 2013 WL 4047606, at *19. The court also completely eliminated a theory of First Amendment speech retaliation liability that was the subject of a motion in limine. Like the dismissed claims in *Sommerfield I*, these theories rest on distinct facts and legal theories and, taken together, warrant a reduction for partial success. *See Sommerfield I*, 863 F.3d at 652.

" 'No algorithm is available' for adjusting a lodestar to reflect partial or limited success." *Montanez*, 755 F.3d at 557 (citing *Richardson v. City of Chicago*, 740 F.3d 1099, 1103 (7th Cir. 2014)). Where, as here, time spent on successful and unsuccessful claims cannot be easily separated, "there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims." *Id.* (citing *Richardson*, 740 F.3d at 1103). A proportionality test comparing the fee to the judgment cannot be used. *See id.* (citing *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009)). However, in appropriate circumstances, a disproportionate fee request might "raise a red flag" about the

50

possibility that the attorney took an unrealistic view of the case. *Id.* (citation omitted); *see also Spegon*, *supra*, 175 F.3d at 558–59.

Having presided over this case for more than a decade, it is apparent to this court that Longo assigned an unrealistically high value to the unsuccessful claims, particularly in light of the *Sommerfield I* verdict. Nor can the complexity or the importance of the issues involved in this case explain adequately Longo's pursuit of duplicative and overlapping claims in *Sommerfield II*. Sommerfield received explicit warnings that collateral estoppel was virtually certain to apply once judgment was entered in one of the cases. *See Sommerfield II*, 2013 WL 4047606, at *9 (citing Order 7, *Sommerfield II* (Feb. 26, 2009), ECF No. 45). This court concurs with Judges Leinenweber's and Cole's assessments that Longo bears the majority of responsibility for dilating these proceedings needlessly—in short, for "the mess the case became." *Sommerfield I*, 863 F.3d 645, 652 (7th Cir. 2017). Accordingly, a 25% reduction of the lodestar figure accounts adequately for the time unreasonably spent pursuing unsuccessful claims.

## VII. Conclusion

For the reasons stated, plaintiff's petition for attorney's fees and costs is granted in part and denied in part. The court cannot arrive at a final figure without confirming that the hours redacted to protect the attorney-client privilege are reasonably necessary to the litigation. The calculations in this opinion assume that all of the redacted hours will be included in the final lodestar figure. To allow the court to arrive at a final fee award, plaintiff must submit unredacted time entries under seal for in camera review on or before December 21, 2021.

Dated: December 7, 2021

                                      /s/
                                   Joan B. Gottschall
                                   United States District Judge